JOHN C. ULIN (State Bar No. 165524)
John.Ulin@aporter.com
ERIC D. MASON (State Bar No. 259233)
Eric.Mason@aporter.com
ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone:  (213) 243-4000; Facsimile:  (213) 243-4199

LOUIS S. EDERER (admitted *Pro Hac Vice*)
Louis.Ederer@aporter.com
MATTHEW T. SALZMANN (admitted *Pro Hac Vice*)
Matthew.Salzmann@aporter.com
ARNOLD & PORTER LLP
399 Park Avenue
New York, New York 10022
Telephone:  (212) 715-1000; Facsimile:  (212) 715-1399

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC. d/b/a MISS ME, a California corporation, and RCRV, INC. d/b/a ROCK REVIVAL, a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> PHOENIX FIBERS. INC.. an Arizona corporation. U.S. GENERAL EXPORT, INC.. a California corporation, SAC INTERNATIONAL TRADERS, INC., a California corporation, SHAUKAT ALI CHOHAN, an individual, COMAK TRADING, INC., a California corporation, LYDIA EVILSA TERRAZAS CHO, an individual, MYUNG KWON CHO, an individual, TIFFANY ALANA WOLFF, an individual d/b/a MISS V LANE, XYZ COMPANIES 1-10, and JOHN AND JANE DOES 1-10, <br><br> Defendants. | Case No.:  2:16-cv-00940 <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> (1)  Breach of Contract; <br><br> (2)  Trademark Infringement in Violation of 15 U.S.C. § 1114; <br><br> (3)  False Designation of Origin and Unfair Competition in Violation of 15 U.S.C. § 1125(a); <br><br> (4)  Unfair Competition in Violation of California Bus. & Prof. Code §§ 17200 *et seq*.; <br><br> (5)  Dilution in Violation of California Bus. & Prof. Code § 14247; <br><br> (6)  Common Law Trademark Infringement and Unfair Competition. |

Plaintiffs Sweet People Apparel, Inc. d/b/a Miss Me ("Sweet People") and RCRV, Inc. d/b/a Rock Revival ("RCRV") (collectively "Plaintiffs"), by and through their undersigned counsel, complain of defendants Phoenix Fibers, Inc. ("Phoenix Fibers"), U.S. General Export, Inc. ("U.S. General"), SAC International Traders, Inc. ("SAC Traders"), Shaukat Ali Chohan ("Chohan"), Comak Trading, Inc. ("Comak Trading"), Lydia Evilsa Terrazas Cho ("Lydia Cho"), Myung Kwon Cho ("Myung Cho"), Tiffany Alana Wolff d/b/a Miss V Lane ("Wolff"), XYZ Companies 1-10, and John and Jane Does 1-10 (U.S. General, SAC Traders, Chohan, Comak Trading, Lydia Cho, Myung Cho, Wolff, XYZ Companies 1-10, and John and Jane Does 1-10 being hereinafter collectively referred to as the "Retailer Defendants," and Phoenix Fibers and the Retailer Defendants being hereinafter collectively referred to as "Defendants"), and allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  Plaintiffs' claims are predicated upon the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.*, and substantial and related claims under the statutory and common law of the State of California.

2.      Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants are either subject to personal jurisdiction within this judicial district, and/or because a substantial part of the events giving rise to Plaintiffs' claims occurred within this judicial district.

## NATURE OF THE ACTION

3.      Plaintiffs are affiliated denim and apparel companies which seek injunctive relief and damages for acts of trademark infringement, false designation of origin, and unfair competition in violation of the laws of the United States, as well as injunctive relief and damages for acts of trademark infringement, unfair competition, dilution, and breach of contract in violation of the laws of the State of California.

4.      This case arises from Phoenix Fibers' unauthorized distribution and/or

sale of tens of thousands of units of damaged, unfinished, returned, obsolete, or otherwise second-quality denim and apparel products bearing Plaintiffs' famous MISS ME (Sweet People) and ROCK REVIVAL (RCRV) trademarks (collectively, "Plaintiffs' Marks"), that Plaintiffs had donated to Phoenix Fibers, in each instance, on the agreement and understanding that such products (the "Donated Products") would be destroyed and recycled into "shoddy fiber," for use in manufacturing environmentally friendly products such as thermal insulation materials.  Despite those agreements, Phoenix Fibers knowingly distributed and/or sold the Donated Products to parties, including, directly or indirectly, the Retailer Defendants, who intended to and did resell the Donated Products into secondary wholesale and retail channels, and eventually to ultimate consumers.

5.      Phoenix Fibers' conduct was in violation of its agreements with Plaintiffs, and specifically its undertakings that the Donated Products — which, Phoenix Fibers knew, were not intended to be sold to consumers, given that they did not meet Plaintiffs' strict quality standards and/or specifications — would be destroyed and converted into shoddy fiber, and such shoddy fiber would then be delivered to Phoenix Fibers' sister company, Bonded Logic, Inc. ("Bonded Logic"), for use in manufacturing environmentally friendly products.

6.      In addition to Phoenix Fibers' breach of its agreements with Plaintiffs, Phoenix Fibers and the Retailer Defendants have each infringed upon and caused irreparable harm to Plaintiffs' Marks, have unfairly competed against Plaintiffs, and have likely caused widespread marketplace confusion through their introduction of large quantities of Plaintiffs' second-quality denim and apparel products (*i.e.*, the Donated Products) — each such product bearing one of Plaintiffs' Marks — into wholesale and retail distribution channels for ultimate sale to consumers, when such products were never intended for distribution and/or sale to consumers.

7.      Defendants' conduct was undertaken in bad faith and without Plaintiffs' consent, and Defendants deliberately intended to introduce the Donated Products into

an unauthorized distribution channel so that they could profit from the sale of products bearing Plaintiffs' famous, highly desired Marks.

## THE PARTIES

8.     Plaintiff Sweet People is a corporation duly organized and existing under the laws of the State of California, and maintains its principal place of business at 4715 S. Alameda Street, Los Angeles, California 90058.

9.     Plaintiff RCRV is a corporation duly organized and existing under the laws of the State of California, and maintains its principal place of business at 4715 S. Alameda Street, Los Angeles, California 90058.

10.     Upon information and belief, defendant Phoenix Fibers is a corporation duly organized and existing under the laws of the State of Arizona, and maintains its principal place of business located at 400 East Ray Road, Chandler, Arizona 85225.

11.     Upon information and belief, defendant U.S. General is a corporation duly organized and existing under the laws of the State of California, and maintains its principal place of business located at 1423 E 58th Place, Los Angeles, California 90001.

12.     Upon information and belief, defendant SAC Traders is a corporation duly organized and existing under the laws of the State of California, and maintains its principal place of business located at 6130 Avalon Boulevard, Los Angeles, California 90003.

13.     Upon information and belief, defendant Chohan is an individual who is and was at all relevant times a resident of the State of California.  Upon further information and belief, Chohan is the owner and President of SAC Traders, is the moving, active, conscious force directing SAC Traders' wrongful acts, and is personally responsible and liable for the wrongful acts of SAC Traders, as described herein.

14.     Upon information and belief, defendant Comak Trading is a corporation duly organized and existing under the laws of the State of California, and maintains

its principal place of business located at 2550 South Soto Street, Vernon, California 90058.

15.     Upon information and belief, defendant Lydia Cho is an individual who is and was at all relevant times a resident of the State of California.  Upon further information and belief, Lydia Cho is the co-owner and co-President of Comak Trading, is a moving, active, conscious force directing Comak Trading's wrongful acts, and is personally responsible and liable for the wrongful acts of Comak Trading, as described herein.

16.     Upon information and belief, defendant Myung Cho is an individual who is and was at all relevant times a resident of the State of California.  Upon further information and belief, Myung Cho is the co-owner and co-President of Comak Trading, is a moving, active, conscious force directing Comak Trading's wrongful acts, and is personally responsible and liable for the wrongful acts of Comak Trading, as described herein.

17.     Upon information and belief, defendant Wolff is an individual d/b/a Miss V Lane who is and was at all relevant times a resident of the State of California.

18.     Upon information and belief, defendants Phoenix Fibers, U.S. General, SAC Traders, Chohan, Comak Trading, Lydia Cho, Myung Cho and Wolff are acting in conjunction with various unknown individuals and wholesale and/or retail entities, including, without limitation, those parties denoted herein as John and Jane Does 1-10 and XYZ Companies 1-10.  If the identities of these parties become known, Plaintiffs will amend the Complaint to include their names.

## SWEET PEOPLE'S BUSINESS

19.     Sweet People manufactures, promotes, sells and distributes high-quality denim and apparel products throughout the United States, including within this judicial district, under the famous MISS ME brand name.  Sweet People's MISS ME brand denim and apparel products are prominently promoted and sold by such well-known fashion retailers and department stores as Macy's, Dillard's and The Buckle,

- 5 -

both in-store and online, as well as through Sweet People's own ecommerce site <www.missme.com>.

20.     Over the past several years, MISS ME brand denim and apparel products have become extremely popular in the highly competitive jeanswear market.  As a result of their popularity, Sweet People's MISS ME brand denim and apparel products have received extensive media coverage and have appeared in numerous widely circulated fashion magazines, including *In Style*, *Elle*, *Glamour*, *944 Magazine*, *Harper's Bazaar*, *Lucky*, *Teen Vogue* and *Nylon*.  In addition, celebrities such as Bella Thorne, Miley Cyrus, Paris Hilton and Beyonce have been photographed wearing MISS ME brand denim and apparel products.

21.     Sweet People has been using the MISS ME brand name as its primary trademark since 2001, and is the owner of numerous federal registrations and pending applications in the United States and around the world for its MISS ME Trademark. True and correct copies of certain of the U.S. registration certificates for Sweet People's MISS ME Trademark are attached hereto as Exhibit A.

22.     In addition to being, in and of itself, a highly distinctive mark, as a result of Sweet People's uninterrupted and continuous promotion and sale of MISS ME brand denim and apparel products over the last fifteen years, and the widespread editorial coverage such products have received, Sweet People's MISS ME Trademark has developed substantial strength among consumers and the trade.  Accordingly, Sweet People's MISS ME Trademark immediately identifies Sweet People as the exclusive source of denim and apparel products that bear such Mark, and signifies goodwill of incalculable value.

## RCRV'S BUSINESS

23.     RCRV manufactures, promotes, sells and distributes high-quality denim and apparel products throughout the United States, including within this judicial district, under the famous ROCK REVIVAL brand name.  RCRV's ROCK REVIVAL brand denim and apparel products are prominently promoted and sold by

such well-known fashion retailers as The Buckle and Nordstrom, and hundreds of high-quality independent boutiques.  In addition, such products are featured and sold online at RCRV's official website, located at <www.rockrevival.com>, and on websites affiliated with RCRV's authorized retail department stores, including The Buckle and Nordstrom.

24.    Over the past several years, ROCK REVIVAL brand denim and apparel products have become extremely popular in the highly competitive jeanswear market. In particular, the ROCK REVIVAL Trademark has enjoyed extensive coverage in leading mainstream and fashion publications in the United States.  Further, celebrities have repeatedly been photographed wearing ROCK REVIVAL denim and apparel products, creating millions of commercial "impressions" of the brand name, including Steven Tyler, lead singer of the famous rock back Aerosmith, in *Rolling Stone* magazine; the Oscar winning actress, Halle Berry, in *US Weekly*; Teri Hatcher on the popular television show Desperate Housewives; Casey James, a finalist on the then-number one rated television show, American Idol; and former National Football League star and Dancing With The Stars winner, Hines Ward.

25.    RCRV and its predecessor have been using the ROCK REVIVAL brand name as its primary trademark since 2006, and RCRV is the owner of numerous federal registrations and pending applications in the United States and around the world for its ROCK REVIVAL Trademark.  True and correct copies of certain of the U.S. registration certificates for the ROCK REVIVAL Trademark are attached hereto as Exhibit B.

26.    As a result of the uninterrupted and continuing promotion and sale of denim and apparel products bearing the ROCK REVIVAL Trademark, the Mark has developed substantial strength among consumers, and has come to immediately identify RCRV as the exclusive source of products bearing the Mark, and signifies goodwill of incalculable value.

## **PHOENIX FIBERS' BUSINESS**

27.     Upon information and belief, Phoenix Fibers is currently, and at all times relevant hereto has been promoting itself as being in the business of destroying denim and other cotton fabric by converting it into "shoddy fiber," *i.e.*, material used to manufacture different environmentally friendly products, such as thermal insulation materials.

28.     Upon information and belief, Phoenix Fibers obtains denim and cotton clothing and materials from third parties, including textile manufacturers and well-known jeans companies, and converts these goods into shoddy fiber.

29.     As part an initiative it calls "Sustainability in Action," Phoenix Fibers actively solicits donations of second-quality materials, and other materials that would otherwise be destroyed, from clothing and denim companies such as Plaintiffs. Phoenix Fibers further promotes the fact that it delivers the shoddy fiber it converts from materials donated to it by companies like Plaintiffs to its sister company, Bonded Logic, which, in turn, uses the shoddy fiber to produce sustainable, environmentally friendly insulation products.  Phoenix Fibers' website displays the following photographs of these activities:












## **PLAINTIFFS' BUSINESS DEALINGS WITH PHOENIX FIBERS**

30.     Plaintiffs were first introduced to Phoenix Fibers in 2011, when Phoenix Fibers represented that it was a recycler of denim and other cotton blended materials, and would be pleased to become the depository for Plaintiffs' second-quality denim and apparel products and materials that Plaintiffs would otherwise have destroyed themselves.

31.     Prior to becoming involved with Phoenix Fibers, Plaintiffs routinely incinerated, shredded, or otherwise destroyed all of their second-quality denim and apparel products, *i.e.*, damaged, unfinished, returned, or obsolete products, or other

goods or materials Plaintiffs had no intention of selling to ultimate consumers. Plaintiffs took these steps in order to prevent their second-quality denim and apparel products from finding their way into wholesale and/or retail markets and being sold to consumers, as such products would then cause irreparable harm to the hard-earned image and reputation of Plaintiffs and their high-quality brands.

32.     Thereafter, having been introduced to Phoenix Fibers and Bonded Logic, Plaintiffs decided to start disposing of their second-quality denim and apparel products in a more environmentally friendly manner, and began to donate such goods to Phoenix Fibers for destruction and conversion into shoddy fiber.  Since approximately 2013, Plaintiffs have regularly donated large quantities of their second-quality denim and apparel products to Phoenix Fibers, with the understanding and agreement that such Donated Products would be converted into shoddy fiber for use in the environmentally sustainable insulation products manufactured by Bonded Logic, just as Phoenix Fibers represented to Plaintiffs.  Through October 2015, Plaintiffs have delivered over 500,000 units of Donated Products to Phoenix Fibers.

33.     Most recently, in 2015, Plaintiffs shipped Donated Products to Phoenix Fibers on the following dates: January 29, 2015; February 23, 2015; March 12, 2015; May 19, 2015; June 10, 2015; August 26, 2015; September 9, 2015; September 28, 2015; and October 16, 2015.  Those shipments alone contained over 150,000 units of Donated Products.  Each of such Donated Products prominently bore one of the Plaintiffs' Marks.

34.     Plaintiffs made each of the foregoing shipments of Donated Products to Phoenix Fibers on the understanding that Phoenix Fibers would do what it said it would do with them — that is, destroy the Donated Products by shredding them into shoddy fiber.  Accordingly, Plaintiffs understood, and the parties agreed, that all Donated Products would travel only in channels that would lead to their destruction (the "Destruction Channel"), and would not be sold or otherwise transferred into a wholesale or retail channel for ultimate sale to consumers (the "Selling Channel").

### **DEFENDANTS' UNLAWFUL CONDUCT**

35.     Much to their shock and disappointment, in or about October 2015 Plaintiffs learned that significant quantities of second-quality denim and apparel products that they had donated to Phoenix Fibers for destruction (*i.e.*, Donated Products) were being offered for sale at wholesale by the Retailer Defendants, and were being sold at retail on various websites such as eBay.

36.     Upon learning of this, on or about October 27, 2015, Plaintiffs contacted Phoenix Fibers' Plant Manager, Steve Johnson.  During that conversation, Mr. Johnson stated to Plaintiffs that Phoenix Fibers' warehouse could have experienced "leakage" issues as a result of not having sufficient space to securely store the Donated Products.

37.     Shortly thereafter, Plaintiffs contacted the President of Bonded Logic, Tod Kean, to reiterate their concerns about the significant quantities of Donated Products that had found their way out of Phoenix Fibers' warehouse and into the Selling Channel.  During that contact, Mr. Kean confirmed to Plaintiffs that Phoenix Fibers' warehouse could have experienced "leakage" issues as a result of not having sufficient space to securely store the Donated Products.  Mr. Kean further assured Plaintiffs that such issues would be promptly addressed, and that going forward the Donated Products would be properly secured.

38.     Despite these assurances, Plaintiffs' subsequent investigation revealed that there was an increasing volume of Donated Products being made available for wholesale and retail purchase in the Selling Channel by numerous parties, including the Retailer Defendants.

39.     Accordingly, Plaintiffs' counsel sent a letter to Phoenix Fibers/Bonded Logic on November 17, 2015, demanding that immediate action be taken to cut off all "leakage" of Donated Products, and to provide certain undertakings with respect to the steps that would be taken to remedy this serious breach of Plaintiffs' agreements with Phoenix Fibers.

40.     Thereafter, by letter dated December 3, 3015, Phoenix Fibers' counsel responded to Plaintiffs' demands by stating that "[w]hether any product was previously removed from [Phoenix Fibers'] main warehouse floor by anyone is unknown to Phoenix Fibers," and, in a complete about-face from Mr. Kean's prior statements, advised that "Phoenix Fibers has decided to no longer accept [Plaintiffs'] donations of products for recycling."  Phoenix Fibers' counsel further advised that Phoenix Fibers would "allow [Plaintiffs] to reclaim the unprocessed products at their expense."

41.     Accordingly, at significant expense, on December 15 and 16, 2015, Plaintiffs reclaimed 128 pallets (or approximately 70,000 units) of Donated Products from Phoenix Fibers' Arizona warehouse.

42.     Moreover, between December 2015 and February 2016, Plaintiffs, working with the assistance of private investigators, have taken proactive steps to minimize the incalculable harm that has been caused and is continuing to be caused to Plaintiffs' Marks due to the introduction of Donated Products into the Selling Channel, by covertly purchasing over 29,000 units of Donated Products from the Retailer Defendants at a cost of over $190,000.  Despite these efforts, however, significant quantities of Donated Products remain in the Selling Channel.

43.     Upon information and belief, Phoenix Fibers has been distributing and/or selling the Donated Products into the Selling Channel without Plaintiffs' knowledge or consent.  In particular, Phoenix Fibers has been distributing and/or selling the Donated Products to wholesalers and retailers, including, directly or indirectly, U.S. General, SAC Traders, Comak Trading and Wolff, with the knowledge that such parties would resell the Donated Products in the Selling Channel for ultimate purchase by end consumers.

44.     Upon information and belief, Phoenix Fibers' introduction of the Donated Products into the Selling Channel is in violation of its agreements with Plaintiffs, which required that the Donated Products be introduced only into the

Destruction Channel, and that they be shredded and destroyed by Phoenix Fibers and only then used to manufacture environmentally friendly products.

45.    Upon information and belief, U.S. General purchased, and then offered for sale, Donated Products, knowing that such second-quality goods were not intended to be sold in the Selling Channel.

46.    Upon information and belief, SAC Traders, through Chohan, purchased, and then offered for sale, Donated Products, knowing that such second-quality goods were not intended to be sold in the Selling Channel.

47.    Upon information and belief, Comak Trading, through Lydia Cho and Myung Cho, purchased, and then offered for sale, Donated Products, knowing that such second-quality goods were not intended to be sold in the Selling Channel.

48.    Upon information and belief, Wolff purchased, and then offered for sale, Donated Products, knowing that such second-quality goods were not intended to be sold in the Selling Channel.

49.    Upon information and belief, XYZ Companies 1-10 and John and Jane Does 1-10 purchased, and then offered for sale, Donated Products, knowing that such second-quality goods were not intended to be sold in the Selling Channel.

50.    Upon information and belief, Defendants have deliberately and knowingly supplied, distributed, promoted, advertised, offered for sale and/or sold the Donated Products, each of which prominently bears one of Plaintiffs' famous trademarks, MISS ME (Sweet People) or ROCK REVIVAL (RCRV).  As Defendants were aware, such products were and are materially different from first-quality products Plaintiffs authorize for distribution in the Selling Channel and for sale to ultimate consumers.

51.    Upon information and belief, Defendants were aware that the Donated Products were of second quality, and were intended by Plaintiffs only for destruction at the time they were delivered to Phoenix Fibers.  Accordingly, upon information and belief, Defendants have been engaging in the above-described activities

knowingly and intentionally, and/or with reckless disregard for Plaintiffs' rights and the goodwill symbolized by Plaintiffs' Marks.

52.     Upon information and belief, Defendants intend to continue to supply, distribute, promote, advertise, offer for sale and/or sell the Donated Products in this manner unless otherwise restrained by this Court.  Upon further information and belief, Plaintiffs are advised that additional Donated Products will be so introduced into the Selling Channel.

53.     The continued introduction of the Donated Products into the Selling Channel, and their subsequent sale to ultimate consumers, will likely cause consumers, either at the point-of-sale or post-sale, to believe that such second-quality products were authorized, sponsored, or approved for sale to consumers by Plaintiffs.

54.     Unless Defendants' conduct is enjoined, such conduct will severely inhibit and/or destroy the reputation among consumers, which Plaintiffs have worked tirelessly to build, that their denim and apparel products sold under the MISS ME and ROCK REVIVAL Marks are of the highest quality.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT
## (PHOENIX FIBERS)

55.     The allegations set forth in paragraphs 1 through 54 hereof are adopted and incorporated by reference as if fully set forth herein.

56.     Phoenix Fibers had a separate contractual obligation, in each instance that Plaintiffs delivered Donated Products to it, requiring Phoenix Fibers to destroy the Donated Products, *i.e.*, to ensure that such goods were introduced only into the Destruction Channel, and were not transferred and/or sold into the Selling Channel.

57.     Phoenix Fibers breached its contractual obligations by willfully and intentionally introducing the Donated Products into the Selling Channel, including, without limitation, by selling or otherwise transferring the Donated Products to the Retailer Defendants, among others, knowing full well that such Defendants intended

to, in turn, resell the Donated Products at wholesale or retail, ultimately for purchase by consumers.

58. Plaintiffs have fully performed their contractual obligations to Phoenix Fibers by delivering the Donated Products to Phoenix Fibers for destruction.

59. As a direct result of Phoenix Fibers' aforementioned breach of its agreements with Plaintiffs, Donated Products — *i.e.*, second-quality goods bearing Plaintiffs' incalculably valuable trademarks — are being sold to ultimate consumers, thereby causing immediate and irreparable harm to the goodwill of the MISS ME and ROCK REVIVAL Marks, and Plaintiffs have no adequate remedy at law.

60. In addition, as a result of Phoenix Fibers' aforesaid breaches, Plaintiffs have suffered monetary damages in an amount to be determined at trial, including, without limitation, the significant costs and expenses they have incurred in investigating Defendants' activities, reclaiming Donated Products from Phoenix Fibers, and otherwise removing tens of thousands of units of Donated Products from the Selling Channel.

## SECOND CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)
## (<u>ALL DEFENDANTS</u>)

61. The allegations set forth in paragraphs 1 through 60 hereof are adopted and incorporated by reference as if fully set forth herein.

62. By the acts alleged herein, Defendants are making unauthorized use of Sweet People's MISS ME Mark and RCRV's ROCK REVIVAL Mark, by transferring or offering for sale Donated Products bearing these Marks in the Selling Channel, which products are materially different from the first-quality products bearing such Marks that Plaintiffs have authorized for sale in the Selling Channel and to ultimate consumers, and have therefore infringed, and continue to infringe Plaintiffs' Marks, all in violation of 15 U.S.C. § 1114.

63. Defendants' unauthorized distribution and/or sale of Donated Products

bearing the Marks constitutes a commercial use in commerce, and Plaintiffs have not authorized or approved any such use.

64.     Upon information and belief, Defendants' use of Plaintiffs' Marks, by transferring or offering for sale the Donated Products in the Selling Channel, has caused, is intended to cause, and is likely to continue to cause confusion, mistake and deception among the general consuming public as to Plaintiffs' authorization, sponsorship, or approval of the sale of Donated Products — *i.e.*, second-quality goods bearing Plaintiffs' incalculably valuable trademarks — to consumers, and/or a possible affiliation, connection or association between Plaintiffs and Defendants.

65.     Upon information and belief, Defendants have acted with knowledge of Plaintiffs' ownership of the Marks, and with the deliberate intention to unfairly benefit from the goodwill symbolized thereby.

66.     Defendants' acts constitute willful trademark infringement in violation of 15 U.S.C. § 1114.

67.     Upon information and belief, by their actions, Defendants intend to continue to engage in their unlawful conduct, and to infringe Sweet People's MISS ME Mark and RCRV's ROCK REVIVAL Mark, unless restrained by this Court.

68.     Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

69.     Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

**(15 U.S.C. § 1125(a))**

**(ALL DEFENDANTS)**

70.     The allegations set forth in paragraphs 1 through 69 hereof are adopted

and incorporated by reference as if fully set forth herein.

71.     Defendants' unauthorized distribution and/or sale of Donated Products bearing Plaintiffs' Marks constitutes a commercial use in commerce, and Plaintiffs have not authorized or approved any such use.

72.     Upon information and belief, the Donated Products improperly transferred or sold by Phoenix Fibers, and subsequently offered for sale by U.S. General Export, SAC Traders, Comak Trading, Wolff and the Retailer Defendants, bear the MISS ME and ROCK REVIVAL Marks, but are of significantly inferior quality than the high-quality denim and apparel products that Plaintiffs authorize for sale to consumers under such Marks.

73.     Accordingly, Defendants' activities have caused, are intended to cause, and are likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to the source of the Donated Products, and/or Plaintiffs' authorization, sponsorship, or approval of the sale of Donated Products — *i.e.*, second-quality goods bearing Plaintiffs' incalculably valuable trademarks — to consumers, and/or a possible affiliation, connection or association between Plaintiffs and Defendant.

74.     Defendants' conduct as aforesaid constitutes a willful false designation of the origin of the Donated Products, and/or false and misleading descriptions and representations of fact, all in violation of 15 U.S.C. § 1125(a).

75.     Upon information and belief, by their actions, Defendants intend to continue to falsely designate the origin of the Donated Products, and otherwise unfairly compete with Plaintiffs as aforesaid, unless restrained by this Court.

76.     Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

77.     Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiffs, and Plaintiffs have no adequate remedy at

law.

## FOURTH CLAIM FOR RELIEF
## CALIFORNIA UNFAIR COMPETITION
### (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### (ALL DEFENDANTS)

78.    The allegations set forth in paragraphs 1 through 77 hereof are adopted and incorporated by reference as if fully set forth herein.

79.    Defendants' aforesaid acts constitute unlawful, unfair, or fraudulent acts of unfair competition in violation of California Business & Professions Code §§ 17200 *et seq*.

80.    Upon information and belief, Plaintiffs have standing to assert this claim under California Business & Professions Code §§ 17200 *et seq*. because their monetary and property interests have been damaged by Defendants' aforesaid actions.  By way of example, upon information and belief, the value of Plaintiffs' MISS ME and ROCK REVIVAL Marks has been and is being significantly diminished by Defendants' actions.

81.    Upon information and belief, by their actions, Defendants intend to continue their unfairly competitive conduct, unless restrained by this Court.

82.    Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm the Plaintiffs, and Plaintiffs have no adequate remedy at law.

83.    Pursuant to California Business & Professions Code §§ 17200 *et seq.*, Plaintiffs are entitled to injunctive relief and an award of attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
## CALIFORNIA DILUTION
### (Cal. Bus. & Prof. Code § 14247)
### (ALL DEFENDANTS)

84.    The allegations set forth in paragraphs 1 through 83 hereof are adopted and incorporated by reference as if fully set forth herein.

85.     Sweet People is the exclusive owner of the MISS ME Mark, and RCRV is the exclusive owner of the ROCK REVIVAL Mark.

86.     Plaintiffs' Marks are famous as defined within Cal. Bus. & Prof. Code § 14247, and are widely recognized by the general consuming public of California as designations of the source of Plaintiffs' products.

87.     Defendants' distribution and/or sale, without authorization from Plaintiffs, of second-quality products bearing Plaintiffs' Marks that were not intended to be sold to consumers, is diluting the distinctive quality of Plaintiffs' Marks, and decreasing the capacity of Plaintiffs' Marks to identify and distinguish Plaintiffs' products.

88.     Defendants have intentionally and willfully diluted the distinctive quality of the famous MISS ME and ROCK REVIVAL Marks.

89.     Upon information and belief, by their actions, Defendants intend to continue their willful dilution of Plaintiffs' Marks, unless restrained by this Court.

90.     Defendants' acts have irreparably harmed and, unless enjoined, will continue to irreparably harm the Plaintiffs, and Plaintiffs have no adequate remedy at law.

91.     Pursuant to California Business & Professions Code §§ 14247 & 14250, Plaintiffs are entitled to injunctive relief and an award of attorneys' fees and costs.

**SIXTH CLAIM FOR RELIEF**

**COMMON LAW TRADEMARK INFRINGEMENT**

**AND UNFAIR COMPETITION**

**(<u>ALL DEFENDANTS</u>)**

92.     The allegations set forth in paragraphs 1 through 91 hereof are adopted and incorporated by reference as if fully set forth herein.

93.     Defendants' activities have caused, are intended to cause, and are likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to the source of the Donated Products, and/or Plaintiffs'

authorization, sponsorship, or approval of the sale of Donated Products — *i.e.*, second-quality goods bearing Plaintiffs' incalculably valuable trademarks — to consumers, and/or a possible affiliation, connection or association between Plaintiffs and Defendants, in violation of Plaintiffs' rights under the common law of the State of California.

94.     Upon information and belief, by their actions, Defendants intend to continue their infringing and unfairly competitive acts, unless restrained by this Court.

95.     Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

96.     Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage Plaintiffs, and Plaintiffs have no adequate remedy at law.

97.     Pursuant to the common law of the State of California, Plaintiffs are entitled to injunctive relief, and an award of damages and/or Defendants' profits resulting from Defendants' willful conduct.

98.     Plaintiffs are further informed and believe that Defendants' conduct was oppressive, fraudulent and malicious, and are thereby entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Sweet People and RCRV demand judgment against Defendants as follows:

1.     Finding that, (a) as to Count 1, Phoenix Fibers breached its agreements with Plaintiffs; (b) as to Count 2, Defendants engaged in willful infringement of Plaintiffs' Marks in violation of 15 U.S.C. § 1114; (c) as to Count 3, Defendants engaged in willful false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); (d) as to Count 4, Defendants engaged in willful unfair

competition against Plaintiffs in violation of California Business & Professions Code §§ 17200 *et seq*.; (e) as to Count 5, engaged in willful dilution of Plaintiffs' Marks in violation of California Business & Professions Code § 14247; and (f) as to Count 6, Defendants engaged in willful common law trademark infringement and unfair competition against Plaintiffs.

2. That Defendants and all of those acting in concert with them, including their agents and servants, and all those on notice of this suit, be preliminarily and permanently enjoined from:

(a) Supplying, distributing, promoting, advertising, offering for sale and/or selling any Donated Products which bear the MISS ME and ROCK REVIVAL Marks, and/or engaging in any other activity constituting an infringement of any of Sweet People's rights in the MISS ME Mark and RCRV's rights in the ROCK REVIVAL Mark;

(b) Engaging in any activity constituting unfair competition, false designation of origin, or false advertising with Sweet People or RCRV, or any other acts or practices that deceive the public and/or the trade.

3. That Defendants be required to take such other measures as the Court may deem appropriate to prevent the public from deriving any erroneous impression that Donated Products bearing the MISS ME or ROCK REVIVAL Marks are products that Plaintiffs intended for sale to consumers.

4. That Defendants be required to recall all Donated Products.

5. That the Court award Sweet People (a) its actual damages resulting from Phoenix Fibers' breaches of contract; (b) Defendants' profits and Sweet People's damages, to the full extent provided for under 15 U.S.C. § 1117 and/or § 1125, with any monetary relief to be trebled; (c) attorneys' fees and injunctive and other equitable relief, to the full extent provided for by California Business & Professions Code §§ 17200 *et seq.*, §§ 17500 *et seq.*, and § 14247; (d) actual and punitive damages as provided under the common law of the State of California; and (e) Sweet

People's attorneys' fees and litigation-related expenses incurred herein.

6. That the Court award RCRV (a) its actual damages resulting from Phoenix Fibers' breaches of contract; (b) Defendants' profits and RCRV's damages, to the full extent provided for under 15 U.S.C. § 1117 and/or § 1125, with any monetary relief to be trebled; (c) attorneys' fees and injunctive and other equitable relief, to the full extent provided for by California Business & Professions Code §§ 17200 *et seq.* and §§ 17500 *et seq.* and § 14247; (d) actual and punitive damages as provided under the common law of the State of California; and (e) RCRV's attorneys' fees and litigation-related expenses incurred herein.

7. That Sweet People and RCRV be awarded pre-judgment and post-judgment interest on any monetary awards made as part of the judgment against Defendants.

8. That Sweet People and RCRV be awarded such additional and further relief as the Court deems just and proper.

Dated:  May 18, 2016                 ARNOLD & PORTER LLP


By:  */s/ Eric D. Mason*
    John C. Ulin
    John.Ulin@aporter.com
    Louis S. Ederer
    Louis.Ederer@aporter.com
    Matthew T. Salzmann
    Matthew.Salzmann@aporter.com
    Eric D. Mason
    Eric.Mason@aporter.com

    *Attorneys for Plaintiffs Sweet People*
    *Apparel, Inc. d/b/a Miss Me and*
    *RCRV, Inc. d/b/a Rock Revival*

**EXHIBIT A**

# United States of America
### United States Patent and Trademark Office

# MISS ME

**Reg. No. 4,392,381**
SWEET PEOPLE APPAREL, INC. (CALIFORNIA CORPORATION)
4715 S. ALAMEDA STREET
**Registered Aug. 27, 2013** LOS ANGELES, CA 90058

**Int. Cl.: 25**
FOR: MEN'S, WOMEN'S, CHILDREN'S APPAREL NAMELY SHIRTS, BLOUSES, JEANS, TROUSERS, SLACKS, COATS AND DRESSES, IN CLASS 25 (U.S. CLS. 22 AND 39).

**TRADEMARK**
FIRST USE 1-22-2001; IN COMMERCE 1-22-2001.

**PRINCIPAL REGISTER**
THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 2,602,727, 3,790,104 AND OTHERS.

SER. NO. 85-893,215, FILED 4-2-2013.

KIMBERLY PARKS, EXAMINING ATTORNEY



Acting Director of the United States Patent and Trademark Office

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 3,651,168

Registered July 7, 2009

**TRADEMARK**
**PRINCIPAL REGISTER**

## Miss Me

SWEET PEOPLE APPAREL, INC. (CALIFORNIA
   CORPORATION)
1125 E. PICO BLVD.
LOS ANGELES, CA 90021

   FOR: BLOUSES; CAMISOLES; CARDIGANS;
COATS FOR MEN AND WOMEN; DRESSES; JACK-
ETS; JEANS; MEN AND WOMEN JACKETS, COATS,
TROUSERS, VESTS; PANTS; SCARVES; SHIRTS;
SKIRTS AND DRESSES; SLACKS; SWEATERS;

SWIM WEAR FOR GENTLEMEN AND LADIES; T-
SHIRTS; TROUSERS; VESTS, IN CLASS 25 (U.S. CLS.
22 AND 39).

   FIRST USE 9-1-2004; IN COMMERCE 9-1-2004.

   SER. NO. 78-760,331, FILED 11-23-2005.

SHAUNIA CARLYLE, EXAMINING ATTORNEY

- 24 -

**EXHIBIT B**

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

**United States Patent and Trademark Office**

Reg. No. 3,319,860
Registered Oct. 23, 2007

**TRADEMARK**
**PRINCIPAL REGISTER**

# ROCK REVIVAL

GOAPPAREL, LLC (CALIFORNIA LTD LIAB CO)
1600 EAST OLYMPIC BLVD.
LOS ANGELES, CA 90021

FOR: CLOTHING, NAMELY, PANTS, SHORTS, JACKETS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 11-23-2005; IN COMMERCE 3-17-2006.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 78-598,611, FILED 3-30-2005.

EUGENIA MARTIN, EXAMINING ATTORNEY

- 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States of America

## United States Patent and Trademark Office



**Reg. No. 3,939,054**

**Registered Mar. 29, 2011**

**Int. Cl.: 25**

**TRADEMARK**

**PRINCIPAL REGISTER**

RCRV, INC. (CALIFORNIA CORPORATION)
4715 S. ALAMEDA ST.
LOS ANGELES, CA 90058

FOR: JACKETS; JEANS; PANTS; SHORTS; TROUSERS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 3-2-2009; IN COMMERCE 3-2-2009.

OWNER OF U.S. REG. NOS. 3,319,860 AND 3,581,968.

THE MARK CONSISTS OF THE WORDS "ROCK" AND "REVIVAL" IN BANNERS OVER A FLEUR-DE-LYS.

SN 77-981,192, FILED 11-13-2009.

DANNEAN HETZEL, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office