ROSS WERSCHING & WOLCOTT LLP
William C. O'Neill / Bar No. 251071
   WCO@RossLLP.com
3151 Airway Avenue, Building S-1
Costa Mesa, California 92626
Telephone:  (714) 444-3900
Facsimile:   (714) 444-3901

HAYNES AND BOONE, LLP
Mark D. Erickson / Bar No.104403
   mark.erickson@haynesboone.com
Kenneth G. Parker / Bar No. 182911
   kenneth.parker@haynesboone.com
Martin M. Ellison / Bar No. 292060
   martin.ellison@haynesboone.com
Christopher B. Maciel / Bar No. 300733
   chris.maciel@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone:  (949) 202-3000
Facsimile    (949) 202-3001

Attorneys for Defendant
PHOENIX FIBERS, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC. d/b/a MISS ME, a California corporation, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHOENIX FIBERS, INC., an Arizona corporation, et al., <br><br> Defendants. | Case No. 2:16-cv-00940-TJH-JC <br><br> Hon. Terry J. Hatter, Jr. <br><br> **DEFENDANT PHOENIX FIBERS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> *[Notice of Motion and Motion; Memorandum of Points and Authorities; [Proposed] Judgment; [Proposed] Order; and Appendix of Evidence Filed Concurrently Herewith]* <br><br> Date:       January 30, 2017 <br> Time:      Under submission <br> Location: Courtroom 9B <br>               First Street Courthouse |

Pursuant to Local Rule 56, Defendant Phoenix Fibers, Inc. ("Phoenix Fibers") submits this Statement of Uncontroverted Facts and Conclusions of Law, together with references to supporting evidence, in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

## UNCONTROVERTED FACTS

### A. Defendant Phoenix Fibers' Business

1. Defendant Phoenix Fibers is an Arizona-based clothing and textile recycling company that was founded in July 2011. (Appendix of Exhibits ("App. Ex.") LL; Declaration of Tod Kean ("Kean Decl. (App. Ex. A)")[1] ¶ 2.) In the textile recycling industry, clothes are recycled in various ways. One way in which clothes are recycled within the clothing recycling industry is to sell them as "credential." (Declaration of Steven Johnson ("Johnson Decl. (App. Ex. B)") ¶ 3; Kean Decl. (App. Ex. A) ¶ 6).

2. In the context of recycling clothing and Phoenix Fibers' industry, "credential" means clothing or shoes, sold in bulk, and sold by the pound. (Johnson Decl. (App. Ex. B) ¶ 3; Kean Decl. (App. Ex. A) ¶ 6.)

3. Another way of recycling clothes and textiles is repurposing them by simply reselling them in consignment or thrift shops. (Declaration of Christopher Maciel ("Maciel Decl. (App. Ex. C)") ¶¶ 6-12; App. Ex. I-O; Johnson Decl. (App. Ex. B) ¶ 4.)

4. A third way is to turn the clothes into something else entirely. (Johnson Decl. (App. Ex. B) ¶ 5; Kean Decl. (App. Ex. A) ¶ 7; Maciel Decl. (App. Ex. C) ¶ 10; App. Ex. M.)

---

[1] The declarations of Tod Kean, Steven Johnson, and Christopher Maciel are attached to the Appendix of Evidence, as Exhibits A through C, filed concurrently. All exhibits (including deposition transcript excerpts) are attached to the Appendix of Evidence filed concurrently herewith and are lettered D through NN.

5. Phoenix Fibers is solely a clothing and textile recycling company that engages in three types of recycling. First, Phoenix Fibers accepts donations of clothing that it then sells, by the pound and in bulk, as credential. Second, Phoenix Fibers accepts donations of clothing, converts that clothing through a proprietary shredding process into shoddy or filler fiber, and then sells it to companies that use this fiber for various purposes (e.g., for housing, automotive, and appliance insulation). Third, *for a fee*, Phoenix Fibers agrees to destroy certain clothing items and produces a certificate of destruction to the customer. (Johnson Decl. (App. Ex. B) ¶ 6; Kean Decl. (App. Ex. A) ¶ 8.)

6. Tod Kean is the president and an owner of Phoenix Fibers. (Kean Decl. (App. Ex. A) ¶ 1.)

7. Steven Johnson is the current plant manager of Phoenix Fibers, and has been since around September 2013. (Johnson Decl. (App. Ex. B) ¶ 1; Kean Decl. (App. Ex. A) ¶ 10.)

8. Prior to Mr. Johnson being plant manager, a person named Matt Graham was the plant manager, as well as the acting general manager, during the startup phase of Phoenix Fibers. (Kean Decl. (App. Ex. A) ¶ 10.)

9. Mr. Graham started working for Phoenix Fibers in 2011, when the business started, and left in 2013. (Kean Decl. (App. Ex. A) ¶ 10.)

**B.** <u>**Plaintiff Sweet People Apparel, Inc. ("Sweet People")**</u>

10. Plaintiff Sweet People sells certain products, including jeans and cutoff denim shorts, under the Miss Me brand name. (First Amended Complaint ("Complaint (App. Ex. H)" ¶ 17.)

11. Miss Me brand jeans cost a consumer approximately $100 at retail. (Maciel Decl. (App. Ex. C) ¶ 36; App Ex. MM.)

12. Lisa Song was an employee of Sweet People from 2009 to February 2014 and worked as a human resources manager during her entire tenure at Sweet

People. (Deposition of Lisa Song ("Song Depo. (App. Ex. D)") 18:19-19:16; App. Ex. P.)

13. Lilly Kim is the General Counsel for Sweet People and has been since 2010. (Rule 30(b)(6) Deposition of Lilly Kim "Rule 30(b)(6) Depo. (Kim) (App. Ex. E)" 31:24-32:7.)

14. Felipe Salgado is an employee of Sweet People and began working for Sweet People in October 2004. (Rule (30)(b)(6) Deposition of Felipe Salgado ("Rule 30(b)(6) Depo. (Salgado) (App. Ex. F)" 21:20-22:9; 24:1-15.)

15. Mr. Salgado was responsible for merchandise shipping at Sweet People from 2013 to the present time. (Rule 30(b)(6) Depo. (Salgado) (App. Ex. F) 21:20-28:15.)

**C.  Plaintiff RCRV, Inc. ("RCRV")**

16. Plaintiff RCRV is a denim and apparel company that was formed in 2007. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 102:22-103:1; Complaint (App. Ex. H) ¶ 17.)

17. RCRV sells certain products under its Rock Revival brand name. (Complaint (App. Ex. H) ¶ 17.)

18. Rock Revival brand jeans cost a consumer approximately between $150 and $200 at retail. (Maciel Decl. (App. Ex. C) ¶ 37; App Ex. NN.)

19. In addition to being the General Counsel for Sweet People, Lilly Kim is also the General Counsel for RCRV and has been since 2010. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 31:24-32:7.)

20. In addition to being an employee of Sweet People, Mr. Salgado is an employee of RCRV and has been since 2008. (Rule 30(b)(6) Depo. (Salgado) (App. Ex. F) 15:19-22; 18:2-24; 21:20-28:15.) At RCRV, Mr. Salgado oversees customer service, the shipping department, and the warehouse. (Rule 30(b)(6) Depo. (Salgado) (App. Ex. F) 17:25-18:24.)

DEFENDANT PHOENIX FIBERS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

21. Ms. Song was never employed by RCRV. (Song Depo. (App. Ex. D) 18:19-19:16; 21:9-12; App. Ex. P).

22. Further, Ms. Song never negotiated any contracts on behalf of RCRV. (Song Depo. (App. Ex. D) 19:19-20:12).

23. There is no evidence Ms. Song ever represented herself as an employee or agent of RCRV during any conversation that she had with anyone from Phoenix Fibers.

**D.      The Interaction Between Sweet People, RCRV, and Phoenix Fibers**

24. Plaintiffs viewed Phoenix Fibers' website prior to shipping any clothing to Phoenix Fibers. (Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.)

25. Since its inception, Phoenix Fibers' website homepage has stated, "Phoenix Fibers collects and recycles textiles in a variety of ways. We maintain a zero waste philosophy whenever feasible. The items we do not use in our shredding process are resold to other recycling companies." (Kean Decl. (App. Ex. A) ¶ 9; App. Ex. T; Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 166:3-16.)

26. Plaintiffs allege that in 2011 they entered into a contract with Phoenix Fibers (the "Alleged Contract"). (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 14:1-9; 18:4-19:3; 28:12-29:7.) The Alleged Contract is not a written contract. (*Id.* at 32:17-34:12; Song Depo. (App. Ex. D) 74:19-75:15; App. Ex. FF.)

27. Ms. Kim and Plaintiffs allege, but cannot prove, that, pursuant to the terms of the Alleged Contract, Phoenix Fibers was obligated to recycle all products donated to Phoenix Fibers by Plaintiffs. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 26:1-6; 197:18-25; App. Ex. V-W.) Further, Ms. Kim and Plaintiffs assert, but cannot prove, that Plaintiffs *explicitly* placed a requirement on Phoenix Fibers to destroy all items that Plaintiffs donated, and that the Alleged Contract required Phoenix Fibers to destroy all items that Plaintiffs donated. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 26:1-6; 197:18-25; 26:20-29:14; App. Ex. V-W.)

28. Plaintiffs' 30(b)(6) witness regarding negotiation of, and entry into, the Alleged Contract testified that the Alleged Contract was negotiated and entered into by the human resource manager, Ms. Song, on behalf of Plaintiffs, as opposed to Ms. Kim, Plaintiffs' General Counsel or anyone else. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 14:1-9; 18:4-19:15; 31:24-32:7; 175:25-176:3.) Plaintiffs' 30(b)(6) witness further testified that Ms. Song negotiated the Alleged Contract with Mr. Graham and then entered into the Alleged Contract with Mr. Graham, a representative of Phoenix Fibers. (*Id.* at 14:1-9; 18:4-19:3; 28:12-29:4.)

29. To the extent there is a contract, the Alleged Contract was entered into prior to November 7, 2011. (Song Depo. (App. Ex. D) 57:14-60:3; 62:8-17; 82:17-83:7; Maciel Decl. (App. Ex. C) ¶ 28; App. Ex. EE).

30. Plaintiffs have no evidence that Ms. Kim, the General Counsel, has any personal knowledge of the formation of, or terms of, the Alleged Contract.

31. Ms. Kim did not have any communications of any kind with anyone from Phoenix Fibers until 2015, years after the alleged formation of the Alleged Contract. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 19:4-15; 31:24-32:7.)

32. Ms. Kim never spoke to or communicated with Mr. Graham about anything. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 19:4-15; 175:25-176:3.)

33. Plaintiffs have no evidence that Mr. Salgado has personal knowledge of the terms of the Alleged Contract between Phoenix Fibers.

34. Mr. Salgado does not remember ever speaking to former Phoenix Fibers employee, Mr. Graham. (Rule 30(b)(6) Depo. (Salgado) (App. Ex. F) 71:1-72:4). Mr. Salgado never spoke to current Phoenix Fibers employee Mr. Johnson about any obligations between Phoenix Fibers and Plaintiffs. (*Id.* at 73:19-74:2.)

35. No one ever told Mr. Salgado that there was a contract between Plaintiffs and Phoenix Fibers. (Rule 30(b)(6) Depo. (Salgado)(App. Ex. F) 90:5-12.)

36. Ms. Song, the only person who spoke to Phoenix Fibers regarding the Alleged Contract, cannot recall whether any part of the Alleged Contract was based on conversations she had with Phoenix Fibers. (Song Depo. (App. Ex. D) 61:21-62:1.)

37. Plaintiffs do not know if, and cannot prove that, during verbal discussions, Ms. Song ever required Plaintiffs to destroy all items that they donated to Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 18:4-19:15; 27:13-16; 28:12-29:14; Song Depo. (App. Ex. D) 31:5-33:5; 33:9-20; 35:21-36:14; 51:5-52:3; 52:11-17; Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.)

38. Ms. Song does not recall any oral communications in which she required Plaintiffs to destroy all the items that they donated to Phoenix Fibers. (Song Depo. (App. Ex. D) 31:5-33:5; 33:9-20; 35:21-36:14; 51:5-52:3; 52:11-17.)

39. Further, despite Ms. Kim's belief, Plaintiffs do not know if, and cannot prove that, during verbal discussions, Phoenix Fibers ever agreed to destroy all items that Plaintiffs donated to Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 18:4-19:15; 27:13-16; 28:12-29:14; Song Depo. (App. Ex. D) 31:5-33:5; 33:9-20; 35:21-36:14; 51:5-52:3; 52:11-17; Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.) Nor have Plaintiffs provided evidence that Phoenix Fibers ever agreed to destroy every shipment of materials Plaintiffs provided them. (*See id.*)

40. Plaintiffs' 30(b)(6) witness admitted: "I don't know if the word 'destroyed' was used in the verbal discussions" between Ms. Song and Mr. Graham. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 27:13-19.)

41. Plaintiffs allege that Ms. Song reported to Ms. Kim with respect to the negotiations and entry into the Alleged Contract between Plaintiffs and Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 14:4-9; 18:4-19:15; 24:17-25:4; 28:12-29:14; Song Depo. (App. Ex. D) 27:9-15.)

42. Despite reporting to Ms. Kim with respect to the negotiations between Sweet People and Phoenix Fibers and the alleged formation of the Alleged Contract, Ms. Song never reported to Ms. Kim that the Alleged Contract contained an explicit requirement on Phoenix Fibers to destroy all items that Plaintiffs donated to Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 18:4-19:15; 27:13-19; 28:12-29:14.)

43. Prior to October 27, 2015, Plaintiffs never verbally or electronically told Phoenix Fibers that reselling the products donated to Phoenix Fibers by Plaintiffs was prohibited. (Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.)

44. Plaintiffs were aware of Phoenix Fibers' certified destruction program. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 167:21-168:24; 169:12-170:3; Maciel Decl. (App. Ex. C) ¶ 18; App. Ex. U.) Plaintiffs did not require any certification from Phoenix Fibers confirming that the items Plaintiffs donated to Phoenix Fibers had been destroyed. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 34:13-21; Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.) Plaintiffs never paid Phoenix Fibers to destroy the items that Plaintiffs donated to Phoenix Fibers. (Johnson Decl. (App. Ex. B) ¶ 7.)

45. Prior to October 2015, Plaintiffs never sought confirmation that any products it had donated to Phoenix Fibers had been destroyed. (Maciel Decl. (App. Ex. C) ¶¶ 32-33; App. Ex. II-JJ.)

46. Plaintiffs assert that they believed that recycling was synonymous with "destroying" in the context of clothing. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 27:20-28:5; 39:5-12; 197:18-25; 198:23-199:12.)

47. Ms. Song never formed a specific agreement with Phoenix Fibers, she merely had an understanding of what Phoenix Fibers did. (Song Depo. (App. Ex. D) 62:19-63:16.)

48. Ms. Song's understanding of what Phoenix Fibers did was based, in part, on conversations with a third party and the information she viewed on a third-party website. (Song Depo. (App. Ex. D) 43:23-48:17.)

49. Plaintiffs assert that subsequent to the formation of the Alleged Contract, Plaintiffs and Phoenix Fibers entered a series of other contracts, the terms of which pertained only to the shipment of the products that Plaintiffs would donate to Phoenix Fibers pursuant to the Alleged Contract (the "Shipment Contracts"). (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 15:1-16:6; 16:21-17:7; 17:14-18:3; Song Depo. (App. Ex. D) 55:13-56:13.)

50. Despite the Shipment Contracts, the terms of the Alleged Contract initially entered into by Ms. Song never changed. (Song Depo. (App. Ex. D) 86:8-15.)

51. Plaintiffs allege that the *Shipment Contracts* were negotiated by numerous individuals, including Lilly Kim and Felipe Salgado, on behalf of Plaintiffs, and Matt Graham and Steven Johnson, on behalf of Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 17:1-7; 201:14-202:25; Maciel Decl. (App. Ex. C) ¶¶ 19-20; App. Ex. V-W; Song Depo. (App. Ex. D) 55:13-56:13.)

52. The Shipping Contracts only governed the terms of actual shipment and timing of shipment of materials to Phoenix Fibers, not other terms. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 15:1-16:6; 16:21-17:7; 17:14-18:3; Song Depo. (App. Ex. D) 55:13-56:13.)

53. Sweet People donated Miss Me brand clothing items to Phoenix Fibers. (Complaint (App. Ex. H) ¶¶ 28-30.)

54. RCRV donated Rock Revival brand clothing items to Phoenix Fibers. (Complaint (App. Ex. H) ¶¶ 28-30.)

55. Damaged or defective items that Plaintiffs donated to Phoenix Fibers were marked as either damaged or defective. (Rule 30(b)(6) Depo. (Kim) (App.

Ex. E) 77:13-78:1; 108:10-109:3; 112:9-113:4; 117:20-23; 123:18-124:14; 132:9-14; App Ex. R-S; Rule 30(b)(6) Depo. (Salgado) (App. Ex. F) 32:23-33:16.)

56. No one at Phoenix Fibers ever affixed any Miss Me or Rock Revival brand name to any product or collection of products. (Kean Decl. (App. Ex. A) ¶¶ 11-16.)

E. **Post-Donation Recycling**

57. Defendant U.S. General Exports ("U.S. General") is a clothing recycling company. (Kean Decl. (App. Ex. A) ¶ 13; Johnson Decl. (App. Ex. B) ¶ 8; Maciel Decl. (App. Ex. C) ¶ 31; App. Ex. HH.)

58. Phoenix Fibers sold certain products donated by Plaintiffs, as credential, in bulk and by the pound, to U.S. General. (Johnson Decl. (App. Ex. B) ¶ 8.)

59. Phoenix Fibers first sold credential to U.S. General in 2013 and not before; however, it was not until 2015 that Phoenix Fibers sold credential to U.S. General that contained items donated by Sweet People or RCRV. Many of the items donated by Sweet People and RCRV were converted into shoddy fiber. (Johnson Decl. (App. Ex. B) ¶ 9.)

60. Kamel Mroueh was a representative of U.S. General with whom representatives of Phoenix Fibers communicated to facilitate the sale of credential. (Johnson Decl. (App. Ex. B) ¶ 10.)

61. U.S. General, through Mr. Mroueh, only purchased credential from Phoenix Fibers at Phoenix Fibers' warehouse. (Johnson Decl. (App. Ex. B) ¶ 11.) The credential was stored in large bins or boxes. (Johnson Decl. (App. Ex. B) ¶ 11.) Mr. Mroueh never inquired into which brands of credential Phoenix Fibers had in its warehouse nor did Mr. Mroueh ever state that he was interested in certain brands of credential. (Johnson Decl. (App. Ex. B) ¶ 12.)

62. U.S. General paid the market rate for credential for all items it purchased from Phoenix Fibers, which was generally 30¢ to 60¢ per pound. U.S.

| | |
|---|---|
| 1 | General never paid a premium for credential that included Sweet People or Rock |
| 2 | Revival products. (Johnson Decl. (App. Ex. B) ¶ 13; Maciel Decl. (App. Ex. C) ¶ |
| 3 | 30; App. Ex. GG.) |

63. U.S. General was not confused as to the origin or quality of the clothing it purchased from Phoenix Fibers. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 198:23-199:12; Deposition of Tiffany Wolff ("Wolff Depo. (App. Ex. G)") 125:11:25; 146:14-147:14.)

64. Any purchaser of the items that were originally donated to Phoenix Fibers by Plaintiffs was not confused as to the quality or origin of the credential that it was purchasing. (Rule 30(b)(6) Depo. (Kim) (App. Ex. E) 198:23-199:12; Wolff Depo. (App. Ex. G) 125:11:25; 146:14-147:14.) The purchaser understood that the items were defective or second-quality goods that originated with Sweet People or RCRV. (*Id.*)

65. Phoenix Fibers never advertised that it sold, distributed, manufactured or otherwise had any connection of any kind with the Miss Me brand or any other brand of Sweet People. (Kean Decl. (App. Ex. A) ¶¶ 11-16.)

66. Phoenix Fibers never advertised that it sold, distributed, manufactured or otherwise had any connection of any kind with the Rock Revival brand or any other brand of RCRV. (Kean Decl. (App. Ex. A) ¶¶ 11-16.)

67. On October 27, 2017, Ms. Song called Mr. Kean to complain about certain Miss Me and Rock Revival denim being sold on eBay. After October 27, 2015, Phoenix Fibers never sold any products that Plaintiffs donated to Phoenix Fibers as credential to anyone. (Kean Decl. (App. Ex. A) ¶ 17.)

68. Plaintiffs allege that between December 2015 and February 2016, they covertly purchased back 29,000 back units of denim containing their trademarks from the retailers named as defendants in the Complaint. (Complaint (App. Ex. H) ¶ 40).

DEFENDANT PHOENIX FIBERS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW

69. In December 2015, with the cooperation of Phoenix Fibers, Plaintiffs removed from Phoenix Fibers' warehouse all the remaining products, totaling five truckloads and no less than 130,000 pounds, that they had previously donated to Phoenix Fibers. (Johnson Decl. (App. Ex. B) ¶ 17.)

70. Plaintiffs cannot prove, nor have they even alleged, that Phoenix Fibers conspired with other defendants and certainly not to such an extent as to be co-partners with them.

## CONCLUSIONS OF LAW

### A. Breach of Contract

1. Whether a contract exists is properly decided on summary judgment if the underlying material facts are not in dispute. *Local Motion, Inc. v. Niescher*, 105 F3d 1278, 1280 (9th Cir. 1997); *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 692 F3d 580, 587 (7th Cir. 2012).

2. To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

3. A contract requires mutual consent, which requires that the parties exchange promises that represent legal obligations. *Bleecher v. Conte*, 29 Cal.3d 345, 350 (1981).

4. An offer must be sufficiently definite, or must call for such definite terms in the acceptance that the performance promised is reasonably certain. *Ladas v. California State Automobile Assn.*, 19 Cal. App. 4th 761, 770 (1993). Indeed, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *City of Moorpark v. Moorpark Unified School Dist.*, 54 Cal.3d 921, 930 (1991).

5. The parties' mutual or bilateral mistake is a complete defense to a claim for breach of contract. *Edwards v. Lang*, 198 Cal. App. 2d 5, 12 (1961); Cal. Civ. Code, §§ 1567, 1568, 1577; Restatement (Second) of Contracts § 20(1) (1981).

**B.   Lanham Act and State Court Trademark and Unfair Competition**

6. Likelihood of confusion is not only a necessary element in proving trademark infringement under the Lanham Act, it is also a requirement in asserting a trademark infringement claim under California Common Law. *Wood v. Apodaca*, 375 F. Supp. 2d 942, 947 (N.D. Cal. 2005); *see also Toho Co., v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981) ("Without likelihood of confusion there is no infringement under the California common law of trademarks.")

7. "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

8. Confusion is unlikely when the alleged purchaser is sophisticated, where the goods are expensive, or where the goods are purchased after a lengthy sales cycle by a knowledgeable consumer. *Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW (RZx), 2009 U.S. Dist. LEXIS 125835, at *26 (C.D. Cal. Sep. 14, 2009) ("*Network Automation*"); *Accuride Int'l, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1537 (9th Cir. 1989) (likelihood of confusion is unlikely where purchasers are highly specialized professionals).

9. "A trademark owner's right under the Lanham Act to control distribution of its own products is limited by the 'first sale' doctrine." *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998); *see also Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). Under

1  this doctrine, resale of the "original article under the producer's trademark is
2  generally neither trademark infringement nor unfair competition." *Id.*

3      10.    Partial summary judgment on the issue of damages is appropriate
4  when the plaintiff cannot establish the requisite standards to recover the damages
5  sought. *See Blau, v. YMI Jeanswear, Inc.*, No. CV02-09551, 2004 WL 5313967, at
6  *6-7 (C.D. Cal. Jan. 2, 2004) (granting summary judgment for defendant on, inter
7  alia, profits for willful infringement).

8      11.    Willfulness, at least, is a prerequisite to the award for profits under 15
9  U.S.C. § 1117(a); treble damages under 15 U.S.C. § 1117; punitive damages under
10 common law unfair competition; and attorneys' fees and costs of the suit under 15
11 U.S.C. § 1117(a) and 35 U.S.C. § 285. *See Lindy Pen Co. v. Bic Pen Corp.*, 982
12 F.2d at 1405 (9th Circ. 1993); *Binder v. Disability Grp., Inc.*, 772 F.Supp. 2d.
13 1172, 1183 (C.D. Cal. 2011).

14     12.    A defendant's profits are recoverable as an equitable remedy under
15 the Lanham Act only when the trademark infringement is "willfully calculated to
16 exploit the advantage of an established mark." *Lindy Pen Co.*, 982 F.2d at 1406
17 (citation omitted); *Blau*, 2004 WL 5313967 at *3.

18     13.    Under the California common law claim for unfair competition,
19 punitive damages are available only when a defendant's actions were done with
20 malice, oppression, or fraud, each of which, at a minimum, require willful action.
21 *See* Cal. Civ. Code § 3294(a); *see also, Waits v. Frito-Lay, Inc.*, 978 F.2d 1093,
22 1105 (9th Cir. 1992); Cal. Civ. C. § 3294(c) (defining malice as "conduct which is
23 intended by the defendant to cause injury to the plaintiff or despicable conduct
24 which is carried on by the defendant with a willful and conscious disregard of the
25 rights or safety of others[;]" oppression "means despicable conduct that subjects a
26 person to cruel and unjust hardship in conscious disregard of that person's
27 rights[;]" and fraud "means an intentional misrepresentation, deceit, or
28 concealment of a material fact known to the defendant with the intention on the

part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.").

14. A court may award attorneys' fees under the Lanham Act only in exceptional cases. 15 U.S.C. § 1117(a); 35 U.S.C. § 285.

15. A trademark case is not exceptional unless the infringement is "malicious, fraudulent, deliberate or willful." *Lindy Pen Co.*, 982 F.2d at 1409.

## C. Unfair Competition (Bus. & Prof. Code § 17200)

16. A plaintiff may prove a violation of Business & Professions Code § 17200 by showing that a defendant violated some other law. *AICCO, Inc. v. Ins. Co. of N. Am.*, 90 Cal. App. 4th 579, 587 (2001); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Therefore, if a plaintiff does not show that a defendant violated some other law, then plaintiff cannot show that defendant violated the "unlawful" prong of Business & Professions Code § 17200. *AICCO*, 90 Cal. App. 4th at 587

17. A breach of contract does not establish a violation of Business & Professions Code § 17200. *AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003).

18. A plaintiff can also show that a defendant violated Business & Professions Code § 17200 by showing that the defendant committed fraud. *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (2009). A claim for fraud under Business & Professions Code § 17200 must be pled under the heightened pleading requirements of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## D. Joint and Several Liability for Defendants' Profits

19. It is well established that in cases of intellectual property infringement, co-infringers, unless they are partners, are severally accountable only for the profits each has received. *Sammons v. Colonial Press, Inc.*, 126 F.2d 341, 346 (1st Cir. 1942); *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981); *KTS*

1  *Karaoke, Inc. v. Sony/ATV Music Publ'g LLC*, No. CV-12-00014-MWF (JEMx),
2  2014 U.S. Dist. LEXIS 190492, at *15 (C.D. Cal. Jan. 14, 2014).

4  DATED: December 30, 2016          HAYNES AND BOONE, LLP

                                     By:  /s/ *Kenneth G. Parker*
                                          Kenneth G. Parker
                                          Attorneys for Defendant
                                          Phoenix Fibers, Inc.

**DEFENDANT PHOENIX FIBERS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 years and not a party to the within action. I am employed in the County of Orange, State of California, within which county the subject service occurred. My business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

On December 30, 2016, I served the following document described as: **DEFENDANT PHOENIX FIBERS, INC.'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action in the manner identified below:

[XXX] **BY ELECTRONIC FILING.** I caused such document(s) to be electronically filed and served through the United States District Court's CM/ECF System for the within action. This service complies with the Federal Rules of Civil Procedure. The file transmission was reported as complete and a copy of the Court's Notice of Electronic Filing will be maintained with the original document(s) in our office. Participants in the case who are registered CM/ECF users will be served by the District CM/ECF System.

I declare that I am employed in the offices of a member of the bar of this Court at whose direction this service was made, and that this service complies with the Federal Rules of Civil Procedure.

Executed on December 30, 2016, at Costa Mesa, California.

/s/ Breean Cordova
Breean Cordova