1 | ROSS WERSCHING & WOLCOTT LLP
William C. O'Neill / Bar No. 251071
2 | WCO@RossLLP.com
3151 Airway Avenue, Building S-1
3 | Costa Mesa, California 92626
Telephone:  (714) 444-3900
4 | Facsimile:   (714) 444-3901

5 | HAYNES AND BOONE, LLP
Mark D. Erickson / Bar No.104403
6 | mark.erickson@haynesboone.com
Kenneth G. Parker / Bar No. 182911
7 | kenneth.parker@haynesboone.com
Martin M. Ellison / Bar No. 292060
8 | martin.ellison@haynesboone.com
Christopher B. Maciel / Bar No. 300733
9 | chris.maciel@haynesboone.com
600 Anton Boulevard, Suite 700
10 | Costa Mesa, California 92626
Telephone:  (949) 202-3000
11 | Facsimile    (949) 202-3001

12 | Attorneys for Defendant
PHOENIX FIBERS, INC.

13

14 | **UNITED STATES DISTRICT COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

16 | SWEET PEOPLE APPAREL, INC.
d/b/a MISS ME, a California
17 | corporation, et al.,

18 |             Plaintiffs,

19 |     v.

20 | PHOENIX FIBERS, INC., an
Arizona corporation, et al.,
21

22 |             Defendants.

Case No. 2:16-cv-00940-TJH-JC

Hon. Terry J. Hatter, Jr.

**DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

*[Phoenix Fibers' Consolidated Separate Statement, Objections to Plaintiffs' Evidence, and Declaration of William C. O'Neill Filed Concurrently Herewith]*

Date:     January 30, 2017
Time:    Under Submission
Location: Courtroom 9B
              First Street Courthouse

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................... ii

INTRODUCTION ....................................................................... 1

ARGUMENT ............................................................................ 3

   A.   The vast majority of Plaintiffs' evidence is inadmissible, and as a result Plaintiffs cannot establish a genuine dispute of material fact with respect to any of their claims. ....................................... 4

   B.   Phoenix Fibers is entitled to summary judgment on Plaintiffs' contract claim. ............................................................................... 8

      1.   The evidence does not establish the necessary elements of Plaintiffs' breach-of-contract claim ......................................... 8

      2.   Plaintiffs present no evidence to contradict Phoenix Fibers' argument that, if a contract did exist, it is void due to mutual mistake. ........................................................................ 13

      3.   Plaintiffs have provided no facts showing that RCRV is a party to any alleged contract. ................................................. 14

   C.   Plaintiffs' trademark and trademark-related claims (claims two through six) cannot succeed as a matter of law. ........................... 15

      1.   Plaintiffs produced no evidence to support a finding of likelihood of confusion, and the evidence on hand uniformly demonstrates an absence of confusion. ............................................... 15

      2.   It does not matter that Plaintiffs now want this case to be about post-sale confusion, because there is no evidence of that type of confusion either. .......................................................... 18

      3.   The first sale doctrine applies here, because Plaintiffs cannot establish consumer confusion or the existence of a contract between themselves and Phoenix Fibers. ............................... 20

   D.   Plaintiffs' claims for joint and several liability and punitive damages flow directly from their trademark infringement causes of action, and so they must fail because the trademark claims fail. ................... 20

   E.   There are no reasonable grounds for denying or postponing this Motion under Rule 56(d)(1). .................................................. 22

CONCLUSION ........................................................................ 24

CERTIFICATE OF SERVICE ...................................................... 25

i

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.*
125 F.Supp.3d 945 (N.D. Cal. 2015)............................................................21

*Aluma Sys. Concrete Constr. of Cal. v. Nibbi Bros. Inc.*
2 Cal.App.4th 620 (2016) .........................................................................15

*Au-Tomotive Gold v. Volkswagen of Am.*
603 F.3d 1133 (9th Cir. 2010)....................................................................20

*Bias v. Moynihan*
508 F.3d 1212 (9th Cir. 2007)......................................................................5

*Bleecher v. Conte*
29 Cal.3d 345 (1981) ...................................................................................8

*Canada v. Blain's Helicopters, Inc.*
831 F.2d 920 (9th Cir. 1987).........................................................................5

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ....................................................................................3

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*
525 F.3d 822 (9th Cir. 2008)................................................................22, 23

*Garcia v. Coleman*
No. C-07-2279 EMC, 2008 U.S. Dist. LEXIS 68672
(N.D. Cal. Sep. 8, 2008) ............................................................................18

*Grigoryan v. Experian Info. Solutions, Inc.*
84 F. Supp. 3d 1044 (C.D. Cal. 2014).............................................................5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*
896 F.2d 1542 (9th Cir. 1990).......................................................................5

*Hughes v. AutoZone Parts, Inc.*
No. CV 16-08009 SJO (KSx), 2017 U.S. Dist. LEXIS 1785
(C.D. Cal. Jan. 4, 2017) ...............................................................................5

*Hyde v. Stanley Tools*
107 F. Supp. 2d 992 (E.D. La. 2000) ............................................................10

*In re Oracle Corp. Sec. Litig.*
627 F.3d 376 (9th Cir. 2010) ........................................................................3

*Ins. Co. of N. Am. v. Hanks, Conard & Sons, Inc.*
250 Cal. App. 2d 156 (1967) ..................................................................14, 15

*Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*
285 F.3d 848 (9th Cir. 2002) ......................................................................19

*Kingsbury, Inc. v. GE Power Conversion UK, Ltd.*
78 F. Supp. 3d 611 (E.D. Pa. 2014).............................................................11

ii

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*KTS Karaoke, Inc. v. Sony/ATV Music Publ'g LLC*
    No. CV-12-00014-MWF (JEMx), 2014 U.S. Dist. LEXIS 190492
    (C.D. Cal. Jan. 14, 2014) ........................................................................21

*Ladas v. Cal. State Auto. Assn.*
    19 Cal. App. 4th 761 (1993) ...............................................................8, 12

*Levi Strauss & Co. v. Blue Bell, Inc.*
    632 F.2d 817 (9th Cir. 1980) ...............................................................19

*Local Motion v. Niescher*
    105 F.3d 1278 (9th Cir. 1997) ..............................................................14

*Logan v. City of Pullman*
    392 F. Supp. 2d 1246 (E.D. Wash. 2005) ...............................................7

*Mateo v. M/S Kiso*
    805 F. Supp. 761 (N.D. Cal. 1991) .......................................................16

*MCA, Inc. v. Wilson*
    677 F.2d 180 (2d Cir. 1981) ................................................................21

*PepsiCo, Inc. v. IRIE Motivations, Inc.*
    No. CV08-2242 RSWL, 2008 U.S. Dist. LEXIS 108025, at *5-6
    (C.D. Cal. Dec. 29, 2008) ...................................................................22

*Rainey v. Am. Forest & Paper Ass'n, Inc.*
    26 F. Supp. 2d 82 (D.D.C. 1998) .........................................................10

*Rashidian v. United States*
    No. SACV 14-16-JLS, 2014 U.S. Dist. LEXIS 179607
    (C.D. Cal. Dec. 4, 2014) .......................................................................5

*Rearden LLC v. Rearden Commerce, Inc.*
    683 F.3d 1190 (9th Cir. 2012) ..............................................................18

*Richman v. Hartley*
    224 Cal. App. 4th 1182 (2014) ..............................................................8

*Rosa v. TASER Int'l, Inc.*
    684 F.3d 941 (9th Cir. 2012) .................................................................6

*Russell v. Union Oil Co.*
    7 Cal. App. 3d 110 (1970) ..........................................................8, 11, 12

*Sammons v. Colonial Press, Inc.*
    126 F.2d 341 (1st Cir. 1942) ................................................................21

*SEC v. JT Wallenbrock & Assocs.*
    440 F.3d 1109 (9th Cir. 2006) ..............................................................21

*SEC v. Wilde*
    No.: SACV 11-0315 DOC(AJWx), 2012 U.S. Dist. LEXIS 183252
    (C.D. Cal. Dec. 17, 2012) ....................................................................21

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Shaw v. Regents of Univ. of Cal.*
    58 Cal. App. 4th 44 (1997) .................................................................. 9

*Thornhill Publ'g Co. v. GTE Corp.*
    594 F.2d 730 (9th Cir. 1979) ............................................................ 16

*Vinyl Visions, LLC v. Ohme*
    No. CV 13-01818 TJH (DTBx), 2014 U.S. Dist. LEXIS 191254
    (C.D. Cal. Dec. 16, 2014) .................................................................. 7

*Winet v. Price*
    4 Cal. App. 4th 1159 (1992) .............................................................. 9

## Statutes & Rules

15 U.S.C. § 1117(a) ............................................................................ 21

Federal Rules of Civil Procedure
    Rule 56(c) ............................................................................................ 3
    Rule 56(d) ........................................................................ 22, 23, 24

Federal Rules of Evidence
    Rule 602 .................................................................................. 5, 6, 17
    Rule 802 ............................................................................................ 6

## Other Authorities

3 Witkin, Summary of Cal. Law (10th ed. 2005)
    Agency and Employment, § 158 ........................................................ 15

## I.     INTRODUCTION

Phoenix Fibers is a clothing and textile recycler, operating in an industry where it is well-known and accepted that recycling includes resale, both in bulk and even in consignment stores. Plaintiffs gave Phoenix Fibers jeans and other items for recycling. Plaintiffs now claim that "recycling" required destruction, and that Phoenix Fibers contractually agreed to destroy the donated items, in every instance and forever. Plaintiffs also allege that Phoenix Fibers' resale of the donated products constitutes trademark infringement. But Plaintiffs cannot actually prove, with admissible evidence, that a genuine dispute of material fact exists with respect to any of their claims.

Plaintiffs' claims fall into two categories: a breach of contract claim (claim one) and trademark-related claims (claims two through six). Each one fails.

First, Plaintiffs have not shown that a contract for destruction exists. Plaintiffs do not, and cannot, dispute that a contract can only be formed by an offer and acceptance on clear, definite, and communicated terms. But to this day, they cannot identify: (1) *who* made an offer; (2) *what* the terms of that offer were; (3) *who* accepted the offer; or (4) *when* these events occurred. In its Motion, Phoenix Fibers presented now-undisputed evidence that Lisa Song, a human resources manager from Sweet People, was the only person who could have negotiated the alleged contract on Plaintiffs' behalf. Ms. Song testified that her only memory of the matter was that the parties had entered into "no specific agreement." She merely had an "understanding"—developed before November 7, 2011, and based largely upon information gleaned from third-party sources—that the clothing products that Plaintiffs donated to Phoenix Fibers would be turned into shoddy fiber. She could not, and did not, identify any discussions or writings that formed the contract, or any part thereof: offer, acceptance, or terms. Plaintiffs concede that no document captures the terms of Ms. Song's "understanding" in such a way that it can be considered a written contract.

1    Nonetheless, Plaintiffs contend that a contract exists. As "evidence" of this
2    claim, Plaintiffs present the conclusory and inadmissible testimony of their former
3    executive officers, Lilly Kim and Eric Choi, as to *their* "understanding," which
4    they *gleaned entirely from conversations with Ms. Song*, that there was a contract
5    on certain terms. These statements—self-serving and suspicious, but more
6    importantly, hearsay—are not admissible. Plaintiffs' other evidence is similarly
7    fated: As fully addressed in Phoenix Fibers' concurrently filed objections,
8    Plaintiffs have presented this court with a raft of unauthenticated documents and
9    transcripts. Importantly, most of those documents originated with Plaintiffs, have
10   never been properly authenticated in any context in this case, and their authenticity
11   is genuinely at issue. Under the Federal Rules of Evidence, Rule 56 of the Federal
12   Rules of Civil Procedure, and Ninth Circuit precedent, none of these documents
13   can be considered by this Court. Thus, Plaintiffs' breach of contract claim fails.

14   Second, with respect to the trademark-related claims, Plaintiffs concede that
15   the people who bought their donated products were never confused about the
16   clothes' origins or second-quality nature. Instead, Plaintiffs assert the narrow and
17   rarely-used "post-sale confusion" doctrine: the theory that a person on the street
18   who sees someone wearing a pair of Plaintiffs' donated jeans will be confused
19   about the pants' origins or quality. But a year after filing its complaint and after
20   more than eight months of discovery, Plaintiffs can present no actual evidence of
21   this type of confusion. So their Opposition relies a non-existent paragraph "32"
22   from Lilly Kim's declaration and a sweeping, conclusory, and unsupported
23   paragraph in Eric Choi's declaration about "observers" who "surely" wondered
24   about the source and quality of the jeans that others wore on the street. Mr. Choi's
25   statements are clearly inadmissible for lack of personal knowledge that this
26   scenario has ever occurred. Thus, Plaintiffs are left without any evidence of
27   confusion, and Plaintiffs' trademark claims, and all of their trademark-related
28   claims, fail. This Court should therefore dismiss claims two through six.

1       Finally, Plaintiffs seek time for more discovery under Federal Rule of Civil

2   Procedure 56(d)(1). But their request is inappropriate here, after this case has been

3   on file for a year, with over eight months of discovery already. More importantly,

4   Plaintiffs fail to (1) identify the required "specific facts" that they believe they will

5   unearth with more time, (2) demonstrate that they have diligently pursued the

6   discovery they claim to need, and (3) explain to this Court why the information

7   that they describe only in generalities will be relevant to a decision on Phoenix

8   Fibers' Motion. The law requires Plaintiffs to make these showings. They have not,

9   and so their request must be denied.

10       Plaintiffs have not produced admissible evidence showing any genuine issue

11   of material fact as to any of their six claims for relief. This Court should grant

12   summary judgment for Phoenix Fibers.

13   **II.   ARGUMENT**

14       Under *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), Phoenix Fibers bore

15   the burden of "pointing out to the district court" that Plaintiffs lack any evidence to

16   support their causes of action. *Id.* at 325. Phoenix Fibers did that in its Motion. It

17   also marshaled substantial evidence to *disprove* Plaintiffs' claims. Now the burden

18   rests on Plaintiffs to "come forth with evidence from which a jury could reasonably

19   render a verdict" in their favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

20   (9th Cir. 2010). And their evidence must be *admissible* for it to be considered by

21   this Court. Fed. R. Civ. Proc. 56(c)(3). Plaintiffs have failed to discharge their

22   burden. Indeed, Plaintiffs' failure to set forth specific evidence showing that there

23   is a genuine issue for trial is so extensive that, after taking into account Phoenix

24   Fibers' concurrently filed evidentiary objections (Dkt. No. 98), Plaintiffs adduce

25   no admissible evidence whatsoever to support their claims.

26

27

28

1
2
3

**A.**   **The vast majority of Plaintiffs' evidence is inadmissible, and as a result Plaintiffs cannot establish a genuine dispute of material fact with respect to any of their claims.**

4
5
6
7
8
9
10
11
12
13
14
15

Plaintiffs have provided this Court with the following "evidence" in Opposition to Phoenix Fibers' Motion: (1) the Declaration of Matthew T. Salzmann, one of Plaintiffs' attorneys; (2) the Declaration of Lilly Kim, Plaintiffs' former General Counsel; (3) the Declaration of Eric Choi, Sweet People's former and RCRV's current CEO; and (4) forty-eight exhibits, all of which are attached to the Salzmann Declaration. Most of the exhibits (35 out of 48) are completely inadmissible for lack of authentication, and huge swaths of the statements in the Kim and Choi Declarations are inadmissible because they are based on hearsay that does not fall under any of the recognized exceptions or because they lack a foundation in the declarant's personal knowledge of the matters discussed. Phoenix Fibers has concurrently filed Objections to Plaintiffs' "evidence," (Dkt. No. 98), but will provide a few examples that demonstrate the evidentiary shortcomings:

16
17
18
19
20
21
22
23
24
25

**(1) Inadmissible Exhibits.** Exhibits K-Z and CC-EE to the Salzmann Declaration are email chains that are simply described by Mr. Salzmann as "true and correct cop[ies]" of e-mails from "[name] to [name] on [date]." (*See, e.g.*, Dkt. No. 93 at 4 [Salzmann Decl. at ¶ 21] ("Attached hereto as Exhibit S is a true and correct copy of an e-mail from Matt Graham (Phoenix Fibers) to Lisa Song (Sweet People / RCRV), dated January 27, 2012 (SP/RCRV005617).").) Plaintiffs purport to use these e-mails as "evidence" throughout their Opposition, but Mr. Salzmann's declaration provides no basis for authenticating them: he did not author, send, or receive any of the e-mails; he does not attempt to testify as to their true origins; and Mr. Salzmann does not even state that he was involved in finding

26
27
28

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

or collecting the e-mails.[1] Plaintiffs therefore cannot introduce the e-mails into evidence; nor can they introduce the other unauthenticated exhibits attached to Mr. Salzmann's Declaration (Exhibits A-G, K-FF, II-MM, and RR). *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("[D]ocuments must be authenticated and attached to a declaration wherein the declarant is the 'person through whom the exhibits could be admitted into evidence.'"); *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1990)); *Hughes v. AutoZone Parts, Inc.*, No. CV 16-08009 SJO (KSx), 2017 U.S. Dist. LEXIS 1785, at *12 (C.D. Cal. Jan. 4, 2017) (Otero, J.) (quoting *Canada* and refusing to consider unauthenticated documents); *Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044, 1063 (C.D. Cal. 2014) (Morrow, J.) (quoting *Canada* and holding documents not authenticated and inadmissible); *Rashidian v. United States*, No. SACV 14-16-JLS, 2014 U.S. Dist. LEXIS 179607, at *6-8 (C.D. Cal. 2014) (Staton, J.) (same).

**(2) The Choi Declaration.** The following statement from Mr. Choi's declaration is illustrative of the document's objectionable contents: In paragraph 13, Mr. Choi states that the purchasers of "improperly sold" clothes "are then wearing them in public, and observers familiar with the high quality standards of [Plaintiffs'] well-known brands are surely wondering how and why these companies are allowing these goods to be sold." (Dkt. No. 95 at 6 [Choi Decl. at ¶ 13].) Choi makes these statements without explanation for how or why he knows them to be true—he does not explain how he knows the clothes have been worn in public, for instance, nor does he explain how he knows who these "observers" are, whether they in fact saw the clothes worn in public, what they thought about the clothes upon seeing them, or how they are so familiar with the "high quality

---

[1] Because Mr. Salzmann does not demonstrate any personal knowledge about the exhibits he purports to introduce, the testimony about the exhibits in his declaration are also inadmissible pursuant to Federal Rule of Evidence ("FRE") 602.

standards" of Plaintiffs' apparel. Indeed, there is good reason to doubt that Choi knows anything about these topics at all: Plaintiffs never identified him as having this knowledge in either their initial disclosures or their discovery responses. (Dkt. Nos. 101-1, 101-2, and 101-3 [O'Neill Decl. at ¶¶ 2-3, Exs. A-C].) This portion of Choi's declaration testimony is therefore inadmissible under FRE 602, which states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

**(3) The Kim Declaration.** Paragraph 28 of Lilly Kim's declaration is one example of the inadmissible statements that appear throughout the document. Referring to the donated apparel that Plaintiffs purchased back from co-Defendant Comak Trading, she states: "Once the products were returned to Plaintiffs' warehouse in Los Angeles, California, at my direction Plaintiffs' warehouse staff conducted a review of the reclaimed products. That review revealed that among the reclaimed goods were denim products that Plaintiffs had delivered to Phoenix Fibers for recycling into shoddy fiber as early as 2012." (Dkt. No. 94 at 8 [Kim Decl. at ¶ 28].) Like many of the statements in Ms. Kim's declaration, this paragraph is inadmissible under FRE 602 and 802. The statements are inadmissible under FRE 602 because Ms. Kim does not demonstrate any personal knowledge about the review of the recovered apparel—how the review was conducted, what was found, what products were recovered, or how she knew that the products were the same ones that had been delivered to Phoenix Fibers in 2012. Kim's statements also constitute inadmissible hearsay under FRE 802 because the knowledge she does convey (the results of the review) was clearly communicated to her by the warehouse staff that she instructed to conduct the review in the first instance.

These deficiencies in Plaintiffs' evidence, and others like them, are fatal to Plaintiffs' Opposition, because only admissible evidence may be considered "[i]n examining whether summary judgment is appropriate." *Rosa v. TASER Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012). A failure to authenticate, in particular,

6

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

completely bars a piece of evidence from consideration in summary judgment proceedings. *See Logan v. City of Pullman*, 392 F. Supp. 2d 1246, 1251 (E.D. Wash. 2005) (stating that "[t]he Ninth Circuit has repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment" and excluding a letter that a party's attorney attempted to authenticate, where the attorney had no personal knowledge of the letter).

Indeed, this Court recently addressed the very issue of inadmissible evidence in the context of summary judgment. *Vinyl Visions, LLC v. Ohme*, No. CV 13-01818 TJH (DTBx), 2014 U.S. Dist. LEXIS 191254, at *2 (C.D. Cal. Dec. 16, 2014) (Hatter, J.). In circumstances similar to the ones here, this Court excluded the bulk of the plaintiff's evidence on the grounds that the declarants did not demonstrate personal knowledge of the matters discussed, that various exhibits were not properly authenticated, and that other evidence was inadmissible as hearsay. *Id.* at *2-5. After excluding plaintiff's evidence, this Court found that the plaintiff had "fail[ed] to establish a *prima facie* case of patent infringement" and granted the defendant's motion for summary judgment. *Id.* at *5-6.

The Court should reach a similar result here. Most, if not all, of the factual allegations in Plaintiffs' Opposition and Separate Statement rely entirely on inadmissible evidence for support. For example, the entire paragraph on page 10 of Plaintiffs' Opposition (from lines 9 through 23), and every single portion of the Separate Statement to which it cites (paragraphs 15, 30-31, 33, 40, 46-49, and 51) are inadmissible on the grounds cited above—lack of authentication, inadmissible hearsay, and lack of foundation. Moreover, that same inadmissible evidence forms the sole basis for Plaintiffs' responses to Phoenix Fibers' Statement of Uncontroverted Facts. (Dkt. No. 100 [Consolidated Sep. Statement].)[2] Once the

---

[2] Phoenix Fibers has filed a Consolidated Separate Statement. (Dkt. No. 100.) In it, Phoenix Fibers (1) responds to the allegations in Plaintiffs' Statement of Additional Material Facts (pages 42-70 of Dkt. No. 96), and (2) identifies which of

<span style="text-align:right;display:block">(Continued on Next Page)</span>

1    inadmissible evidence has been removed from consideration in this proceeding,

2    Plaintiffs' remaining argument and evidence is so scant that it cannot begin to

3    show a genuine dispute of material fact. This Court should therefore grant

4    summary judgment, because Plaintiffs present no admissible evidence that can

5    substantiate Plaintiffs' breach-of-contract and trademark claims.

**B.      Phoenix Fibers is entitled to summary judgment on Plaintiffs'
contract claim.**

**1.      The evidence does not establish the necessary elements of
Plaintiffs' breach-of-contract claim.**

10    As stated in Phoenix Fibers' Motion, a plaintiff asserting a breach of

11    contract claim "must prove (1) the contract, (2) the plaintiff's performance of the

12    contract or excuse for nonperformance, (3) the defendant's breach, and (4) the

13    resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182,

14    1186 (2014). Plaintiffs argue that "the evidence plainly demonstrates that the

15    parties reached an agreement, with mutual assent, obligating Phoenix Fibers to

16    shred (i.e., destroy) all of Plaintiffs' denim products into shoddy fiber." (Dkt. No.

17    97 at 9 [Opp'n].) But Plaintiffs' "evidence" does not even create a genuine issue of

18    material fact as to the first element of their claim: the formation of a contract.

19    A contract cannot be formed without mutual consent, which requires an

20    exchange of promises that represent legal obligations, i.e., an offer and an

21    acceptance. *Bleecher v. Conte*, 29 Cal.3d 345, 350 (1981). Under basic contract

22    law "[a]n offer *must be sufficiently definite*, or must call for such definite terms in

23    the acceptance that the performance promised is reasonably certain," and the

24    acceptance must be clear, definite, and communicated. *Ladas v. Cal. State Auto.*

25    *Assn*., 19 Cal. App. 4th 761, 770 (1993) (emphasis added); *Russell v. Union Oil*

26    *Co.*, 7 Cal. App. 3d 110, 114 (1970). Importantly for this case, a contract must be

27
28    Plaintiffs' Responses to Phoenix Fibers' Statement of Undisputed Facts (pages 2-
41 of Dkt. No. 96) rely on inadmissible evidence, in whole or in part.

8

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

based on express communications, not the subjective, unexpressed understandings of a party. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if *it remains unexpressed*.") (emphasis added); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("[E]vidence of *the undisclosed subjective intent of the parties is irrelevant* to determining the meaning of contractual language.") (emphasis added).

Here, Plaintiffs fail to establish any dispute of fact that the parties formed a contract. They do not identify any facts about an alleged offer, including who made the offer (Phoenix Fibers or Plaintiffs), when it was made, what its exact terms were, and whether it was made orally or in writing. And Plaintiffs fail to produce evidence to substantiate any *acceptance* of the alleged offer, including who accepted the offer (Phoenix Fibers or Plaintiffs), when the acceptance occurred, and whether the acceptance was made orally or in writing. Plaintiffs are therefore asking this Court to find the existence of a contract without evidence sufficient to establish a genuine dispute of material fact as to the existence of an offer or an acceptance. (*See, e.g.*, Dkt. No. 96 at 17 [Pls.' Resp. to Def.'s SUF at ¶ 28] (denying that Ms. Song negotiated with Mr. Graham, and stating only that she "entered into an agreement with *Phoenix Fibers*").) This Court should not oblige.

Plaintiffs claim that three pieces of "evidence" create a genuine dispute of material fact: (1) the testimony of Ms. Song regarding her communications with Phoenix Fibers; (2) e-mails between Ms. Song and Phoenix Fibers, and (3) the "understanding" of Ms. Kim and Mr. Choi. (Dkt. No. 97 at 9-13 [Opp'n].) As discussed below, none of this evidence fulfills Plaintiffs' burden.[3]

---

[3] Plaintiffs also claim that the parties' "course of conduct" demonstrates that there was a contract for destruction, and that "for over three years—between November 2011 and early 2015—the parties' course of conduct conformed exactly to the terms agreed to by Ms. Song and Mr. Graham." (Dkt. No. 97 [Opp'n] at 11 (citing paragraph 15 of Lilly Kim's declaration).) But there is no evidence to support this claim. It is undisputed that Plaintiffs never checked to make sure that their donated

(Continued on Next Page)

9

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**(1) The Testimony of Lisa Song.** Ms. Song plainly testified that there was "not a specific agreement" between Phoenix Fibers and Plaintiffs. (Dkt. No. 90-1 at 56-57 of 361 [Song Depo. at 62:19-63:5].) Plaintiffs attempt to rehabilitate this damning testimony by alleging that Ms. Song "stated she was 'a little confused' by the question." (Dkt. No. 97 at 12 [Opp'n].) But that is not the case: Ms. Song clearly understood the question; she was just "a little confused on the word 'agreement'" *because there was "not a specific agreement*." (Dkt. No. 90-1 at 56-57 of 361 [Song Depo. at 62:19-63:5].)

Plaintiffs also try to recast Ms. Song's testimony as containing her crystal-clear recollections of forming a "clear, definite agreement" between Plaintiffs and Phoenix Fibers in November 2011. (Dkt. No. 97 at 9 [Opp'n].) But the only thing clear from Ms. Song's testimony was that she remembers *almost nothing* from that critical period of time in November 2011 when the alleged contract was purportedly formed. She testified at her deposition that she could not recall any specific conversations in phone calls. (*See* Dkt. No. 90-1 at 36 of 361 [Song Depo. at 31:22-24] ("I recall talking to [Phoenix Fibers]. I can't remember the exact content of our conversations and when and where they occurred."); *Id.* at 44 of 361 [46:1] ("I can't recall exact phone conversations."); *Id.* at 47 of 361 [51:11-12] ("I

products were being destroyed. (*See* Dkt. No. 96 at 28-29 [Pls.' Resp. to Def.'s SUF at ¶ 45].) It is also undisputed that Phoenix Fibers never sent Plaintiffs any confirmation of destruction. (*Id.*) Thus, the record does not disclose that any products were destroyed during the three-year time frame cited by Plaintiffs. Moreover, Ms. Kim, who testified as Plaintiffs' corporate representative, claimed that Phoenix Fibers had been breaching the alleged contract since day one, which would preclude any finding of the course of conduct alleged by Plaintiffs. (Dkt. No. 90-1 at 74 of 361 [Kim Depo. at 25:17-25].) Although Ms. Kim has now changed her testimony, and submitted a declaration stating that Phoenix Fibers had been *complying* with the terms of the alleged contract for three years before any breach occurred, (Dkt. No. 94 at 4-5 [Kim Decl. at ¶ 15]), this contradictory statement, clearly made solely to defeat summary judgment, must be disregarded. *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000); *Rainey v. Am. Forest & Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 95 (D.D.C. 1998).

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    cannot recall the exact content of any phone conversations."); *Id.* at 48 of 361
2    [52:24-25] ("Again, [I] cannot recall the exact content of any phone
3    conversations.").) She testified that she did not recall any in-person meetings with
4    anyone from Phoenix Fibers. (*Id.* [52:5-17].) Ms. Song could not recall whether an
5    agreement existed based on oral communications or e-mails, or both. (*Id.* at 55 of
6    361 [61:12-19].) The most she could testify to was that the arrangement between
7    Sweet People and Phoenix Fibers was based on her "understanding of what
8    Phoenix Fibers did," an understanding that she developed not from any
9    conversation with Phoenix Fibers, but by looking at information on places like
10   third-party websites. (*Id.* at 44 and 57 of 361 [46:14-21 and 63:13-16].)

11        As much as Plaintiffs may try to distance themselves from this testimony,
12   the fact remains that the only person who ever communicated with Phoenix Fibers
13   about the alleged contract does not believe that she entered into a "specific
14   agreement." A party to a contract must know that they are entering into a legally
15   binding agreement and do so intentionally; it cannot happen by accident. *See*
16   *Kingsbury, Inc. v. GE Power Conversion UK, Ltd*., 78 F. Supp. 3d 611, 619 (E.D.
17   Pa. 2014); *Russell*, 7 Cal. App. 3d at 114.

18        **(2) E-mails Between Lisa Song and Phoenix Fibers.** As for the e-mails
19   between Ms. Song and Phoenix Fibers, many of them occurred *after* November 7,
20   2011, the date that Ms. Song testified was the latest that her "understanding" was
21   created, and so they cannot constitute an offer or acceptance of an offer. (Dkt. No.
22   90-1 at 51-54, 56, and 60 of 361 [Song Depo. at 57:14-60:3; 62:8-17; and 82:17-
23   83:7].) Moreover, all of the e-mails introduced by Plaintiffs as "evidence" are
24   unauthenticated and therefore inadmissible. (*See* Dkt. No. 98 at 30-36 [Def.'s
25   Objections].) But even if the Court were to consider them, it would not matter
26   because Plaintiffs do not allege that any one of the post-November 7 e-mails
27   constitutes either the offer or acceptance of the alleged contract. (Dkt. No. 96 at 13
28   [Pls.' Resp. to Def.'s SUF at ¶ 26].) And for good reason: none of those e-mails

show an offer with definite terms (*Ladas*, 19 Cal. App. 4th at 770) or an acceptance "communicated by the offeree to the offeror." *Russell*, 7 Cal. App. 3d at 114. Therefore, there are no circumstances under which these e-mails can create a material factual dispute as to the existence of a contract, or any portion thereof.[4]

**(3) The Understanding of Lilly Kim and Eric Choi.** Like the e-mails that Plaintiffs rely on to try and establish a dispute of material fact, the "understanding" of Ms. Kim and Mr. Choi is of no moment here. That is because Ms. Kim and Mr. Choi undisputedly had no interaction with anyone from Phoenix Fibers in 2011. Plaintiffs concede that Ms. Kim does not have any personal knowledge of the formation of the alleged contract and that she never talked to anyone from Phoenix Fibers during the "negotiation" of the alleged contract. (Dkt. No. 96 at 18-21 [Pls.' Resp. to Def.'s SUF at ¶¶ 30-32].) And Plaintiffs never demonstrated or even alleged that Mr. Choi has personal knowledge of the formation of the alleged contract; merely that he has an understanding of its purported terms based on hearsay discussion with others. (Dkt. Nos. 101-1, 101-2, and 101-3 [O'Neill Decl. ¶¶ 2-3, Exs. A-C]; Dkt. No. 95 at 4 [Choi Decl. at ¶ 8].) Thus, Ms. Kim and Mr. Choi's understanding of the alleged contract is irrelevant in determining what Ms. Song and Phoenix Fibers stated during their communications. Moreover, because those understandings are based on hearsay, they are inadmissible.

Plaintiffs have failed to create a genuine issue of material fact as to the

---

[4]   Plaintiffs place great emphasis on various e-mails, all of which are unauthenticated and therefore inadmissible, in which Mr. Graham uses the word "destruction." (Dkt. No. 97 at 9-13 [Opp'n].) But it is telling that they do not contend that any of these e-mails actually constitute the alleged contract, or even an offer or acceptance. (Dkt. No. 96 at 13 [Pls.' Resp. to Def.'s SUF at ¶ 26].) There is no dispute that "destruction" is one aspect of Phoenix Fibers' recycling business; it always has been. (Dkt. No. 90-1 at 10 of 361 [Kean Decl. at ¶ 8].) The fact that Mr. Graham referenced it in an email is unsurprising, and certainly not a basis for claiming that Phoenix Fibers is *obligated* to destroy *all* of Plaintiffs' donated products, for free, in perpetuity, as part of its recycling program.

existence of a contract. Summary judgment on the breach of contract claim is therefore appropriate here.

>           **2.      Plaintiffs present no evidence to contradict Phoenix Fibers' argument that, if a contract did exist, it is void due to mutual mistake.**

Plaintiffs focus on their undisclosed, *subjective* belief that the term "recycling" necessarily requires destruction and excludes resale. But that subjective belief cannot overcome Phoenix Fibers clear evidence that it—and the recycling industry in general—considers the term "recycling" to include resale. (*See* Dkt. No. 85 at 1 [Def.'s SUF at ¶¶ 1-4].)

Ms. Song, the sole "negotiator" for Plaintiffs, does not remember the specific contents of her communications with Phoenix Fibers. (*See, e.g.*, Dkt. No. 90-1 at 36, 44, 47, 48, and 55 of 361 [Song Depo. at 31:22-24; 46:1; 51:11-12; 52:24-25; 52:5-17; and 61:12-19].) To the extent that Ms. Song developed an "understanding," as stated above, Plaintiffs have not shown that Ms. Song's understanding was based on any statements made by Phoenix Fibers or any evidence showing a genuine dispute of material fact as to whether Phoenix Fibers always understood that the term "recycling" includes resale.

Ms. Kim testified that "I think we believed that during the recycling process, the items would naturally be destroyed as they were made into shoddy fiber. So that's why it's a little confusing. We just focus on 'destroyed.'" (Dkt. No. 90-1 at 76-77 of 361 [Kim Depo. at 27:20-28:5].) Plaintiffs have presented no evidence that a destruction term was ever mentioned by either party, and at deposition their representative simply contended that the alleged contract was "for [Phoenix Fibers] to *recycle* the [donated] products." (Dkt. No. 85 at 6-7 [Def.'s SUF at ¶¶ 40-42]; Dkt. No. 90-1 at 75 of 361 [Kim Depo. at 26:3-4].) Even Plaintiffs' 30(b)(6) witness testified that she did not "know if the word 'destroyed' was used in the verbal discussions" between Ms. Song and Mr. Graham. (Dkt. No. 90-1 at 76 of

13

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

361 [Kim Depo. at 27:13-19].) Thus, there is no evidence at all that Phoenix Fibers understood recycling to *require destruction*.

Moreover, Plaintiffs do not dispute Phoenix Fibers' evidence that the term "recycle," in the textile and clothing recycling industry, includes selling and reselling items as credential, or even selling and reselling them in consignment stores. Thus, the industry definition contradicts Plaintiffs' narrow interpretation of the term "recycle" as meaning "destroy." The broader, industry-standard definition of "recycle" carries the meaning that Phoenix Fibers attributes to it, and has always attributed to it. (Dkt. No. 85 at 1-2 [Def.'s SUF at ¶¶ 2-5].) While Phoenix Fibers believes that Plaintiffs' narrow definition of recycling is incorrect, even if this Court disagrees, the alleged contract is invalid based on mutual mistake. *Local Motion v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997).

### 3.   Plaintiffs have provided no facts showing that RCRV is a party to any alleged contract.

There is no factual basis for finding that RCRV is a party to the alleged contract. Ms. Song testified that she has never been employed by RCRV and that she has never negotiated a contract for RCRV. (*See, e.g.*, Dkt. No. 90-1 at 31-33 of 361 [Song. Depo. at 18:19-20:20].) Her LinkedIn profile does not list RCRV as an employer (just Sweet People), and every email she ever sent to Phoenix Fibers contained Sweet People in the signature block, not RCRV (Ms. Song's email address was a Sweet People address as well). (*Id.* at 236-38 of 361 [LinkedIn Profile]; *Id.* at 240 of 361 [Email Signature Block].) In reply, Plaintiffs state that they "considered" Ms. Song to be an employee of RCRV (Dkt. No. 96 at 10 [Pls.' Resp. to Def.'s SUF at ¶ 21]), but what Plaintiffs "considered" does not matter when it comes to the issue of contract formation: Ms. Song, as the purported "negotiator" of the alleged contract, cannot bind RCRV to a contract if she does not consider herself to be the company's representative. *Ins. Co. of N. Am. v.*

*Hanks, Conard & Sons, Inc.*, 250 Cal. App. 2d 156, 163 (1967) ("[F]ormation of an agency relationship is a bilateral matter.").

Plaintiffs argue that this might be an "undisclosed principal" situation, but that suggestion is absurd: there is no such thing as a principal who has not been disclosed to *any party to the alleged negotiation*. *Id.* A principal can keep its identity hidden, but it cannot hide its existence from the person who is purportedly negotiating on its behalf. *Id.* And it is of no use to Plaintiffs' argument that Mr. Choi and Ms. Kim submitted declarations saying that Ms. Song was "considered" an employee of RCRV—parol evidence to prove the existence of an undisclosed principal is only permitted where the alleged contract is in writing, and Plaintiffs have conceded that this was not the case here. *Aluma Sys. Concrete Constr. of Cal. v. Nibbi Bros. Inc.*, 2 Cal.App.4th 620, 629 (2016) (citing 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 158); Dkt. No. 96 at 13 [Pls.' Resp. to Def.'s SUF at ¶ 26].

There is no evidence that can even begin to demonstrate that RCRV is a party to the alleged contract, to the extent that it exists. RCRV therefore cannot enforce any rights under the alleged contract. As a result, summary judgment against RCRV is appropriate.

**C.     Plaintiffs' trademark and trademark-related claims (claims two through six) cannot succeed as a matter of law.**

**1.     Plaintiffs produced no evidence to support a finding of likelihood of confusion, and the evidence on hand uniformly demonstrates an absence of confusion.**

Plaintiffs' trademark and trademark-related claims all require evidence of confusion. Plaintiffs concede that there is no point-of-sale confusion in this case, and instead rely entirely on the doctrine of post-sale confusion. There are three places in Plaintiffs' opposition papers that the Court might look for evidence of confusion sufficient to create a dispute of material fact in this case: (1) the

15

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Opposition brief itself, (2) Plaintiffs' Separate Statement, and (3) Plaintiffs' supporting declarations and exhibits. Alone or in combination, all three fall short of meeting Plaintiffs' burden.

**(1) Plaintiff's Opposition.** In the three pages that Plaintiffs devote to trademark issues in their Opposition, they do not discuss or allege any facts about confusion at all. (Dkt. No. 97 at 15-18 [Opp'n].) Indeed, the only reference in the Opposition to any portion of the record that mentions confusion is a citation (unaccompanied by explanation) to Plaintiffs' Separate Statement.[5] (*Id.* at 17, ln. 3 (citing to Paragraph 96 of Docket Number 96 at the end of an unrelated string cite).) Because the Opposition is devoid of factual or evidentiary discussion regarding confusion, it clearly cannot support Plaintiffs' contention that a dispute of material fact exists regarding confusion.

**(2) Plaintiffs' Separate Statement.** The Separate Statement contains just one sentence about confusion: a statement that post-sale "observers" of people wearing recycled Miss Me or Rock Revival apparel are "likely to be confused" about the origins or second-quality nature of the clothing. (Dkt. No. 97 at 17 [Opp'n] (citing Dkt. No. 96 at 64 [Pls.' Sep. Statement at ¶ 96].) This statement is conclusory, and is therefore "insufficient to raise genuine issues of fact and, thereby, defeat summary judgment." *Mateo v. M/S Kiso*, 805 F. Supp. 761, 775 (N.D. Cal. 1991) (citing *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)). Moreover, as discussed immediately below, this conclusory statement is based on evidence that is clearly inadmissible.

**(3) Plaintiffs' Supporting Declarations and Exhibits.** The conclusory assertion in paragraph 96 of Plaintiffs' Separate Statement cites to portions of the declarations of Lilly Kim and Eric Choi as support. (Dkt. No. 96 at 64 [Pls.' Sep.

---

[5] There are two other citations to the record in the trademark section of Plaintiffs' Opposition, but those two citations are to paragraphs in the Separate Statement that have nothing to do with confusion. (Dkt. No. 97 at 15 and 18 n. 3 [Opp'n].)

Statement at ¶ 96].) But both declarations are fatally flawed and do not provide actual evidence to this Court. First, Plaintiffs cite in the Separate Statement to a non-existent paragraph (paragraph 32) in Ms. Kim's Declaration. (*Id.*) Paragraph 32 does not exist; Ms. Kim's declaration only contains 31 paragraphs. (Dkt. No. 94 at 8-9 [Kim Decl.].) And nothing else in the Kim Declaration supports the conclusory assertion in the Separate Statement or even mentions confusion. (*See* Dkt. No. 96 at 64 [Pls.' Sep. Statement at ¶ 96] (referring to Paragraph 32 of Lilly Kim's Declaration); Dkt. No. 94 at 8-9 [Kim Decl.] (showing that Kim's declaration only contains 31 paragraphs)).

That leaves the cited portions of Eric Choi's Declaration. (Dkt. No. 95 at 5-6 [Choi Decl. at ¶¶ 12-13].) As discussed in Section A (and as stated in Phoenix Fibers' concurrently filed objections, Dkt. No. 98 at 9-10), those parts of Mr. Choi's declaration are inadmissible under Federal Rule of Evidence 602 for lack of personal knowledge.

To sum up: Plaintiffs have submitted an Opposition brief that sets forth no facts regarding likelihood of confusion (and does not examine a single *Sleekcraft* factor), a Separate Statement containing a conclusory assertion that post-sale "observers" are "likely to be confused," a declaration from Lilly Kim that does not contain the paragraph Plaintiffs purport to rely on (or any discussion of confusion at all), and a declaration from Eric Choi where the cited portions are inadmissible for lack of personal knowledge. There is no evidence in support of Plaintiffs' claims regarding confusion.

In contrast, Phoenix Fibers has submitted Ms. Kim's deposition testimony in which she admitted, in her capacity as a Rule 30(b)(6) witness for Plaintiffs on the issue of likelihood of confusion, that none of the downstream buyers of Plaintiffs' donated products were confused about its origins or second-hand nature. (*See* Dkt. No. 90-1 at 105 of 361 [Kim Depo. at 199:2-12] ("I think that everyone knew what they were buying.").) Phoenix Fibers also presented the properly authenticated

17

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

testimony of Internet retailer Tiffany Wolff (a retailer who sold second-quality Miss Me and Rock Revival apparel through websites like eBay). Ms. Wolff confirmed that none of the end-users who purchased second-quality apparel were confused about the clothes' origins or second-hand nature. (*Id.* at 134-136 of 361 [Wolff Depo. at 125:11-25 and 146:14-147:14].) Plaintiffs do not dispute the truth of either of these pieces of evidence in their responses to Phoenix Fibers' Separate Statement other than to claim that they are irrelevant to these proceedings. (*See* Dkt. No. 96 at 38-39 [Pls.' Resp. to Def.'s SUF at ¶¶ 63-64].) Moreover, Plaintiffs' responses did not identify any evidence that contradicts the admission of Ms. Kim, their corporate representative and former General Counsel, or the deposition testimony of Ms. Wolff. (*Id.*)

Thus, the evidence all points in one direction: no likelihood of confusion. And because Plaintiffs cannot prevail on a trademark infringement claim without *any evidence* of likelihood of confusion, Phoenix Fibers' Motion must be granted. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1199 (9th Cir. 2012). It does not matter that "likelihood of confusion is the central issue in this motion," as Plaintiffs argue (Dkt. No. 97 at 16 [Opp'n]); likelihood of confusion is the cornerstone of *every* trademark case, and courts still grant motions for summary judgment when no evidence can support a finding of confusion. *See, e.g.*, *Garcia v. Coleman*, No. C-07-2279 EMC, 2008 U.S. Dist. LEXIS 68672, at *51 (N.D. Cal. Sep. 8, 2008) (finding summary judgment proper for defendant "based on the lack of evidence of a likelihood of confusion"). This Court should do so here.

### 2. It does not matter that Plaintiffs now want this case to be about post-sale confusion, because there is no evidence of that type of confusion either.

Instead of identifying evidence of confusion, the trademark section of the Opposition is devoted to Plaintiffs' explanation that this case has always been about "post-sale confusion among consumers who see [Plaintiffs' donated

products] being worn, and wrongly assume [that] these products typify the quality of Plaintiffs' products." (*See* Dkt. No. 97 at 15 [Opp'n].) Although Phoenix Fibers takes issue with Plaintiffs' assertion that this theory "has been clear since day one," (*id.*), ultimately it does not matter because Plaintiffs still have not presented any evidence of confusion, post-sale or otherwise. If anything, the fact that Plaintiffs have anticipated making this claim for nearly a year (and after more than eight months of discovery) makes it even more inexcusable for them to oppose Phoenix Fibers' Motion without providing any evidence of the confusion that they now claim to exist.

Moreover, the type of post-sale confusion that Plaintiffs discuss in their Opposition does not apply to the facts of this case. Plaintiffs' argument to the contrary relies on *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848 (9th Cir. 2002) and *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817 (9th Cir. 1980). (*See* Dkt. No. 97 at 15-16 [Opp'n] (citing *Karl Storz* and *Levi Strauss*). *Karl Storz* is a case in which the defendant rebuilt the internal components of a surgical tool in such a way that it became effectively a different product from the original, and then the defendant sold the rebuilt product to medical providers with the original trademark still affixed. *Karl Storz*, 285 F.3d at 855-57. And in *Levi Strauss*, a pair of jeans created by Wrangler had a tab on the back pocket that was so similar to the trademarked tab on the back pocket of a pair of Levi's that the Court believed that there was a very real possibility that consumers would not be able to tell the difference between the two product lines and would think that the Wranglers were, in fact, Levi's jeans. *Levi Strauss*, 632 F.2d at 822. In both cases, the Ninth Circuit's concerns about post-sale confusion dealt with consumers' impaired ability to use a trademark to determine the source of a product. No such confusion is possible here, because there are not two separate product manufacturers; all of the products in this case actually came from Plaintiffs.

19

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

The Ninth Circuit has stated that post-sale confusion does not apply to every type of trademark case. *Au-Tomotive Gold v. Volkswagen of Am.*, 603 F.3d 1133, 1138 (9th Cir. 2010). In addition to failing to establish a likelihood of confusion of any type and failing to muster any admissible evidence of post-sale confusion, Plaintiffs do not adequately explain *why* post-sale confusion is a valid concern here. Thus, Plaintiffs' arguments in their Opposition brief cannot overcome their failure of proof.

> **3.     The first sale doctrine applies here, because Plaintiffs cannot establish consumer confusion or the existence of a contract between themselves and Phoenix Fibers.**

Plaintiffs argue that Phoenix Fibers cannot assert a defense based on the first sale doctrine because (1) Plaintiffs never authorized the sale of their second-quality denim products, and (2) the doctrine does not apply to cases involving post-sale confusion. (Dkt. No. 97 at 18, n. 3 [Opp'n].) These arguments, though, cannot succeed unless Plaintiffs are able to demonstrate (1) the existence of a contract and (2) post-sale confusion. As explained throughout this Reply Brief, Plaintiffs have not demonstrated either one. Phoenix Fibers is therefore protected by the first sale doctrine as discussed in the Motion. (Dkt. No. 84 at 21-22 [Mot. for Summ. J.].)

> **D.     Plaintiffs' claims for joint and several liability and punitive damages flow directly from their trademark infringement causes of action, and so they must fail because the trademark claims fail.**

Phoenix Fibers cannot be held jointly and severally liable for disgorgement of profits without proof that it closely collaborated with the other Defendants in the tort of trademark infringement. (Dkt. No. 84 at 23 [Mot. for Summ. J.].) As explained above, Plaintiffs cannot succeed in their claims for trademark infringement under the Lanham Act or at common law because they cannot prove a likelihood of confusion. Thus, Plaintiffs' assertion of joint and several liability must necessarily fail along with Plaintiffs' claims of trademark infringement. The

20

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1    same is true for punitive damages, which by Plaintiffs' own admission can only

2    apply where there is a likelihood of confusion. (Dkt. No. 97 at 22 [Opp'n].)

3    Because Plaintiffs cannot assert a viable trademark infringement claim, Phoenix

4    Fibers is entitled to summary judgment on these two issues as well.

5           Moreover, with respect to the disgorgement of profits issue: the Lanham Act

6    clearly distinguishes between "actual damages" and "disgorgement of profits." *See*

7    15 U.S.C. § 1117(a) (referring to categories of remedies: "(1) defendant's profits,

8    [and] (2) any damages sustained by plaintiff"). Plaintiffs argue and cite cases that

9    deal with the *second item* on that list—"damages sustained by plaintiff"—but

10   Phoenix Fibers' Motion was directed towards the *first*. Phoenix Fibers never

11   disputed that the standard joint tortfeasor rule applies to an award of "damages

12   sustained by plaintiff," also known as "actual damages." The law on that is quite

13   clear. Equally clear is that the standard for joint liability for disgorgement of

14   "defendant's profits" is the higher standard set forth in Phoenix Fibers' Motion.[6]

15          Plaintiffs conflate these two distinct categories of damages. But a close

16   examination of their cited cases reveals that not one of them discusses anything but

17   the standard maxim that joint tortfeasors can be held jointly and severally liable for

18   actual damages. *See, e.g.*, *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F.Supp.3d

19   945, 973 (N.D. Cal. 2015) (citing cases, all stating the maxim related to "damages"

20   or "actual damages" but not addressing disgorgement). Indeed, many of the cases

21   relied upon by Plaintiffs are post-trial judgments where the court has assessed

22

---

23   [6] *Sammons v. Colonial Press, Inc.*, 126 F.2d 341, 346 (1st Cir. 1942) ("[C]o-
     infringers, unless they are partners, are severally accountable only for the profits
24   each has received."); *MCA, Inc. v. Wilson*, 677 F.2d 180, 186 (2d Cir. 1981)
     ("Insofar as there is liability for illegal profit, the liability is several; one defendant
25   is not liable for the profit made by another."); *see also KTS Karaoke, Inc. v.
     Sony/ATV Music Publ'g LLC*, No. CV-12-00014-MWF (JEMx), 2014 U.S. Dist.
26   LEXIS 190492, at *15 (C.D. Cal. Jan. 14, 2014); *SEC v. JT Wallenbrock &
     Assocs.*, 440 F.3d 1109, 1117 (9th Cir. 2006); *SEC v. Wilde*, No.: SACV 11-0315
27   DOC(AJWx), 2012 U.S. Dist. LEXIS 183252, *12 (C.D. Cal. Dec. 17, 2012).
28

"actual damages," not disgorgement. *See, e.g.*, *PepsiCo, Inc. v. IRIE Motivations, Inc.*, No. CV08-2242 RSWL, 2008 U.S. Dist. LEXIS 108025, at *5-6 (C.D. Cal. Dec. 29, 2008). Under the correct standard discussed in Phoenix Fibers' Motion, Phoenix Fibers cannot be held jointly liable for disgorgement of profits of the other defendants in this case.

### E.   There are no reasonable grounds for denying or postponing this Motion under Rule 56(d)(1).

Despite having more than eight months to conduct discovery in this case, Plaintiffs seek more time. Plaintiffs base their Rule 56(d) request entirely on the purported need to depose U.S. General's corporate representative and co-Defendant Lydia Cho. But a motion for summary judgment may be continued pursuant to Rule 56(d)(1) only if the continuance is necessary to allow the requesting party to "present facts necessary to justify its claims." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp*., 525 F.3d 822, 827 (9th Cir. 2008). A party seeking this relief must show (1) "the specific facts it hopes to elicit from further discovery," (2) that the sought-after facts exist, and (3) that the facts to be obtained "are essential to oppose summary judgment." *Id.* Moreover, the requesting party must also have diligently pursued the discovery that it claims to need a continuance to obtain. *Id.* Plaintiffs do not meet any of these requirements.

First, as a threshold matter, there is a clear trend of Plaintiffs trying to extend the calendar in this case so that they can conduct long-delayed discovery. Plaintiffs recently filed two separate *ex parte* applications for extensions of time to conduct discovery, both of which were denied. (Dkt. Nos. 75-76; 80; 81-82; 92.) This third attempt is no different in substance from the first two. Because Plaintiffs present no basis for relief other than the facts already considered and rejected by this Court twice before, the Rule 56(d) request should be denied as well.

Second, both before and after Plaintiffs filed their *ex parte* applications, Plaintiffs failed to diligently seek to depose U.S. General and Lydia Cho. Plaintiffs

let *five months* pass before they noticed the deposition of U.S. General in October 2016; they waited *six months* to try and depose Ms. Cho. (Dkt. No. 93 at 7-10 [Salzmann Decl. at ¶¶ 51, 60].) Plaintiffs fail to explain this delay. Instead, Plaintiffs recount their sporadic communications with U.S. General and Cho in the last three months of 2016. (*See generally*, *id.* at 7-10 [¶¶ 48-62].) But those communications ended on December 7, 2016, more than a month prior to the filing of this Reply Brief, and Plaintiffs *still* have not spoken with U.S. General or Ms. Cho as of the date of this filing. Plaintiffs' failure to re-engage with Phoenix Fibers' co-defendants is particularly egregious in the case of Ms. Cho, who Plaintiffs claim agreed to be deposed *this month*, which is now nearly halfway over, because Plaintiffs have not so much as sent a follow-up email to Ms. Cho to get the deposition set. (*Id.* at 8, 10 [¶¶ 53, 61].) Moreover, during the time they spent filing declarations stating that this discovery was vital, Plaintiffs did nothing further to actually obtain it. Plaintiffs have not been diligently seeking the discovery that they claim to need. This Court should deny their Rule 56(d)(1) request on this basis alone. *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827.

Third, Plaintiffs have failed to set forth the *specific facts* that they hope to elicit from further discovery. *Id.* Plaintiffs state that the depositions will help provide a "complete picture" and "provide important information"; this is a far cry from the precise description that is required of them. (Dkt. No. 93 at 10 [Salzmann Decl. at ¶ 62].) At best, Plaintiffs merely wish to conduct "generically relevant" discovery, which is not enough to justify relief and is grounds for denying Plaintiffs' 56(d)(1) request. *Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827.

Fourth, even if Plaintiffs did state with specificity the facts they hope to elicit from further discovery, they failed to show that "the facts sought exist." *Id.* Indeed, at no point do Plaintiffs make any showing that these "specific facts" exist.

Fifth, Plaintiffs have failed to show that "the sought-after facts are essential to oppose summary judgment." *Id.* Plaintiffs simply wish to acquire a more

23

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

"complete picture" and additional information with respect to the relationship between Phoenix Fibers, U.S. General, and Comak Trading. (Dkt. No. 93 at 10 [Salzmann Decl. at ¶ 62].) However, Plaintiffs fail to show how this sought-after testimony is essential to oppose summary judgment, particularly considering that both U.S. General and Comak Trading have responded to numerous interrogatories, and Steven Johnson has been deposed and submitted a declaration on the proposed topics of the depositions. Plaintiffs do not explain how the sought-after depositions will have any bearing on the breach-of-contract and trademark claims at issue here, which are dispositive of the entire case.

Moreover, Plaintiffs state that they were informed that Kamel Mroueh, the U.S. General representative with whom Phoenix Fibers dealt, would not be returning to the United States until June 2017. (Dkt. No. 93 at 8 [Salzmann Decl. at ¶ 50].) Nonetheless, Plaintiffs agreed to, and filed, a joint stipulation with a discovery cutoff of March 13, 2017 (now set by this Court), and a jointly proposed jury trial commencing on May 9, 2017 (jointly requested but not set by this Court). (Dkt. No. 79 [Joint Stipulation].) To the extent that Plaintiffs desired to depose Mr. Mroueh in the United States, they knew that, should this Court grant the stipulation, they would lose that opportunity regardless. Therefore, to the extent Plaintiffs' Rule 56(d)(1) request is a request to take Mr. Mroueh's deposition, they have waived that argument and this Court should clearly deny their request.

## III.   CONCLUSION

For the foregoing reasons, Phoenix Fibers respectfully requests that the Court grant this Motion for Summary Judgment.

DATED: January 13, 2017                 HAYNES AND BOONE, LLP


                                                   By: */s/ Kenneth G. Parker*
                                                        Kenneth G. Parker
                                                        Attorneys for Defendant
                                                        Phoenix Fibers, Inc.

24

DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 600 Anton Boulevard, Suite 700, Costa Mesa, California 92626.

I hereby certify that on January 13, 2017, I served the foregoing documents described as ***DEFENDANT PHOENIX FIBERS, INC.'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT*** on the following individuals:

| | |
|---|---|
| Louis S. Ederer, Esq.<br>Matthew T. Salzmann, Esq.<br>ARNOLD AND PORTER LLP<br>399 Park Avenue<br>New York, NY  90022<br><br>[Attorneys for Plaintiffs]<br>[Served Electronically] | John C. Ulin, Esq.<br>Eric D. Mason, Esq.<br>ARNOLD AND PORTER LLP<br>777 South Figueroa Street, 44th Fl.<br>Los Angeles, CA  90017-5844<br><br>[Attorneys for Plaintiffs]<br>[Served Electronically] |
| Eugene S Alkana<br>Eugene S Alkana Law Office<br>131 North El Molino Avenue Suite 310<br>Pasadena, CA 91101<br><br>[Attorneys for U.S. General Export]<br>[Served Electronically] | J T Fox<br>Law Offices of JT Fox and Associates<br>556 South Fair Oaks Avenue Suite 444<br>Pasadena, CA 91105<br><br>[Attorneys for Tiffany Alana Wolff]<br>[Served Electronically] |
| Lydia Evilsa Terrazas Cho<br>702 N Crescent Drive<br>Beverly Hills, CA 90210<br>*Pro Se*<br><br>[Served via U.S. Mail] | Comak Trading<br>2550 S Soto St,<br>Vernon, CA 90058<br><br><br>[Served via U.S. Mail] |

I declare that I am a member of the bar of this Court.

Executed on January 13, 2017, at Costa Mesa, California.

*/s/ Christopher B. Maciel*
Christopher B. Maciel