JOHN C. ULIN (State Bar No. 165524)
John.Ulin@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Tel.: (213) 243-4000; Fax: (213) 243-4199

LOUIS S. EDERER (Pro Hac Vice)
Louis.Ederer@apks.com
MATTHEW T. SALZMANN (Pro Hac Vice)
Matthew.Salzmann@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
Tel.: (212) 836-8000; Fax: (212) 836-8689

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC. d/b/a MISS ME, a California corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PHOENIX FIBERS, INC., an Arizona corporation, et al.,<br><br>Defendants. | Case No.:  2:16-cv-00940-TJH-JC<br><br>Hon. Terry J. Hatter Jr.<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S MOTION FOR SEPARATE TRIALS**<br><br>Date:        August 21, 2017<br>Time:       Under submission<br>Location:  Courtroom 9B<br>                 First Street Courthouse |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS ......................................................................................3

ARGUMENT ........................................................................................................6

I.    LEGAL STANDARD ................................................................................6

II.   PHOENIX FIBERS' PROPOSED SEPARATE TRIALS WOULD BE
      INCONVENIENT AND INEFFICIENT AS THE ISSUES AND THE
      EVIDENCE ARE CLEARLY NOT SEPARABLE.......................................7

III.  A SINGLE TRIAL PRESENTS NO RISK OF JURY CONFUSION.............10

IV.   PLAINTIFFS DO NOT OBJECT TO A SEPARATE TRIAL
      ADDRESSING THE RETAILER DEFENDANTS' CROSS-
      CLAIMS, IF PLAINTIFFS NEED NOT BE INVOLVED .............................11

CONCLUSION ....................................................................................................12

1
2

# **TABLE OF AUTHORITIES**

3
4

**Cases:**                                                                                                 **Page(s):**

5
6

*Alfred E. Mann Found. for Sci. Res. v. Cochlear Corp.*,
   2014 WL 12586105 (C.D. Cal. Jan. 3, 2014) ........................................................8

7
8

*Aoki v. Gilbert*,
   2015 WL 5734626 (E.D. Cal. Sept. 29, 2015) .....................................................6

9
10

*Beco Dairy Automation, Inc. v. Global Tech Sys.*,
   2016 WL 5870117 (E.D. Cal. Oct. 6, 2016)...........................................6, 7, 8, 10

11
12

*Cook v. United Serv. Auto Ass'n*,
   169 F.R.D. 359 (D. Nev. 1996) ...........................................................................7

13

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*,
   2006 WL 1646108 (N.D. Cal. June 12, 2006) .....................................................8

14
15

*Gravity Defyer Corp. v. Under Armour, Inc.*,
   2013 WL 12138987 (C.D. Cal. July 23, 2013)..............................................6, 8, 9

16
17

*Hangarter v. Provident Life & Accident Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ...............................................................................6

18
19

*Hunting World, Inc. v. Reboans, Inc.*,
   1994 WL 806022 (N.D. Cal. Oct. 26, 1994) ........................................................8

20
21

*JIPC Mgmt., Int. v. Incredible Pizza Co.*,
   2009 U.S. Dist. LEXIS 133019 (C.D. Cal. July 14, 2009)............................10, 11

22
23

*Mformation Techs., Inc. v. Res. In Motion Ltd.*,
   2012 WL 1142537 (N.D. Cal. Mar. 29, 2012) ................................................6, 7

24

*Tracey v. Am. Family Mut. Ins. Co.*,
   2010 WL 3613875 (D. Nev. Sept. 8, 2010)......................................................8, 11

25
26

**Statutes, Rules and Regulations**

27

Fed. R. Civ. P. 42(b) ...................................................................................6, 11

28

Fed. R. Civ. P.  30(b)(6)........................................................................................9

## **Other Authorities**

9A Wright & Miller, *Federal Practice and Procedure* § 2388
(3d ed. 2017) .................................................................................................7

1    Plaintiffs Sweet People Apparel, Inc. d/b/a Miss Me ("Sweet People") and
2    RCRV, Inc. d/b/a Rock Revival ("RCRV," and together with Sweet People,
3    "Plaintiffs") respectfully submit this Memorandum of Law in opposition to
4    Defendant Phoenix Fibers, Inc. ("Phoenix Fibers")'s Motion for Separate Trials.

5                                   **PRELIMINARY STATEMENT**

6        This case concerns the unauthorized distribution and sale of Plaintiffs' second-
7    quality MISS ME and ROCK REVIVAL denim products.  In violation of the clear
8    terms of the agreement it negotiated with Plaintiffs, Phoenix Fibers sold Plaintiffs'
9    second-quality denim products to defendant U.S. General Export, Inc. ("U.S.
10   General"), instead of shredding those products into "shoddy fiber" as the agreement
11   required.  U.S. General then distributed and sold Plaintiffs' second-quality denim
12   products to defendants SAC International Traders, Inc. and Shaukat Ali Chohan, who
13   in turn distributed and sold such products to the remaining defendants (the "Retailer
14   Defendants"), who, ultimately, sold Plaintiffs' second-quality denim products to end
15   consumers.  These very facts underlie all the claims in this case, including not only
16   Plaintiffs' breach of contract and trademark infringement claims, but also the various
17   indemnification and contribution cross-claims that the Retailer Defendants have
18   asserted against each other and Phoenix Fibers.  Indeed, Plaintiffs will need to
19   demonstrate these same facts in order to prevail on any (and all) of their claims.

20       In its Motion, Phoenix Fibers attempts to obscure this unavoidable truth.
21   Instead, according to Phoenix Fibers, Plaintiffs' claims against it turn on the
22   existence of a contract, whereas their claims against U.S. General and the Retailer
23   Defendants turn only on trademark infringement.  *See* Dkt. 131 at 3, 8.  Thus,
24   Phoenix Fibers argues, these claims are factually discrete and should be tried
25   separately, because if it had no agreement with Plaintiffs to destroy Plaintiffs'
26   second-quality MISS ME and ROCK REVIVAL denim products, then arguably
27   Defendants' sale of Plaintiffs' second-quality products cannot constitute trademark
28   infringement.  *See id.* at 7–8.

Phoenix Fibers' argument, however, curiously overlooks what the jury will need to hear in deciding Plaintiffs' breach of contract claim.  In order to prove Phoenix Fibers' breach of the parties' contract, and Plaintiffs' corresponding damages — not to mention the damages arising from the unauthorized downstream sale of such products in violation of Plaintiffs' valuable trademark rights, for which Phoenix Fibers is jointly responsible — Plaintiffs must call at trial representatives from *each* of the defendants still participating in the case.  Indeed, since Phoenix Fibers purports to have maintained no business records relating to its sale of Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim products to U.S. General, live witnesses, including those representing U.S. General and the Retailer Defendants, are likely to be the primary source of such information at trial.  Thus, any attempt to separate Plaintiffs' claims against Phoenix Fibers from their claims against U.S. General and the Retailer Defendants will only result in the same evidence being presented multiple times.  Further, what U.S. General has to say at trial about what it was told by Phoenix Fibers representatives about the goods in question will likely have a direct bearing on the outcome of Plaintiffs' breach of contract claim against Phoenix Fibers.  As a result, separate trials would be a colossal waste of the Court's, the parties', and the juries' time and resources.

On the other hand, a single trial would be far from unwieldy.  Although Phoenix Fibers misleadingly suggests that *seven* defendants remain actively involved in this case, and all would need to appear at trial (Dkt. 131 at 5, 8), that simply is not the case.  Indeed, other than Plaintiffs and Phoenix Fibers, only U.S. General and individual defendant Tiffany Alana Wolff ("Wolff") are still actively involved in this case.  The other Retailer Defendants either are in default (Shaukat Ali Chohan (Dkt. 21)); are unrepresented and believed to be incapacitated (Myung Kwon Cho (Dkt. 70)); have otherwise ceased to participate in this action and are the subject of Plaintiffs' pending motions to strike their respective Answers and for the entry of defaults (Comak Trading Inc. (Dkt. 104); Lydia Evilsa Terrazas (Dkt. 125)); or could

1   not be served with the Complaint in the first place (SAC International Traders, Inc.).

2        Phoenix Fibers also argues that the indemnification and contribution claims
3   pleaded against it and as between U.S. General and the Retailer Defendants should be
4   tried separately, regardless of the Court's decision as to its request for the separation
5   of Plaintiffs' claims against itself, on the one hand, and U.S. General and the Retailer
6   Defendants, on the other hand.  Dkt. 131 at 8–10.  Assuming that Plaintiffs would not
7   need to be involved in any trial of these indemnification and contribution claims,
8   Plaintiffs do not necessarily object to this suggestion.  However, this type of
9   bifurcation would not seem to be the most efficient use of the Court's resources, as
10  the two remaining active defendants who are asserting indemnification and/or
11  contribution claims against one another and/or Phoenix Fibers (U.S. General and
12  Wolff) will also have to testify at the trial of Plaintiffs' claims against Phoenix
13  Fibers.

14       Accordingly, Plaintiffs respectfully request that the Court deny Phoenix
15  Fibers' Motion in its entirety.  At the least, however, Plaintiffs respectfully request
16  that their claims against Phoenix Fibers, U.S. General, and the Retailer Defendants be
17  tried together, to avoid unnecessary multiple trials, which would only burden the
18  Court, the juries, and the witnesses, and financially burden the parties.

19                          **STATEMENT OF FACTS**

20       Plaintiffs manufacture, promote, sell and distribute high-quality denim and
21  apparel products throughout the United States under the well-known MISS ME and
22  ROCK REVIVAL brand names, each of which is the subject of numerous federal
23  trademark registrations.  Dkt. 96 at 42 ¶ 1.  As a result of Plaintiffs' strict quality
24  control procedures, certain MISS ME and ROCK REVIVAL denim products are
25  deemed unfit for sale to consumers.  *Id.* at 43 ¶ 5.  Interested in finding an
26  environmentally-friendly way to dispose of their second-quality denim, in November
27  of 2011 Plaintiffs' then-CEO learned of Phoenix Fibers' affiliate, Bonded Logic,
28  which was promoting its use of recycled denim to manufacture environmentally-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS

1    friendly insulation products.  *Id.* at 46 ¶¶ 23–24.

2         Thereafter, representatives of Plaintiffs and Phoenix Fibers discussed and

3    orally agreed upon an arrangement whereby (a) Plaintiffs would deliver their second-

4    quality MISS ME and ROCK REVIVAL denim products to Phoenix Fibers at no

5    cost, and (b) in exchange, Phoenix Fibers would shred those products into what is

6    called "shoddy fiber," which material Phoenix Fibers' affiliate, Bonded Logic, would

7    then use to manufacture environmentally-friendly insulation products.  *Id.* at 46–53

8    ¶¶ 25–52.  This oral agreement was confirmed both before and after Plaintiffs began

9    sending their products to Phoenix Fibers.  *Id.*

10        In the summer of 2015, however, Plaintiffs learned that significant quantities

11   of the second-quality MISS ME and ROCK REVIVAL denim products they had sent

12   to Phoenix Fibers for conversion into shoddy fiber were being offered for sale in

13   secondary consumer trade channels, including on eBay and Facebook.  *Id.* at 55

14   ¶¶ 62–63.  When Plaintiffs confronted Phoenix Fibers about this, Phoenix Fibers

15   denied any knowledge that Plaintiffs' products had been knowingly removed, by sale

16   or otherwise, from its facility, and implied that such products may have "leaked" (*i.e.*,

17   been stolen) out of its warehouse.  *Id.* at 55–57 ¶¶ 64–68; *id.* at 59–60 ¶¶ 76–80.  It

18   was not until many months into this litigation that representatives of Phoenix Fibers

19   conceded, under oath during their depositions, that they had knowingly and

20   intentionally sold Plaintiffs' second-quality denim products to U.S. General — in

21   other words, their previous repeated denials were all deliberate lies intended to cover

22   up Phoenix Fibers' knowing breach of the parties' agreement.  *Id.* at 57–58 ¶¶ 69–72.

23        As these events were initially unfolding back in 2015, Plaintiffs engaged

24   private investigators to attempt to determine the source of the unauthorized MISS ME

25   and ROCK REVIVAL products being sold in secondary consumer trade channels,

26   and to remove such goods from the marketplace.  *Id.* at 62 ¶¶ 89–90.  Between

27   December 2015 and February 2016, Plaintiffs' investigators purchased over 29,000

28   units of such products from various defendants, at a cost of approximately $200,000.

*Id.* at 62 ¶ 91.  Unfortunately, however, those units turned out to be only the tip of the iceberg; indeed, as the evidence has developed, the marketplace has been, and continues to be flooded with poor quality MISS ME and ROCK REVIVAL denim products that were never intended to be sold to consumers, and which create a serious likelihood of post-sale confusion as to source.  *Id.* at 63 ¶ 92.

Ultimately, Plaintiffs commenced this action on February 10, 2016.  *See* Dkt. 1.  In their First Amended Complaint, Plaintiffs asserted six claims against the defendants, which can be broadly broken down into two categories.  *See* Dkt. 32.  First, Plaintiffs asserted that Phoenix Fibers breached its agreement with them by selling Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim products to U.S. General, and sought damages in an amount that included, without limitation, the costs and expenses Plaintiffs incurred in purchasing such products from the Retailer Defendants in an attempt to remove them from the marketplace and mitigate the irreparable harm caused to their valuable brands.  *See* Dkt. 32 ¶¶ 55–60.  Second, Plaintiffs asserted trademark infringement and other trademark-related claims against Phoenix Fibers and the Retailer Defendants, as a result of the likelihood of post-sale consumer confusion created by the sale of these unauthorized MISS ME and ROCK REVIVAL products.  *See id.* ¶¶ 61–98.  In response, in addition to their denials of Plaintiffs' direct claims against them, U.S. General and each of the Retailer Defendants pleaded cross-claims against Phoenix Fibers and/or the other Retailer Defendants for indemnification and/or contribution.  *See* Dkts. 27, 29, 46, 57.

Phoenix Fibers also neglects to mention that many of the Retailer Defendants are no longer involved in this case, or never were involved in the first place.  Defendant SAC International Traders, Inc. was never served with Plaintiffs' Complaint.  A default has been entered against Defendant Shaukat Ali Chohan.  Dkt. 21.  Unopposed motions for entry of default judgments against Defendants Comak Trading Inc. and Lydia Evilsa Terrazas Cho are pending.  *See* Dkts. 104, 125.  And, it is Plaintiffs' counsel's understanding that Defendant Myung Kwon Cho is

1   incapacitated.   Dkt. 70.   As a result, the only defendants that are expected to

2   participate in the trial of this action are Phoenix Fibers, U.S. General, and Wolff.

3                                    **ARGUMENT**

4   **I.**   **LEGAL STANDARD**

5          Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, a court may

6   order separate trials "for convenience, to avoid prejudice, or to expedite and

7   economize."   However, a party requesting separate trials is asking the Court to make

8   an exception to ordinary trial procedures.   *See, e.g.*, *Hangarter v. Provident Life &*

9   *Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) ("The district court's decision

10  to decline to bifurcate the trial comported with normal trial procedure."); *Gravity*

11  *Defyer Corp. v. Under Armour, Inc.*, 2013 WL 12138987, at *2 (C.D. Cal. July 23,

12  2013) ("In general, bifurcation is the exception, not the norm."); *Mformation Techs.,*

13  *Inc. v. Res. In Motion Ltd.*, 2012 WL 1142537, at *1 (N.D. Cal. Mar. 29, 2012) ("'In

14  the Ninth Circuit, [b]ifurcation … is the exception rather than the rule of normal trial

15  procedure.'" (citation omitted)).   Thus, the proponent of modifying the ordinary trial

16  procedures bears "'the burden of proving that bifurcation is justified.'"   *Beco Dairy*

17  *Automation, Inc. v. Global Tech Sys.*, 2016 WL 5870117, at *3 (E.D. Cal. Oct. 6,

18  2016) (citation omitted); *accord Gravity Defyer Corp.*, 2013 WL 12138987, at *2

19  *Mformation Techs., Inc.*, 2012 WL 1142537, at *1.

20         In considering a request for separate trials, courts analyze factors such as

21  "'whether the issues are clearly separable, and whether bifurcation would increase

22  convenience and judicial economy, reduce the risk of jury confusion, and avoid

23  prejudice to the parties.'"   *Beco Dairy Automation, Inc.*, 2016 WL 5870117, at *3

24  (quoting *Aoki v. Gilbert*, 2015 WL 5734626, at *4 (E.D. Cal. Sept. 29, 2015)); *see*

25  *Gravity Defyer Corp.*, 2013 WL 12138987, at *2; *Mformation Techs., Inc.*, 2012 WL

26  1142537, at *1.   "[I]n general, a single proceeding will be a more efficient and

27  reasonable means of resolving the action."   *Gravity Defyer Corp.*, 2013 WL

28  12138987 at *2.   Moreover, "a moving party's mere contention that judicial economy

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS

1  would be promoted by bifurcation, insofar as a second phase of a bifurcated trial

2  would be rendered unnecessary *if the moving party prevails at the first phase*, is not

3  sufficient to meet that party's burden of showing that bifurcation is appropriate."

4  *Mformation Techs., Inc.*, 2012 1142537, at *7 n.32 (emphasis in original); *accord*

5  *Beco Dairy Automation, Inc.*, 2016 WL 5870117, at *4.  Yet that is all Phoenix

6  Fibers has done here.

7  **II.  PHOENIX FIBERS' PROPOSED SEPARATE TRIALS WOULD BE**

8  **INCONVENIENT AND INEFFICIENT AS THE ISSUES AND THE**

9  **EVIDENCE ARE CLEARLY NOT SEPARABLE**

10      Phoenix Fibers' primary argument in favor of bifurcation (or, more accurately,

11  trifurcation) is that judicial economy would be served because *if* the Court were to

12  find that no contract existed between Plaintiffs and Phoenix Fibers in a first trial, no

13  additional trials would be necessary.  *See* Dkt. 131 at 7–8.  Putting aside, however,

14  the question of whether Phoenix Fibers accurately states the impact of such a finding

15  — which Plaintiffs do not concede — courts have repeatedly found that such a

16  speculative argument is not enough to justify separate trials.  *See Beco Dairy*

17  *Automation, Inc.*, 2016 WL 5870117, at *4 (quoting *Mformation Techs., Inc.*, 2012

18  1142537, at *7 n.32); *see generally* 9A Wright & Miller, *Federal Practice and*

19  *Procedure* § 2388 (3d ed. 2017) ("if any saving in time and expense is wholly

20  speculative, it is likely that a separate trial … will be denied" (citing cases)).  Indeed,

21  the sole case Phoenix Fibers cites in support of this argument, *Cook v. United Serv.*

22  *Auto Ass'n*, 169 F.R.D. 359 (D. Nev. 1996), makes clear that the court in that case

23  agreed to bifurcate the trial, in significant part, because the claims were separable and

24  required separate evidentiary presentations.  *See id.* at 362.  Here, however, Phoenix

25  Fibers' argument ignores the significant inefficiencies that would be created by

26  bifurcation or trifurcation here, especially given that neither the claims nor the

27  evidence are separable.

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS

1    Courts in this Circuit have repeatedly found separate trials to be inefficient and
2    inconvenient, and have consistently denied bifurcation requests where the same
3    evidence and testimony underlied the claims sought to be separated. *E.g.*, *Beco*
4    *Dairy Automation, Inc.*, 2016 WL 5870117, at *3 (denying bifurcation and finding
5    that claims "are not clearly separable because they share significant overlap in their
6    underlying facts and questions of law"); *Alfred E. Mann Found. for Sci. Res. v.*
7    *Cochlear Corp.*, 2014 WL 12586105, at *6 (C.D. Cal. Jan. 3, 2014) (denying
8    bifurcation where "there is substantial overlap of evidence"); *Hunting World, Inc. v.*
9    *Reboans, Inc.*, 1994 WL 806022, at *6 (N.D. Cal. Oct. 26, 1994) (denying bifurcation
10   in trademark infringement case "due to the large overlap of relevant evidence").  In
11   such circumstances, it would be an inefficient use of the court's and parties'
12   resources to "require the parties to present the same evidence and … witnesses" on
13   multiple occasions.  *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l Inc.*, 2006
14   WL 1646108, at *3 (N.D. Cal. June 12, 2006); *see also Alfred E. Mann Found. for*
15   *Sci. Res.*, 2014 WL 12586105, at *6 (denying bifurcation where it would require
16   "duplicative evidence"); *Gravity Defyer Corp.*, 2013 WL 12138987, at *2 (denying
17   bifurcation where "many of the same witnesses and exhibits would be presented
18   twice to two different juries"); *Tracey v. Am. Family Mut. Ins. Co.*, 2010 WL
19   3613875, at *7 (D. Nev. Sept. 8, 2010) (denying bifurcation of contractual and non-
20   contractual claims where the parties would "need to recall essentially the same
21   witnesses resulting in extended trial time and costs").  This rule justifies a complete
22   denial of Phoenix Fibers' Motion.
23        As discussed above, a trial on Plaintiffs' breach of contract claim against
24   Phoenix Fibers will, by necessity, require that the parties present evidence and
25   testimony regarding the entire course of events that occurred as between Plaintiffs,
26   Phoenix Fibers, U.S. General, and Wolff.  It is only through this evidence that
27   Plaintiffs can present their case on Phoenix Fibers' breach, and can prove their
28   resulting damages.  This is especially the case with respect to U.S. General, the party

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS

who directly purchased from Phoenix Fibers — under very suspicious circumstances[1] — Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim products. Indeed, it is anticipated that the trial testimony of U.S. General witnesses will support Plaintiffs' breach of contract claim against Phoenix Fibers. Moreover, this same evidence and testimony is necessary to explain and establish U.S. General's and Wolff's knowing and intentional acts of trademark infringement, and to demonstrate the damages suffered and illicit profits gained as a result thereof, for which Phoenix Fibers is alleged to be jointly liable; indeed, without hearing such evidence, the jury will be unable to determine that very issue.[2] There is no doubt, then, that separating Plaintiffs' breach of contract claim from their trademark infringement claims would require "many of the same witnesses and exhibits … [to] be presented twice to two different juries." *Gravity Defyer Corp.*, 2013 WL 12138987, at *2. That is the very antithesis of rationale behind bifurcation, which is supposed to simplify the trial process, not complicate it. In short, Plaintiffs' claims are not separable, and holding separate trials would be highly inconvenient, inefficient, unnecessarily expensive, and only serve to multiply the proceedings.[3]

---

[1] U.S. General's Rule 30(b)(6) corporate representative, Nellie Sanchez, testified that U.S. General purchased Plaintiffs' second-quality MISS ME and ROCK REVIVAL products from Phoenix Fibers through cash transactions with Phoenix Fibers' plant manager, Steve Johnson. Specifically, Ms. Sanchez testified that U.S. General's president, Kamel Mroueh, would direct her to fly from Los Angeles to Phoenix to personally hand deliver cash payments to Mr. Johnson. Ms. Sanchez never so much as entered Phoenix Fibers' facility to inspect or select the products being purchased. *See* Salzmann Decl., Ex. A. Remarkably, Mr. Johnson repeatedly denied any knowledge of Phoenix Fibers' sale of Plaintiffs' second-quality MISS ME and ROCK REVIVAL products, sales which he personally brokered with U.S. General. Dkt. 96 at 54 ¶¶ 57–59; *id.* at 55–56 ¶ 64; *id.* at 56–57 ¶¶ 68–70.

[2] *See* Dkt. 97 at 24–27.

[3] With respect to Phoenix Fibers' argument that "trial of Plaintiffs' claims against the seven Retailer Defendants could take significantly longer" than a trial solely against

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS

The Eastern District of California's decision in *Beco Dairy Automation, Inc. v. Global Tech Systems, Inc.*, 2016 WL 5870117 (E.D. Cal. Oct. 6, 2016), is particularly on point. Beco and Global had been parties to a distribution agreement related to dairy technology. *See id.* at \*\*1, 3. When their relationship fell apart, both parties accused each other of breaching the contract, and Global further accused Beco of infringing its patents in the products that were the subject of the agreement. *See id.* In advance of trial, Beco moved to bifurcate the case into separate trials for the technical (*i.e.*, patent) claims, and non-technical (*i.e.*, contract) claims. *Id.* Upon consideration, however, the court found that the claims were "not clearly separable because they share significant overlap in their underlying facts and questions of law." *Id.* at \*3. In so finding, the court emphasized that the allegedly infringing products were the subject of the allegedly breached agreement. *Id.* The court further found that, "because the claims are so intertwined, bifurcation would not serve the interests of judicial economy." *Id.* at \*4. Ultimately, the court denied Beco's motion (*id.*), just as this Court should deny Phoenix Fibers' Motion.

## III.   A SINGLE TRIAL PRESENTS NO RISK OF JURY CONFUSION

As a secondary argument, Phoenix Fibers asserts — virtually without explanation — that holding a single trial would likely confuse a jury, because it would be required to consider multiple claims against multiple defendants. *See* Dkt. 131 at 6. In support of this argument, Phoenix Fibers cites a single case, *JIPC*

---

Phoenix Fibers (Dkt. 131 at 8), it bears repeating that only **two** of the Retailer Defendants are still active in this case. *See supra* at 2–3. Moreover, any minute increase in the length of a trial that includes Plaintiffs' claims against the Retailer Defendants is more than compensated for by the avoidance of the duplicative presentation of witnesses and evidence that would be required if the single trial was bifurcated into two (or three). *See Beco Dairy Automation, Inc.*, 2016 WL 5870117, at \*1 ("'Overlap in the evidence as between the two claims may militate in favor of one slightly longer trial rather than two long trials.'" (citation omitted)).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S MOTION FOR SEPARATE TRIALS

*Mgmt., Int. v. Incredible Pizza Co.*, 2009 U.S. Dist. LEXIS 133019 (C.D. Cal. July 14, 2009), whose entire discussion of the issue of jury confusion is the following conclusory statement: "Presenting evidence on these issues would pose a risk of prejudice and confuse the jury." *Id.* at *72. It is not surprising, then, that Phoenix Fibers fails to cite any additional cases in support of this argument, since the type of "confusion" it is referring to would necessarily occur in any case involving multiple claims and defendants. It is also well settled that to the extent there may be any such confusion, "[b]oth jury instructions (including limiting instructions) and the parties' opening and closing arguments can address and remedy any [such] confusion." *Tracey*, 2010 WL 3613875, at *7. Thus, there is simply no serious risk of confusion in this case.[4]

## IV.   PLAINTIFFS DO NOT OBJECT TO A SEPARATE TRIAL ADDRESSING THE RETAILER DEFENDANTS' CROSS-CLAIMS, IF PLAINTIFFS NEED NOT BE INVOLVED

Phoenix Fibers also argues that even if its motion to bifurcate the trial of Plaintiffs' claims against the Defendants other than Phoenix Fibers is denied, the Retailer Defendants' cross-claims for indemnification and/or contribution against Phoenix Fibers and/or each other should still be tried separately. *See* Dkt. 131 at 8–10. For the same reasons discussed above, however, this separation would not be the most efficient use of the Court's or the parties' resources, as, once again, much of the same evidence and testimony giving rise to Plaintiffs' claims also underlies U.S. General's and Wolff's cross-claims. *See supra* at Part II. Nonetheless, if a separate trial on the issues of indemnification and contribution can be held without Plaintiffs' involvement, Plaintiffs do not object to this portion of Phoenix Fibers' motion.

---

[4] Notably, Phoenix Fibers has not even attempted to argue that separate trials are appropriate here "to avoid prejudice" pursuant Rule 42(b) of the Federal Rules of Civil Procedure.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S MOTION FOR SEPARATE TRIALS

## <u>CONCLUSION</u>

For all the foregoing reasons, Phoenix Fibers' Motion for Separate Trials should be denied in all respects.  At the least, Phoenix Fibers' Motion should be denied to the extent it seeks to separate Plaintiffs' claims against Phoenix Fibers' from Plaintiffs' claims against U.S. General and the Retailer Defendants.

Dated:  July 31, 2017                    ARNOLD & PORTER KAYE SCHOLER LLP

                                                 By:   /s/ Matthew T. Salzmann
                                                       John C. Ulin
                                                       Louis S. Ederer
                                                       Matthew T. Salzmann
                                                       *Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PHOENIX FIBERS, INC.'S
MOTION FOR SEPARATE TRIALS