UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SWEET PEOPLE APPAREL, INC. d/b/a MISS ME, a California corporation, et al., | Case No. 2:16-cv-00940-TJH-JC |
| Plaintiffs, | Hon. Terry J. Hatter, Jr. |
| v. | **[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT** |
| PHOENIX FIBERS, INC., an Arizona corporation, et al., | |
| Defendants. | |

On August 18, 2017, this Court granted Defendant Phoenix Fibers, Inc.'s ("Phoenix Fibers") Motion for Summary Judgment. (*See* Dkt. No. 138, referenced herein as the "Order"). As is evident by the Order, this Court sustained various evidentiary objections of Phoenix Fibers to the evidence submitted by Plaintiffs in their opposition to Phoenix Fibers' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. The evidentiary rulings of this Court, found in the Order, are memorialized below:

### Ruling on Objections to the Declaration of Eric Choi (Dkt. No. 95)

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 2: "In particular, I wish to explain why, under my direction, Sweet People and RCRV entered into an agreement with Phoenix Fibers in November 2011 for the recycling of damaged, unfinished, obsolete, returned or otherwise second-quality MISS ME and ROCK REVIVAL denim products into shoddy fiber." | Fed. R. Evid. 602. There is no evidence Mr. Choi has personal knowledge of the existence of any agreement.<br><br>Fed. R. Evid. 402. Mr. Choi's subjective understanding is irrelevant in the absence Mr. Choi communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled |
| ¶ 4: "MISS ME and ROCK | Fed. R. Evid. 602. Mr. | ☒ Sustained |

| Testimony: | Objections: | Ruling: |
|---|---|---|
| REVIVAL brand jeans are both known to consumers as high fashion apparel products.  Over the past several years, MISS ME and ROCK REVIVAL denim products have achieved substantial sales success, and have received extensive media coverage in widely circulated fashion magazines.  In addition to the unique and distinctive designs created by Sweet People and RCRV designers, which are embroidered or stitched onto the pockets and waistband areas of MISS ME and ROCK REVIVAL denim products, such products are widely recognized for their superior quality, including both the fit and wash.  Sweet People and RCRV have worked extremely hard to earn this reputation by maintaining strict quality control policies and procedures that ensure that only products commensurate with the high quality reputation of MISS ME and ROCK REVIVAL denim and apparel products ever enter the stream of commerce." | Choi provides no foundation for this testimony. There is no evidence Mr. Choi has personal knowledge of how MISS ME and/or Rock Revival brand jeans are "known to consumers," have "received extensive media coverage in widely circulated fashion magazines," that these "designs" are "unique and distinctive," or that the "quality control policies and procedures" have "ensure[d] that only products" approved by MISS ME and Rock Revival "ever enter the stream of commerce."<br><br>Fed. R. Evid. 701.  Mr. Choi offers improper lay opinion. | ☐ Overruled |
| ¶ 5: "Prior to entering into an agreement with Phoenix Fibers in November 2011…." | Fed. R. Evid. 602.  There is no evidence Mr. Choi has personal knowledge of the existence of any agreement. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 6: "These forms of disposal, however, were always of particular concern to me and others within the Plaintiff companies, as we recognized the negative impact they might have on the environment." | Fed. R. Evid. 602 (as to "others"). No foundation for what "others" were concerned about.<br><br>Fed. R. Evid. 402. Mr. Choi's subjective understanding is | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
|  | irrelevant in the absence Mr. Choi communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") |  |
| ¶ 6: "Therefore, finding an environmentally friendly way to dispose of Sweet People's and RCRV's unfinished, damaged or otherwise second-quality denim products had for many years been a particularly high priority of mine and the companies." | Fed. R. Evid. 602 (as to others in the company).<br><br>Fed. R. Evid. 402. Mr. Choi's and others' subjective understanding is irrelevant in the absence Mr. Choi communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is | ☒ Sustained<br><br>☐ Overruled |

3

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| | irrelevant to determining the meaning of contractual language.") | |
| ¶ 7: "On or about November 1, 2011, I came across the website of a company called Bonded Logic, Inc., which was promoting itself as an Arizona-based manufacturer of insulation products made from recycled denim." | Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 402. Subjective understanding, uncommunicated, is not relevant. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.")<br><br>Fed. R. Evid. 1001; 1002. The contents of the website should be evidenced by the website itself. | ☒ Sustained<br><br>☐ Overruled |
| ¶7: "As this presented a denim recycling opportunity that was exactly in line with what I had been looking for, I immediately forwarded a link to Bonded Logic's website to our General Counsel, Lilly Kim, Esq., with the message 'Let's discuss!'" | Fed. R. Evid. 602.  The message "Let's discuss" is hearsay.<br><br>Fed. R. Evid. 402.  Mr. Choi's and others' subjective understanding is irrelevant in the absence Mr. Choi communicated that | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| | understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | |
| ¶ 8: "Thereafter, acting under the direction of Ms. Kim…." | Fed. R. Evid. 602. No foundation is provided for this statement. | ☒ Sustained ☐ Overruled |
| ¶ 8: "contacted Bonded Logic to inquire about its recycling of denim into insulation products, and was referred to its affiliate, Phoenix Fibers." | Fed. R. Evid. 602.  No foundation is provided for this statement. | ☒ Sustained ☐ Overruled |
| ¶ 8: "Ms. Song had a series of telephone calls and email communications with a representative of Phoenix Fibers, and ultimately arrived at an agreement with Phoenix Fibers for the donation of Plaintiff's second quality products under the following terms: (a) Sweet People and RCRV would deliver unfinished, damaged and otherwise second quality MISS ME and ROCK REVIVAL denim products that they deemed unfit for circulation to consumers to Phoenix Fibers' Chandler, Arizona facility, at no cost to Phoenix Fibers, and (b) as it claimed it did for other | Fed. R. Evid. 602. Mr. Choi provides no foundation for this testimony.

Fed. R. Evid. 802. Mr. Choi cannot base his "personal knowledge" of the subject matter on inadmissible statements of others.

Fed. R. Evid. 1001, 1002; Fed. R. Evid. 901 (documents allegedly providing foundation are | ☒ Sustained ☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| denim manufacturers, Phoenix Fibers would shred such products into shoddy fiber, which would then be used by Phoenix Fibers' affiliate, Bonded Logic, to manufacture environmentally friendly products, such as insulation." | both hearsay and not authenticated). | |
| ¶ 8: "All of these terms of agreement were contemporaneously reported to me at the time by Ms. Song and Ms. Kim, and I approved the parties' agreement." | Fed. R. Evid. 802.  Ms. Song's and Ms. Kim's statements to Mr. Choi are hearsay statements. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 9: "after Ms. Song received a sample of Bonded Logic's UltraTouch Denim insulation from Phoenix Fibers in March 2012, which, I understood, was similar to the products that would be made from the second-quality denim products donated by my companies, we prominently displayed the samples in Sweet People's and RCRV's conference rooms, as an example of the companies' commitment to the environment. A photo of one such display case appears below:<br><br>" | Fed. R. Evid. 602.  No foundation is provided for Mr. Choi's knowledge.<br>Fed. R. Evid. 802. It is clear Mr. Choi is basing his testimony on what Ms. Song told him. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 10: "The entire purpose of Sweet People's and RCRV's agreement with Phoenix Fibers was premised on two goals which were of critical importance to these companies: (a) to preserve the reputation and integrity | Fed. R. Evid. 402.  Mr. Choi's and others' subjective understanding is irrelevant in the absence Mr. Choi communicated that | ☒ Sustained<br><br>☐ Overruled |

| Testimony: | Objections: | Ruling: |
|---|---|---|
| of our brands by keeping unfinished, damaged or otherwise second-quality MISS ME and ROCK REVIVAL products out of the stream of commerce, and (b) to dispose of unfinished, damaged or otherwise second-quality MISS ME and ROCK REVIVAL products in an environmentally sound manner. " | understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | |
| ¶ 11: "Had I believed for a second that Phoenix Fibers would violate our agreement and sell into consumer retail channels the MISS ME and ROCK REVIVAL products that Sweet People and RCRV delivered to it-at significant cost-for recycling into shoddy fiber, I would have never authorized Sweet People or RCRV to enter into an agreement with Phoenix Fibers, or donate a single product to it." | Fed. R. Evid. 402. Mr. Choi's and others' subjective understanding is irrelevant in the absence Mr. Choi communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.")<br><br>Fed. R. Evid. 602. No | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| | foundation provided for the statements that Phoenix Fibers violated the agreement or sold "into consumer retail channels." | |
| ¶ 12: "Phoenix Fibers' inexplicable sale of large quantities of MISS ME and ROCK REVIVAL products that were supposed to be shredded into shoddy fiber, in direct violation of the parties' agreement and Sweet People's and RCRV's respective trademark rights-after nearly four years of complying with the parties' agreement and shredding all such products- has allowed such second-quality products to find their way into consumer channels, and to disappoint not only their purchasers, but also the observers of these products in the post-sale market." | Fed. R. Evid. 602. No foundation provided for any of Mr. Choi's statements, including but not limited to alleged "inexplicable sale of large quantities" or "direct violation of the parties' agreement" or trademark rights; four years of compliance with the alleged agreement; shredding of "all" products; "allow[ance]" of second-quality products into consumer channels, any disappointed purchasers or disappointed "observers of these products in the post-sale market." | ☒ Sustained<br><br>☐ Overruled |
| ¶ 13: "To this day, as a direct result of Phoenix Fibers' conduct, MISS ME and ROCK REVIVAL denim products improperly sold by Phoenix Fibers are being offered for sale and sold by downstream customers of such products through eBay and social media platforms such as Facebook." | Fed. R. Evid. 602. No foundation provided for Mr. Choi's testimony. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 13: "The purchasers of these products are then wearing them in public, and observers familiar with the | Fed. R. Evid. 602. No foundation of any kind provided for the | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| high quality standards of these well-known brands are surely wondering how and why these companies are allowing these goods to be sold." | statement "observers familiar with . . . these well-known brands are surely wondering how and why these companies are allowing these goods to be sold." | |
| ¶ 13: "This inexplicable conduct on Phoenix Fibers' part has caused irreparable harm to Sweet People and RCRV, and to their incalculably valuable MISSME and ROCK REVIVAL brands." | Fed. R. Evid. 602.  No foundation is provided for this statement, either the allegation of "inexplicable conduct" or the harm alleged. | ☒ Sustained<br><br>☐ Overruled |

### Ruling on Objections to the Declaration of Lilly Kim (Dkt. No. 94)

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 3: "On November I, 2011, Eric Choi, an owner and the then-CEO of both Sweet People and RCRV, sent me an email containing a link the website of Phoenix Fibers' affiliate, Bonded Logic, Inc., with the message 'let's discuss!'" | Fed. R. Evid. 1001; 1002. The contents of the website should be evidenced by the website itself.<br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 4: "The impetus for Mr. Choi's email, and for his excitement, was his desire to find an environmentally responsible way to dispose of damaged, unfinished, obsolete, returned or otherwise second-quality MISS ME and ROCK REVIVAL brand products that the companies deemed unfit for sale to consumers." | Fed. R. Evid. 602.  No foundation for the alleged "impetus" of Mr. Choi's e-mail.<br><br>Fed. R. Evid. 402.  Mr. Choi's and others' subjective understanding is irrelevant in the absence of evidence Mr. Choi communicated that understanding to Phoenix Fibers.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled |
| ¶ 6: "While Plaintiffs wanted to dispose of their second-quality denim products in an environmentally friendly manner, we were equally, if not more concerned with permanently removing such low quality MISS ME and ROCK REVIVAL denim products from the stream of commerce." | Fed. R. Evid. 402. Plaintiffs' desires are irrelevant in the absence of evidence of their communication to Phoenix Fibers.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
|  | 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") |  |
| ¶ 7: "Shortly thereafter, Mr. Choi and I discussed the possibility of developing a relationship with Bonded Logic for the disposal of Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim products in an environmentally sound manner-i.e., by shredding the products into shoddy fiber. Our discussion was precipitated by Mr. Choi's review of Bonded Logic's promotion of this method of disposal of unwanted denim products on its website." | Fed. R. Evid. 802. The contents of the Bonded Logic website are hearsay.<br><br>Fed. R. Evid. 602.  No foundation is provided for the statement Mr. Choi reviewed the Bonded Logic website.<br><br>Fed. R. Evid. 402. Plaintiffs' subjective motivations are irrelevant in the absence of evidence of their communication to Phoenix Fibers.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled |

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 9: "Within a day or two, Ms. Song, acting under my direction, contacted Bonded Logic regarding its conversion of denim products into shoddy fiber, and was referred to Matt Graham, the General Manager of Phoenix Fibers, which is Bonded Logic's affiliate." | Fed. R. Evid. 602.  No foundation is provided for this testimony.<br><br>Fed. R. Evid. 802 (to the extent any of this testimony is based on what Ms. Song allegedly told Ms. Kim). | ☒ Sustained<br><br>☐ Overruled |
| ¶ 9: "Thereafter, a series of oral and written communications ensued between Ms. Song and Mr. Graham regarding the possible donation of Plaintiffs' low quality denim products to Phoenix Fibers for recycling into shoddy fiber." | Fed. R. Evid. 1001; 1002.  The contents of the "written communications" should be evidenced by the "written communications" themselves.<br><br>Fed. R. Evid. 901.  The alleged written communications are not authenticated.<br><br>Fed. R. Evid. 602.  No foundation is provided for this testimony. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 9: "Throughout her discussions with Mr. Graham, Ms. Song reported to me, and others, including Mr. Choi, as to their status." | Fed. R. Evid. 802.  Ms. Song's statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 10: "Based on my contemporaneous conversations with Ms. Song regarding her oral and written communications with Phoenix Fibers, I understood that Sweet People and RCRV had expressly conditioned their agreement to provide Phoenix Fibers with their second-quality MISS ME and RCRV denim products on Phoenix Fibers' agreement to shred and recycle all such products into shoddy fiber." | Fed. R. Evid. 602.  Ms. Kim's testimony is entirely based on hearsay.<br><br>Fed. R. Evid. 802.  Ms. Song's alleged statements to Ms. Kim are inadmissible hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 10: "Indeed, the very foundation of the parties' agreement was (a) Phoenix Fibers' need for denim products to convert into shoddy fiber, and (b) Plaintiffs' desire to remove second-quality MISS ME and RCRV denim products that the companies deemed unfit for sale to consumers from the stream of commerce, and dispose of them in an environmentally friendly way." | Fed. R. Evid. 602.  Ms. Kim has no personal knowledge of an agreement.<br><br>Fed. R. Evid. 402. Ms. Kim's testimony about what she believed the "foundation" was is irrelevant in the absence of communications to Phoenix Fibers.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| | Testimony: | Objections: | Ruling: |
|---|---|---|---|
| ¶ 11: "At the time, I also recall seeing written communications between Ms. Song and Mr. Graham wherein Mr. Graham (a) represented that Phoenix Fibers would destroy Plaintiffs' second-quality denim products and convert them into shoddy fiber, and (b) stated that Phoenix Fibers did not require a writing to memorialize the parties' agreement." | Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 1001; 1002. The "written communications" are the evidence of their contents.<br><br>Fed. R. Evid. 901.  The documents Ms. Kim mentions are not authenticated. | ☒ Sustained<br><br>☐ Overruled | |
| ¶ 12: "Based on my understanding of these facts at the time, and the straightforward terms of the parties' agreement-namely, (a) Plaintiffs would deliver damaged, unfinished or otherwise second-quality MISS ME and ROCK REVIVAL denim products that the companies deemed unfit for sale to consumers to Phoenix Fibers' Chandler, Arizona facility, at no cost to Phoenix Fibers, and (b) Phoenix Fibers would shred such products into shoddy fiber, which would then be used by Phoenix Fibers' affiliate, Bonded Logic, to manufacture environmentally friendly products such as insulation-I was satisfied that a written contract with Phoenix Fibers was not necessary to memorialize the parties' agreement." | Fed. R. Evid. 402.  *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled | |

14

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 13: "In addition, I did not believe it was necessary to request certificates of destruction from Phoenix Fibers for the denim products Plaintiffs were donating to Phoenix Fibers for that purpose, because the parties' entire agreement was premised on Phoenix Fibers' conversion of Plaintiffs' denim products into shoddy fiber, which could not be accomplished without their destruction (i.e., shredding)." | Fed. R. Evid. 402. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☒ Sustained<br><br>☐ Overruled |
| ¶ 14: "Once Plaintiffs reached an agreement with Phoenix Fibers, in November 2011, for the shredding and recycling of their second-quality denim products into shoddy fiber, Plaintiffs began importing their unfinished or second-quality denim products from their Asian factories for ultimate shipment to Phoenix Fibers, rather than having them incinerated by the factories." | Fed. R. Evid. 602. No foundation is provided for Ms. Kim's testimony as to an agreement. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 14: "This involved a significant expense, but it was an expense Plaintiffs were willing to incur in order to dispose of their second-quality denim products in an environmentally conscious manner." | Fed. R. Evid. 402. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining | ☒ Sustained<br><br>☐ Overruled |

15

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| | the meaning of contractual language.") | |
| ¶ 15: "Over the next four years, during the period November 2011 through September 2015, Plaintiffs donated hundreds of thousands of pounds of second-quality denim products to Phoenix Fibers for shredding into shoddy fiber. It cost Plaintiffs approximately $1,000 per shipping container to transport MISS ME and ROCK REVIVAL denim products from their facility in Los Angeles, California to Phoenix Fibers' facility in Chandler, Arizona." | Fed. R. Evid. 602.  Ms. Kim provided no foundation for her knowledge of these facts. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 16: "In or around the summer of 2015, Plaintiffs began to receive complaints from their sales representatives, authorized retail accounts, and others, regarding the availability of second-quality MISS ME and ROCK REVIVAL denim products for online and wholesale purchase." | Fed. R. Evid. 802.  The alleged complaints are hearsay.<br><br>Fed. R. Evid. 901.  To the extent Ms. Kim's testimony is based on documents, almost all are not authenticated. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 17: "Upon examination of the products, I and others within the companies were able to determine that such products had previously been delivered to Phoenix Fibers for shredding and recycling into shoddy fiber." | Fed. R. Evid. 602. No foundation is provided for the conclusion that the products came from Phoenix Fibers.<br><br>Fed. R. Evid. 802. Conclusions of others are hearsay. | ☒ Sustained<br><br>☐ Overruled |

16

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 18: "During that call, Mr. Johnson explained to me that Plaintiffs' goods were received and placed in a secure cage until they were ready to be shredded, at which time they would be removed from the secure cage and shredded into shoddy fiber." | Fed. R. Evid. 402. Mr. Johnson's statements are not relevant.<br><br>Fed. R. Evid. 802. Mr. Johnson's alleged statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 19: "Shortly thereafter, on or about October 27, 2015, I spoke with Tod Kean, who I understood to be one of the owners, and the CEO of Phoenix Fibers, and advised him that Plaintiffs had located significant quantities of low quality MISS ME and ROCK REVIVAL denim products being offered for sale in secondary channels of trade, such as eBay, which products Plaintiffs believed may have come from Phoenix Fibers' facility." | Fed. R. Evid. 802.  Ms. Kim's statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 20: "In response, Mr. Kean stated that he would look into it, and mentioned the possibility that there may have been 'leakage' (i.e., theft) from Phoenix Fibers' warehouse. Specifically, Mr. Kean explained that on occasion, the cage where Plaintiffs' products were stored would be full, and certain products would be left outside of the cage, thus being susceptible to theft. At the end of our call, Mr. Kean referred me to Mr. Johnson, who he stated that would be able to answer my questions regarding security issues and the possible 'leakage' of Plaintiffs' products from Phoenix Fibers' warehouse." | Fed. R. Evid. 402.  Mr. Kean's alleged statements are not relevant.<br><br>Fed. R. Evid. 802. Mr. Kean's alleged statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 21: "At no time during my call with Mr. Kean, or at any time thereafter, | Fed. R. Evid. 402.  What Mr. Kean did not state is | ☒ Sustained |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| did Mr. Kean state that Phoenix Fibers had sold Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim products to anyone as "credential," nor did he state that it was Phoenix Fibers' position under the parties' 2011 agreement that Phoenix Fibers was entitled to sell Plaintiffs' products as "credential" or otherwise." | irrelevant. | ☐ Overruled |
| ¶ 22: "Later that same day, I spoke with Mr. Johnson and told him what I had previously explained to Mr. Kean, namely, that Plaintiffs were seeing significant quantities of second-quality MISS ME and ROCK REVIVAL denim products being offered for sale in secondary channels of trade, and that Plaintiffs had examined these products, and believed that they had previously been delivered to Phoenix Fibers for recycling into shoddy fiber." | Fed. R. Evid. 802.  Ms. Kim's statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 22: "In response, Mr. Johnson acknowledged the possibility that Plaintiffs' products had 'leaked' from Phoenix Fibers' warehouse, stated Phoenix Fibers was adding security cameras in its warehouse, and further stated that he would personally investigate the issue and report back to me." | Fed. R. Evid. 402.  Mr. Johnson's alleged statement(s) are not relevant. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 23: "At no time during my conversation with Mr. Johnson, or at any time thereafter, did Mr. Johnson disclose the fact he had personally overseen the sale of numerous pallets of second-quality MISS ME and ROCK REVIVAL denim products to Defendant U.S. General Export, Inc., | Fed. R. Evid. 402. Mr. Johnson's alleged statement(s) are not relevant. | ☒ Sustained<br><br>☐ Overruled |

18

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| or state that it was Phoenix Fibers' position that Phoenix Fibers was entitled to sell Plaintiffs' products to anyone as 'credential' or otherwise." | | |
| ¶ 24: "Although Mr. Johnson had advised me during our call that he would look into the possibility that certain MISS ME and ROCK REVIVAL denim products had been stolen from Phoenix Fibers warehouse, and then report back to me, I received no further information or response of any kind from Mr. Johnson or Mr. Kean." | Fed. R. Evid. 402.  Mr. Johnson's alleged statement(s) are not relevant. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 25: "In the weeks that followed, I continued to see increasing numbers of second-quality MISS ME and ROCK REVIVAL denim products being made available for purchase in secondary channels of trade. Finally, in mid-November 2015, I instructed Plaintiffs' outside counsel to contact Mr. Kean, in order to ensure that Plaintiffs' donated products were being properly handled and secured prior to being shredded and recycled into shoddy fiber. Once again, at the time, I had no idea that these products had found their way out of Phoenix Fibers' warehouse in any way other than through theft." | Fed. R. Evid. 602.  No foundation is provided for the statement of "continu[ing] to see" products. No foundation has been provided as to whether shredding was required.<br><br>Fed. R. Evid. 802.  Ms. Kim's statements are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 26: "Thereafter, following a series of communications between Plaintiffs' outside counsel and Phoenix Fibers' then-outside counsel, in which Phoenix Fibers for the first time took the position that it was unaware of the removal of any of Plaintiffs' second-quality MISS ME and ROCK REVIVAL denim | Fed. R. Evid. 402.  These alleged communications are irrelevant. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| products from its warehouse floor, and that '[i]f someone [had removed any such products], it was done without the knowledge and consent of Phoenix Fibers,' Phoenix Fibers terminated the parties' agreement, stating that it would no longer accept Plaintiffs' 'donations of products for recycling.'" | | |
| ¶ 28: "Once the products were returned to Plaintiffs' warehouse in Los Angeles, California, at my direction Plaintiffs' warehouse staff conducted a review of the reclaimed products. That review revealed that among the reclaimed goods were denim products that Plaintiffs had delivered to Phoenix Fibers for recycling into shoddy fiber as early as 2012." | Fed. R. Evid. 602. Ms. Kim has no personal knowledge of the review.<br><br>Fed. R. Evid. 802. Ms. Kim's testimony of the review appears to be based on reports from other people, which are hearsay. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 29: "In addition, many of the reclaimed boxes of MISS ME and ROCK REVIVAL denim products had been cut open in one corner, and had apparently been rummaged through. After viewing certain of these cut-open boxes myself, it was my belief that the boxes were opened in this manner to determine the quality and/or saleability of the MISS ME and ROCK REVIVAL denim products contained inside." | Fed. R. Evid. 602. Ms. Kim provided no foundation that she has personal knowledge of "many of the reclaimed boxes" having "been cut open in one corner" or "rummaged through." Nor is proper foundation provided for Ms. Kim's belief.<br><br>Fed. R. Evid. 701. Ms. Kim offers an improper lay opinion. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 30: "Realizing that they had received no forthright responses from Phoenix Fibers…." | Fed. R. Evid. 402 (irrelevant); argumentative. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 31: "incalculable harm . . . "; | Fed. R. Evid. 602. No | ☒ Sustained |

[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

| Testimony: | Objections: | Ruling: |
|---|---|---|
| "Plaintiffs' investigators to purchase as many of such products as possible. Between December 11, 2015 and February 9, 2016 (the day before Plaintiffs commenced this action), Plaintiffs' investigators purchased over 29,000 units of second-quality MISS ME and ROCK REVIVAL denim products from Defendants SAC International Traders, Inc., Shaukat Ali Chohan, Comak Trading, Inc. " | foundation is provided for alleged "incalculable harm."<br><br>Fed. R. Evid. 701. Improper lay opinion.<br><br>Fed. R. Evid. 802. Statements regarding number of units purchased by Plaintiffs is hearsay; no foundation is laid for who the investigators purchased them from, which is likely based on hearsay. | ☐ Overruled |

### Ruling on Objections to the Declaration of Matthew T. Salzmann (Dkt. 93)

| Testimony: | Objections: | Ruling: |
|---|---|---|
| ¶ 3: "Attached hereto as **Exhibit A** is a true and correct copy of excerpts from the transcript of the deposition of Kelley Marie Quinn, taken on September 12, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 4: "Attached hereto as **Exhibit B** is a true and correct copy of excerpts from the transcript of the deposition of Steven Johnson, taken on September 12, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 5: "Attached hereto as **Exhibit C** is | Fed. R. Evid. 602.  Mr. | ☒ Sustained |

21

| Testimony: | Objections: | Ruling: |
|---|---|---|
| a true and correct copy of excerpts from the transcript of the deposition of Tod Kean, taken on September 13, 2016." | Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☐ Overruled |
| ¶ 6: "Attached hereto as **Exhibit D** is a true and correct copy of excerpts from the transcript of the deposition of Lilly Kim, taken on October 12, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 7: "Attached hereto as **Exhibit E** is a true and correct copy of excerpts from the transcript of the deposition of Felipe Salgado, taken on October 13, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 8: "Attached hereto as **Exhibit F** is a true and correct copy of excerpts from the transcript of the deposition of Lisa Song, taken on November 4, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 9: "Attached hereto as **Exhibit G** is a true and correct copy of excerpts from the transcript of the deposition of Tiffany Alana Wolff, taken on December 9, 2016." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the disposition transcript. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 13: "Attached hereto as **Exhibit K** | Fed. R. Evid. 602.  Mr. | ☒ Sustained |

22

| | Testimony: | Objections: | Ruling: |
|---|---|---|---|
| 1 | is a true and correct copy of an email chain involving Eric Choi (Sweet People / RCRV), Lilly Kim (Sweet People / RCRV) and Lisa Song (Sweet People / RCRV), dated November 1, 2011 (SP/RCRV000065-66) (Deposition Ex. 30)." | Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☐ Overruled |
| 2–6 | | | |
| 7 | ¶ 14: "Attached hereto as **Exhibit L** is a true and correct copy of an email chain involving Jerry Weston (Bonded Logic, Inc.), Lisa Song (Sweet People / RCRV) and Matt Graham (Phoenix Fibers), dated November 3, 2011 (SP/RCRV005530-5531) (Deposition Ex. 67)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained ☐ Overruled |
| 8–12 | | | |
| 13 | ¶ 15: "Attached hereto as **Exhibit M** is a true and correct copy of an email chain involving Jerry Weston (Bonded Logic, Inc.), Lisa Song (Sweet People / RCRV) and Steve Kim (Sweet People / RCRV), dated November 3, 2011 (SP/RCRV005532-5533) (Deposition Ex. 66)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained ☐ Overruled |
| 14–18 | | | |
| 19 | ¶ 16: "Attached hereto as **Exhibit N** is a true and correct copy of an email chain involving Matt Graham (Phoenix Fibers), Lisa Song (Sweet People / RCRV) and Steve Kim (Sweet People / RCRV), dated November 4, 2011 (SP/RCRV005538-5539) (Deposition Ex. 68)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained ☐ Overruled |
| 20–24 | | | |
| 25 | ¶ 17: "Attached hereto as **Exhibit O** is a true and correct copy of an email chain involving Matt Graham, (Phoenix Fibers), Lisa Song (Sweet People / RCRV) and Steve Kim | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the | ☒ Sustained ☐ Overruled |
| 26–28 | | | |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| (Sweet People / RCRV), dated November 4-7, 2011 (SP/RCRV005542-5543) (Deposition Ex. 71). | exhibit is a "true and correct" copy of the described email chain. | |
| ¶ 18: "Attached hereto as **Exhibit P** is a true and correct copy of an email chain from Matt Graham (Phoenix Fibers) to Lisa Song (Sweet People / RCRV), dated November 15, 2011 (SP/RCRV005545)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained  ☐ Overruled |
| ¶ 19: "Attached hereto as **Exhibit Q** is a true and correct copy of an email chain involving Matt Graham (Phoenix Fibers), Lisa Song (Sweet People / RCRV), Steve Kim (Sweet People / RCRV) and others, dated November 18-22, 2011 (SP/RCRV00570)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained  ☐ Overruled |
| ¶ 20: "Attached hereto as **Exhibit R** is a true and correct copy of an email chain involving Matt Graham (Phoenix Fibers), Lisa Song (Sweet People / RCRV) and Soohan Kim (Sweet People / RCRV), dated December 5, 2011 (SP/RCRV005583-5584)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained  ☐ Overruled |
| ¶ 21: "Attached hereto as **Exhibit S** is a true and correct copy of an email chain from Matt Graham (Phoenix Fibers) to Lisa Song (Sweet People / RCRV), dated January 27, 2012 (SP/RCRV00617)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained  ☐ Overruled |
| ¶ 22: "Attached hereto as **Exhibit T** is a true and correct copy of an email chain from Lisa Song (Sweet People / RCRV) to Matt Graham (Phoenix | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal | ☒ Sustained  ☐ Overruled |

24

| Testimony: | Objections: | Ruling: |
|---|---|---|
| Fibers), Chris Graham (CH Robinson) and YongChul Kim (Sweet People / RCRV), dated March 8, 2012 (SP/RCRV005624)." | knowledge that the exhibit is a "true and correct" copy of the described email chain. | |
| ¶ 23: "Attached hereto as **Exhibit U** is a true and correct copy of an email chain involving Matt Graham (Phoenix Fibers) and Lisa Song (Sweet People / RCRV), dated March 8, 2012 (SP/RCRV005628)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 24: "Attached hereto as **Exhibit V** is a true and correct copy of an email chain from Matt Graham (Phoenix Fibers) to Lisa Song (Sweet People / RCRV), dated March 8, 2012 (SP/RCRV005629)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 25: "Attached hereto as **Exhibit W** is a true and correct photograph of a display case containing a sample of insulation that Phoenix Fibers provided to Plaintiffs in or around March 2012 (SP/RCRV000072)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" photograph. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 26: "Attached hereto as **Exhibit X** is a true and correct copy of emails exchanged between Matt Graham, (Phoenix Fibers), Lisa Song (Sweet People / RCRV) and others, dated March 27, 2012 (SP/RCRV005630-5639)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 27: "Attached hereto as **Exhibit Y** is a true and correct copy of an email from Matt Graham (Phoenix Fibers) to Lisa Song (Sweet People / RCRV), dated April 9, 2012 | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the | ☒ Sustained<br><br>☐ Overruled |

25

| Testimony: | Objections: | Ruling: |
|---|---|---|
| (SP/RCRV005640)." | exhibit is a "true and correct" copy of the described email chain. | |
| ¶ 28: "Attached hereto as **Exhibit Z** is a true and correct copy of an email chain involving Felipe Salgado (RCRV), Steven Johnson (Phoenix Fibers), Brenda Macon (Phoenix Fibers) and Vanessa Santana (CH Robinson), dated September 11-24, 2015 (SP/RCRV001006-1009)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 29: "Attached hereto as **Exhibit AA** is a true and correct copy of "Packing Lists" and "Bills of Lading" relating to Phoenix Fibers' sale of Plaintiffs' donated products to U.S. General Export, Inc., dated May 21, 2015 through November 10, 2015 (US GEN EXPORT 000028-33)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of Packing Lists" and "Bills of Lading." | ☒ Sustained<br><br>☐ Overruled |
| ¶ 30: "Attached hereto as **Exhibit BB** is a true and correct copy of "Invoices" issued by U.S. General Export, Inc. to SAC International Traders, Inc. relating to the sale of Plaintiffs' donated products, dated January 27, 2015 through September 29, 2015 (US GEN EXPORT 000028-33)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of "Invoices" issued by U.S. General Export, Inc. to SAC International Traders, Inc. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 31: "Attached hereto as **Exhibit CC** is a true and correct copy of an email from Aleisha Stevens to Rock Revival Customer Care, dated December 3, 2015 (SP/RCRV001366-1367) (Deposition Ex. 31)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 32: "Attached hereto as **Exhibit DD** | Fed. R. Evid. 602.  Mr. | ☒ Sustained |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling: |
|---|---|---|
| is a true and correct copy of an email from Bahram Reihan to Revival Customer Care, dated December 4, 2015 (SP/RCRV005756-5757) (Deposition Ex. 32)." | Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☐ Overruled |
| ¶ 33: "Attached hereto as **Exhibit EE** is a true and correct copy of an email from Lilly Kim (Sweet People / RCRV) to Tod Kean (Phoenix Fibers), dated October 27, 2015 (PHX000005) (Deposition Ex. 10)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described email chain. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 34: "Attached hereto as **Exhibit FF** is a true and correct copy of a letter from Louis S. Ederer, Esp. (Arnold & Porter LLP) to Tod Kean (Phoenix Fibers), dated November 17, 2015 (PHX001040-1041) (Deposition Ex. 11)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described letter. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 37: "Attached hereto as **Exhibit II** is a true and correct copy of an email chain involving Louis S. Ederer, Esq. (Arnold & Porter LLP), Charles W. Wirken, Esq. (Gust & Rosenfeld) and Tod Kean (Phoenix Fibers), dated December 7-8, 2015 (SP/RCRV000056-60)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described letter. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 38: "Attached hereto as **Exhibit JJ** is a true and correct copy of an article titled "*Shredding Clothing Nets Big Rewards for Phoenix Fibers*" (SP/RCRV003081-3082)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described article. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 39: "Attached hereto as **Exhibit KK** | Fed. R. Evid. 602.  Mr. | ☒ Sustained |

27

| Testimony: | Objections: | Ruling: |
|---|---|---|
| is a true and correct copy of an article titled "*Chandler firm grows; recycles denim material into insulation*" (SP/RCRV000032-33)." | Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described article. | ☐ Overruled |
| ¶ 40: "Attached hereto as **Exhibit LL** is a true and correct copy of an article titled "*Green Chandler company looks to bask in solar savings*" (SP/RCRV000039-40)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described article. | ☒ Sustained<br><br>☐ Overruled |
| ¶ 40: "Attached hereto as **Exhibit MM** is a true and correct copy of an article titled "*Chandler company turns worn-out blue jeans into insulation, more*" (SP/RCRV000041-43)." | Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge that the exhibit is a "true and correct" copy of the described article. | ☒ Sustained<br><br>☐ Overruled |

### Ruling on Objections to the Exhibits to the Declaration of Matthew Salzmann

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| **Salzmann Ex. A (Deposition of Kelly Marie Quinn) (Dkt. No. 93-1)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank* | ☒ Sustained<br><br>☐ Overruled |

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | *of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |
| **Salzmann Ex. B (Deposition of Steven Johnson) (Dkt. No. 93-2)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |
| **Salzmann Ex. C (Deposition of Tod Kean) (Dkt. No. 93-3)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see* | ☒ Sustained<br><br>☐ Overruled |

30

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | *also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |
| **Salzmann Ex. D (Deposition of Lilly Kim) (Dkt. No. 93-4)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast* | ☒ Sustained<br><br>☐ Overruled |

31

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | *Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |
| **Salzmann Ex. E (Deposition of Felipe Salgado) (Dkt. No. 93-5)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS | ☒ Sustained<br><br>☐ Overruled |

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |
| **Salzmann Ex. F (Deposition of Lisa Song) (Dkt. No. 93-6)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, | ☒ Sustained <br><br> ☐ Overruled |

33

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| | 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | |

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| Exhibit: | Objections: | Ruling: |
|---|---|---|
| **Salzmann Ex. G. (Deposition of Tiffany Alana Wolff) (Dkt. No. 93-7)** | This exhibit is not properly authenticated.  "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002); *see also Zimmerman v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 162806 (C.D. Cal. Nov. 22, 2016) (Wright, J.)  In this instance, Mr. Salzmann attached the deposition transcript *without* court reporters' certifications.  It is inadmissible.  *Orr*, 285 F. 3d at 774; *see also Carroll v. Holder*, No. 09-3093-CL, 2011 U.S. Dist. LEXIS 152158, at *3-4 (D. Or. Sep. 30, 2011) (even "[t]he affidavit of a party's counsel providing the names of the deponent, the action, and the reporter, with a statement that the attached copy is a 'true and accurate copy' is not a sufficient substitute, without more, to satisfy the authentication requirement; such an affidavit lacks foundation even if the affiant-counsel were present at the deposition."). | ☒ Sustained<br><br>☐ Overruled |

35

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Ruling on Objections to the Additional Salzmann Exhibits

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit K | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit L | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit M | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit N | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit O | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 802. Hearsay. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit P | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402.  The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit Q | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402.  The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit R | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402.  The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit S | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402.  The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit T | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit U | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit V | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit W | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit X | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit Y | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit Z | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit AA | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication | ☒ Sustained<br><br>☐ Overruled |

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| | post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | |
| Exhibit BB | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit CC | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit DD | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit EE | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit FF | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit II | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit JJ | Fed. R. Evid. 901. This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602. Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit KK | Fed. R. Evid. 901. This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602. Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit LL | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |
| Exhibit MM | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Salzmann Declaration Exhibit: | Objections: | Ruling |
|---|---|---|
| Exhibit RR | Fed. R. Evid. 901.  This exhibit is not properly authenticated by Mr. Salzmann.<br><br>Fed. R. Evid. 802. Hearsay.<br><br>Fed. R. Evid. 602.  Mr. Salzmann provided no evidence or foundation for his personal knowledge of this exhibit.<br><br>Fed. R. Evid. 402. The communication post-dates the date Ms. Song, the only percipient witness, has testified the contract was formed, and is not relevant to any facts of the case. | ☒ Sustained<br><br>☐ Overruled |

**Ruling on Objections to the Specific Objections to Deposition Testimony (Salzmann Decl. Exhibits A – F)**

      1.     **Exhibit A to Salzmann Declaration (Deposition Transcript of Kelly Quinn):**

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "A"; Deposition Transcript of Kelly Marie Quinn, 39:8-17:<br>"Q. Okay.  So we've spoken a lot about a whole lot of other businesses besides Phoenix Fibers.  So let's talk about Phoenix Fibers. What – what is the nature of Phoenix Fibers' business?<br>A. To make shoddy.<br>Q. And what is shoddy? | Fed. R. Evid. 602.  Lacks foundation for personal knowledge. | ☐ Sustained<br><br>☒ Overruled as moot |

| Testimony: | Objections: | Ruling |
|---|---|---|
| A. It's material that gets – it's material that's converted into a shoddy material and – and filler. We also make filler. And that's utilized in other businesses for a finished product." | | |

**2.      Exhibit B to Salzmann Declaration (Deposition Transcript of Steven Johnson):**

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "B", Deposition Transcript of Steven Johnson ("Johnson Depo"), 33:5-10<br>"Q. Was Phoenix Fibers doing business with Mr. Mroueh at the time he came on as plant manager?<br>A. I honestly don't know, but I'm – yeah, I don't know. I don't know when that relationship started.<br>Q. Do you know how it started?<br>A. No." | Fed. R. Evid. 602.  Lacks foundation for personal knowledge. | ☐ Sustained<br><br>☒ Overruled as moot |
| Plaintiffs' Ex. "B", Johnson Depo, 82:8-19<br>"Mr. Salzmann: Let's take a look at Plaintiff's Exhibit 2. It should be on the side there.<br>Mr. Macias: What number?<br>Mr. Salzmann: 2.<br>By Mr. Salzmann:<br>Q. Do you have that in front of you, Mr. Johnson? | Fed. R. Evid. 602.  Lacks foundation for personal knowledge. | ☐ Sustained<br><br>☒ Overruled as moot |

49

| | | |
|---|---|---|
| A. Yes.<br>Q. So, Mr. Johnson, this is the packing list that you were looking at yesterday; is that right?<br>A. I'm not sure.<br>Q. No? You don't – you don't recognize it?<br>A. It's a packing list." | | |
| Plaintiffs' Ex. "B"; Johnson Depo, 92:25-93:7<br>"Q. If you could flip forward to page 3 and focus your attention on interrogatory number 4 and the response thereto. Did you discuss this response with Mr. Kean?<br>A. I can't recall.<br>Q. Do you have any idea how that time frame was ascertained, early spring 2015 through early fall 2015?<br>A. No." | Fed. R. Evid. 402.<br>Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

### 3.    Exhibit C to Salzmann Declaration (Deposition Transcript of Tod Kean):

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "C";<br>Deposition Transcript of Tod Kean, 42:14-22<br>"Q. Okay. Do you recall whether or not you had that conversation with Mr. Johnson before the answer was filed?<br>A. I don't recall. I don't know when the answer was | Fed. R. Evid. 402.<br>Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

| Testimony: | Objections: | Ruling |
|---|---|---|
| filed, so I'd need to look at a document.<br>Q. March 29th, 2016<br>A. I don't recall.<br>Q. Okay. How about as of May 18th 2016?<br>A. I would make an assumption, yes, I had spoken to him by May." | | |

### 4.    Exhibit D to Salzmann Declaration (Deposition Transcript of Lilly Kim):

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "D"; Deposition Transcript of Lilly Kim ("Kim Depo"), 14:1-9<br>"Q. And was that contract entered into between Phoenix Fibers and Sweet People?<br>A. Yes.<br>Q. Was there also a contract between Phoenix Fibers and Rock Revival?<br>A. Yes.<br>Q. Who entered into that contract, or these contracts, on behalf of Sweet People and Rock Revival?<br>A. Was Lisa Song, under my direction." | Fed. R. Evid. 602.  Lacks foundation for personal knowledge.<br><br>Fed. R. Evid 802.  Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |
| Plaintiffs' Exh. "D", Kim Depo, 18:4-24<br>"Q. Do you have any personal knowledge of the terms of the offer that led to what you've referred to as | Fed. R. Evid. 602.  Lacks foundation for personal knowledge.<br><br>Fed. R. Evid 802.  Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |

| Testimony: | Objections: | Ruling |
|---|---|---|
| the overall contract?<br>A. I've read the e-mails, and I had discussions with Lisa.<br>Q. What discussions? And when did you have discussions with Lisa?<br>A. 2011<br>Q. Can you please tell me what Lisa – And when you say "Lisa," you mean Lisa Song?<br>A. Yes.<br>Q. Please tell me what Lisa Song told you in those conversations in 2011?<br>A. We had discussions. We were looking for a company that recycled denim so that we could recycle our products, rather than sending them to the landfill. So we discussed, you know, that Phoenix Fibers was a recycling company that was going to do this. We discussed how, you know, pricing would work. And we discussed, you know, basically a little bit of timing of the first shipment." | | |
| Plaintiffs' Exh. "D", Kim Depo, 20:1-11<br>"Q. To your knowledge, did anyone have any discussions, verbal discussions, with anyone from Phoenix Fibers on behalf of Rock Revival or Sweet People in 2011 other than Ms. Song? | Fed. R. Evid. 602.  Lacks foundation for personal knowledge.<br><br>Fed. R. Evid 802.  Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |

52

| Testimony: | Objections: | Ruling |
|---|---|---|
| A. I don't recall. It may be possibly the shipping people. Q. And who are the shipping – Who were the shipping people at that time? A. I think, at that time, Steve Kim may have been a little bit involved as our COO, but I don't know if he had any direct correspondence with Phoenix Fibers." | | |
| Plaintiffs' Exh. "D", Kim Depo, 20:25-21:3 "Q. Do you know where he went to work after leaving – Well, which entity or entities did he work for? A. He worked for both." | Fed. R. Evid 802.  Hearsay. | ☐ Sustained ☒ Overruled as moot |
| Plaintiffs' Ex. "D", Kim Depo, 26:1-11 "Q. Why is it that you believe that those contracts were breached? A. So we had an overall arrangement, as we discussed, for them to recycle the products. When we recover goods, some of the goods went back to 2012. Q. And what contracts do you believe Phoenix Fibers breached between Phoenix Fibers and Rock Revival? A. The same. Q. So same years? A. Yes." | Fed. R. Evid. 602.  Lacks foundation for personal knowledge.  Fed. R. Evid 802.  Hearsay. | ☐ Sustained ☒ Overruled as moot |
| Plaintiffs' Ex. "D", Kim Depo, 26:23-28:5 "Q. – has anyone employed | Fed. R. Evid. 602.  Lacks foundation for personal knowledge. | ☐ Sustained ☒ Overruled as |

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| 1 | | | |
| 2 | by Sweet People discussed with anyone at Phoenix Fibers the contractual term requiring that the donated products that Sweet People donated be destroyed?<br>A. I believe we thought they would be destroyed and recycled.<br>Q. Okay. And I understand what your – what you thought. But the question is, to your knowledge and based on your investigation, has anyone employed by Sweet People discussed with anyone at Phoenix Fibers the contractual term requiring that the donated products that Sweet People donated be destroyed?<br>A. I believe there's e-mail correspondence to that effect.<br>Q. What about verbal discussions? Do you know of any verbal discussions?<br>A. I don't know if the word "destroyed" was used in the verbal discussions.<br>Q. And with that testimony, would the answer to the previous two questions be the same for Rock Revival?<br>A. That's correct.<br>Q. To your knowledge and based on your investigation, did Rock Revival or Sweet People explicitly place a restriction on the items that | Fed. R. Evid 802.  Hearsay. | moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| 1 | | | |
| 2 | they donated to Phoenix Fibers requiring that those items be destroyed? | | |
| 3 | A. Yes. We did require that the items be destroyed and recycled. I think we believed that during the recycling process, the items would naturally be destroyed as they were made into shoddy fiber. So that's why it's a little confusing. We just focus on "destroyed."" | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | Plaintiffs' Ex. "D", Kim Depo, 28:14-29:4 | Fed. R. Evid. 602. Lacks foundation for personal knowledge. | ☐ Sustained |
| 12 | "Q. The question is, did anyone at Sweet People or | | ☒ Overruled as moot |
| 13 | Rock Revival place a requirement on the donated | Fed. R. Evid 802. Hearsay. | |
| 14 | items or express a requirement based on the | | |
| 15 | donated items to Phoenix Fibers that the donated items | | |
| 16 | be destroyed? | | |
| 17 | A. Yes. | | |
| 18 | Q. And when do you think that was done? | | |
| 19 | A. 2011. | | |
| 20 | Q. And how do you think that was done? | | |
| 21 | A. Verbally. And I guess in e-mail correspondence. | | |
| 22 | Q. Both? | | |
| 23 | A. I believe so. | | |
| 24 | Q. What's the basis for your understanding that it was | | |
| 25 | done verbally? | | |
| 26 | A. After my discussions with Lisa following her | | |
| 27 | discussions with Matt | | |
| 28 | | | |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| Graham." | | |
| Plaintiffs' Ex. "D", Kim Depo, 29:20-30:25<br>"Q. Why is it that Sweet People and Rock Revival wanted the donated products destroyed?<br>A. Most of the goods are unfinished goods or damaged goods, goods that we don't want into the mainstream market because they're not as good a quality as our first-run goods. So therefore we wanted to find a way to environmentally, soundly destroy the items, which is why we came up with the destruction and recycling. We thought it was a much more environmental friendly way to dispose of the products. We were part of a organization called One Percent for the Planet. I don't know if you know this, but denim is highly pollutive, so it --<br>Q. I did not know that.<br>A. Well, it's like the washing and the blasting, and so it's actually very highly pollutive. So one of the ways we wanted to give back, sort of make up for the pollution was we joined One Percent for the Planet, which means 1 percent of our gross proceeds at the time went to environmental organizations. | Fed. R. Evid. 402.<br>Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| 1 | | | |
| 2 | So along with that program that we put in place, our directive was to find a much more environmentally friendly way to dispose of the products. | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | Q. Prior to shipping materials to Phoenix Fibers, what – what were Rock Revival and Sweet People doing to get rid of their unwanted products? | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | A. So one of two things could happen when they could be destroyed, in Asia, at the factories, or if they were here in the U.S., then we would cut up the product, and then they would be sent to landfill essentially." | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | Plaintiffs' Ex. "D", Kim Depo, 33:24-34:12 "Q. Do you recall having in your mind the understanding in 2011 that there was a contract between Phoenix Fibers on the one hand and Sweet People and Rock Revival on the other? A. Yes. Q. Why is it that you did not draft a contract for mutual signature between the parties to reflect the terms of the contract that you understood existed? A. We asked Phoenix Fibers if there's any paperwork or documents that need to be executed. They said, "No."" | Fed. R. Evid. 402. Irrelevant. Ms. Kim's and others' subjective understanding is irrelevant in the absence of evidence Ms. Kim's communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal*., 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining | ☐ Sustained<br><br>☒ Overruled as moot |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

57

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| | the meaning of contractual language.") | |
| Plaintiffs' Ex. "D", Kim Depo, 37:22-38:10<br>"Q. Understanding that Mr. Graham on his end didn't need anything further, why is it – why was it, in your opinion, that Sweet People and Rock Revival didn't need anything further in writing?<br>A. I think it was a couple of reasons, One was it was sort of my understanding, having talked to multiple, you know, recycling companies, that most did not have a written agreement. Secondly, because it was just for recycling and destruction, we really didn't feel like it was necessary to have a formal written agreement. The terms were relatively simple, and they really weren't for, you know, manufacturing or resale or anything like that. So it was really just recycling. | Fed. R. Evid. 402. Irrelevant.  Ms. Kim's and others' subjective understanding is irrelevant in the absence of evidence Ms. Kim's communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☐ Sustained<br><br>☒ Overruled as moot |
| Plaintiffs' Ex. "D", Kim Depo, 39:14:22<br>"Q. And how did you have that understanding?<br>A. That is what Matt Graham told us.<br>Q. And to be specific, he didn't tell you that; right?<br>A. Correct.<br>Q. And how do you know he | Fed. R. Evid. 602.  Lacks foundation for personal knowledge.<br><br>Fed. R. Evid 802.  Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |

58

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| | told Ms. Song that?<br>A. She told me, and there were e-mails." | | |
| | Plaintiffs' Ex. "D", Kim Depo, 41:18-42:1<br>"Q. When Ms. Song was having discussions with Mr. Graham and then carrying out the shipping of the products to Phoenix Fibers, was she an employee of Rock Revival, Sweet People or both?<br>A. Both.<br>Q. And was she paid by both?<br>A. What happens is her paycheck comes from Sweet People Apparel, but her time is allocated between the two companies. Well, actually, all the affiliates." | Fed. R. Evid. 602. Lacks foundation for personal knowledge. | ☐ Sustained<br><br>☒ Overruled as moot |
| | Plaintiffs' Ex. "D", Kim Depo, 67:2-13<br>"Q. Have you discussed any of the facts related to this case with Ms. Flores?<br>A. I don't think so. Oh, maybe, yes.<br>Q. What have you discussed with her?<br>A. She made some purchases early on, and then she helps store things for me.<br>Q. Purchases from where?<br>A. So when we got some of the complaints regarding the donated goods that were out in the stream of commerce, she would sometimes make | Fed. R. Evid. 602. Lacks foundation for personal knowledge.<br><br>Fed. R. Evid 802. Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| 1<br>2<br>3 | contact and make the purchase on my behalf at my direction." | | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18 | Plaintiffs' Ex. "D", Kim Depo, 106:25-107:11 "A. We had received complaint about those kind of goods being out there, and so we began to – you know, they'd appoint us to specific people or websites or whatever it was, so we started to make some purchases. Q. And was that prior to receiving – Well, strike that. Who were those complaints from? A. It would have been from customers, sales reps. Q. Sales reps that worked for Miss Me or Rock Revival, or other sales reps? A. Sales reps that work for Miss Me and Rock Revival." | Fed. R. Evid. 802. Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |
| 19<br>20<br>21<br>22<br>23<br>24<br>25<br>26<br>27 | Plaintiffs' Ex. "D", Kim Depo, 108:16-21 "Q. Why – Well, do you recall independent about why Mr. Salgado sent you this e-mail, Exhibit 31? A. Right. So Lola Willard was selling goods that were supposed to have been donated on her – I don't know if it was her Facebook or her website or something like that." | Fed. R. Evid. 802. Hearsay. | ☐ Sustained<br><br>☒ Overruled as moot |
| 28 | Plaintiffs' Ex. "D", Kim Depo, 112:9-21 | Fed. R. Evid. 802. Hearsay. | ☐ Sustained |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| "Q. Exhibit 31 refers to jeans being "'stamped' defective" on page 2 in the third line down. The sentence says, "She says that she gets the jeans from the factory that are 'stamped' defective due to missing labels and such items." Does Miss Me – Do Miss Me or Rock Revival stamp jeans with the word "Defective"? A. The factory may. Q. Do you know one way or the other whether they do? A. I know that – I don't know if they do it for every single one, but I know I've seen jeans stamped "Defective" on the inside lining." | Fed. R. Evid. 402. Irrelevant. | ☒ Overruled as moot |
| Plaintiffs' Ex. "D", Kim Depo, 115:18-116:12 "Q. Do you recall – other than the seller Lola Willard, they were selling online – in 2015, they were selling the goods that led to the purchases that led to this case or they were part of leading to this case, do you recall what websites they were selling on? A. I remember some were on eBay. I think some were on Facebook. But that's all I can remember offhand. Q. Of the approximately half dozen purchases, at least one of them was a wholesale | Fed. R. Evid. 602. Lacks foundation for personal knowledge. | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| purchase, wholesale price type purchase?<br>A. Yes.<br>Q. How many – When did that occur?<br>A. I want to say summer.<br>Q. And do you recall approximately how many units?<br>A. That was a large one. That was about 9,000 units, I believe.<br>Q. So were all the other purchases kind of onesie-twosie purchases?<br>A. I think so. | | |
| Plaintiffs' Ex. "D", Kim Depo, 145:20-148:3<br>"Q. Who do you understand Mr. Kean to be?<br>A. I understand him to be the owner and – one of the owners and CEO.<br>Q. Why did you – And did you call him, or did he call you?<br>A. I called him.<br>Q. Why did you call him?<br>A. I was looking for someone, and that's who reception pointed me to.<br>Q. And when did you call him?<br>A. I actually don't recall the exact date.<br>Q. And when you reached him, what did you say to him, and what did he say to you?<br>A. I told him who I was. I | Fed. R. Evid. 402. Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

| Testimony: | Objections: | Ruling |
|---|---|---|
| introduced myself. I told him that we had found goods we believed were possibly coming from his location, that had been sent there for destruction and recycling. Q. And what did he say? A. He said that they would look into it. They would investigate. It is possible that there was some leakage. Q. And do you understand what the word "leakage" means, or did you understand at the time what "leakage" meant? A. They actually explained it to me. So Phoenix Fibers was the one who told me that what happens is that they have a secure cage to which the products are put in. But because our product takes sometimes longer to recycle due to the embellishments on them, that sometimes goods would be left out of the cage while they're being processed, or that sometimes the cage was full and that goods were sometimes left outside the secure cage. And it's possible, due to that, that some might have leaked out. Q. And what did you understand "leaking" to mean, or "leak"? A. So they were saying that basically they were stolen – Q. All right. Then – | | |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| A. – and shipped off.<br>Q. – has Rock Revival or Miss Me ever experienced any theft of their inventory?<br>A. I'm sure we have.<br>Q. You just – Do you call it "leakage," or do you call it "theft"? What do you guys call it?<br>A. We just call it "theft" or "SOB" like employees trying to steal it.<br>Q. Have you ever heard the term "shrinkage"?<br>A. "Shrinkage," yes.<br>Q. And "shrinkage" refers to people stealing inventory; right?<br>A. Uh-huh.<br>Q. Did you mention the possibility that there were being – that items were being stolen from Phoenix Fibers' warehouse, or was it Mr. Kean that raised the issue?<br>A. Mr. Kean. I just raised that we had found goods outside." | | |
| Plaintiffs' Ex. "D", Kim Depo, 148:19-149:8<br>"Q. Okay. So let's talk about the first conversation you had with Mr. Johnson. You called him for that conversation?<br>A. Yes.<br>Q. And what did he say, and what did you say in that conversation? | Fed. R. Evid. 402.<br>Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| A. I said I was trying to figure out generally what happened at the – throughout the process, at the time, I said I was trying to figure out. And he told me basically, you know, the goods are received. You know, they're put in a secure location. And then, you know, they are taken out, and then metal and bags, et cetera, are taken off, and then they're processed for recycling into shoddy fiber." | | |
| Plaintiffs' Ex. "D", Kim Depo, 151:15-152:24<br>"Q. And then you talked to Mr. Johnson again after you talked to Mr. Kean?<br>A. Correct.<br>Q. Did the conversation – the second conversation with Mr. Johnson occur the same day you talked to Mr. Kean, or a different day?<br>A. I think the same day.<br>Q. And did you call Mr. Johnson, or did he call you?<br>A. I called Mr. Johnson.<br>Q. And how long was that conversation with Mr. Johnson?<br>A. Less than ten minutes.<br>Q. Less than ten?<br>A. Uh-huh.<br>Q. What did you say in that conversation, and what did Mr. Johnson say?<br>A. I said I talked to Mr. | Fed. R. Evid. 402. Irrelevant. | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| Kean, that he referred me to him. I explained that we were experiencing – we had found product that were donated to Phoenix Fibers that were outside that we'd found purchased. And then he also talked about that they were adding security cameras, that he would investigate and that he also mentioned leakage. Q. Did he tell you whether or not he had talked to Mr. Kean about Mr. Kean's conversation with you prior to his second conversation with you? A. He did not mention that. Q. Did you mention the possibility of leakage to Mr. Johnson in that phone call? A. I don't think so. Q. Can you recall with certainty whether or not you mentioned that possibility? A. I can't recall." | | |
| Plaintiffs' Ex. "D", Kim Depo, 155:1-6 "Q. Have you had any conversation with Mr. Kean since that conversation you had with him? A. No. Q. Have you had any conversation with Mr. Johnson since you had that conversation with him? A. No." | Fed. R. Evid. 402. Irrelevant. | ☐ Sustained ☒ Overruled as moot |
| Plaintiffs' Ex. "D", Kim | Fed. R. Evid. 402. | ☐ Sustained |

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| | Depo, 166:18-167:20<br>"Q. Is the destruction of these unfinished, obsolete and otherwise secondhand goods and damaged goods – is the destruction of them important to the companies?<br>A. It's very important.<br>Q. Why is it – Why is it important?<br>A. I mean, there are multiple reasons. The primary reason is we don't want the goods in the market in the first place. I mean, the reason that they are being sent for destruction and recycling is so they do not enter into the stream of commerce because we don't believe that they're up to the standard of Rock Revival and Miss Me. So the reason they're sent there is for the destruction so they don't get into the stream of market so the brands aren't damaged or harmed reputationally, quality-wise. So, yeah, it's important. And then, you know, like I said, we had this whole environmental program. That was really the point of sending them to be destroyed and recycled is that we wanted to adhere to those values. That's why we took the time to bring them from China. If we really wanted to have them in the stream of | Irrelevant. | ☒ Overruled as moot |

67

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| commerce, we would have sold them ourselves. And it was sort of ridiculous that we were sending them to Arizona, paying for the shipping to get them there, and then they were being shipped back to a half mile from our facility." | | |
| Plaintiffs' Ex. "D", Kim Depo, 168:12-19 "A. I really didn't think it was necessary. We had an agreement. We assumed that the goods were being recycled as we were told they were. And we didn't need it as evidence for anything else. It's not like we were in litigation where we had to present to a third party or we were getting a, you know, nonprofit tax credit or something where we needed evidence that that was occurring." | Fed. R. Evid. 402. Irrelevant. Ms. Kim's and others' subjective understanding is irrelevant in the absence of evidence Ms. Kim's communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | ☐ Sustained ☒ Overruled as moot |

**5.     Exhibit E to Salzmann Declaration (Deposition Transcript of Felipe Salgado):**

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "E"; Deposition Transcript of Felipe Salgado, 31:8-33:21 | Fed. R. Evid. 402. Irrelevant. | ☐ Sustained |

68

| | Testimony: | Objections: | Ruling |
|---|---|---|---|
| 1 | | | |
| 2 | "Q. So that RTV gets – The RTV units get inspected; right? | | ☒ Overruled as moot |
| 3 | | | |
| 4 | A. Yes. Q. And do you have – had you had since – Since 2012, have you or any of your people had responsibility for doing that inspection? A. Yes. Q. And is it – Who does it? A. My warehouse, I have a warehouse manager under my supervision, and he inspects all products coming back from – There's two different types of returns, which is the RTV, we call that, to good merchandise. And then we have the damaged returns, which those get inspected as well, and those are going into what is called the destruction. So which is going to be sent to the recycling facilities, if any. And so he inspects all the – all the – all the – all the product coming back returns-wise. Q. Do any of the products that a retailer returns and they say are damaged, do any of those end up in the group of units that go to the next retailer? A. No. Q. So why – why do they got inspected at all? | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |
| 26 | | | |
| 27 | | | |
| 28 | | | |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| A. Because we have – we have to make sure that the style numbers match the return, because if they would have difference of prices. So let's say we get in an item for $68, but then the customer is sending something that's even higher price or lower price, we have to adjust the return when we're doing everything in the system. So then they get the correct – the correct credit, and therefore our system is adjusted accordingly.<br>Q. And so – so let me understand. Let me understand what – what generally the categories of products that go in this stuff that was shipped to Phoenix Fibers. So what I'm looking for now is what – what went in there, and I want to ask – And I'll ask you, and then I'll ask you if you can add anything to it.<br>A. Uh-huh.<br>Q. My understanding is that damaged product went to Phoenix Fibers. Is that true?<br>A. Damaged product, damaged, it's not sellable to the customer.<br>Q. And is it also true that obsolete product went to Phoenix Fibers?<br>A. Some product, it is | | |

70

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| coming from the manufacturer that has the stamp "Defective." Although it looks good, it looks clean, but we can't sell it, the fact that it's too – too – it has – it has some flaw in the wash process, or it has a rivet missing, or it has a leather patch missing. So that's the stuff that goes there.<br>Q. And where is – Where's the "Defective" stamp placed on the product when it's defective?<br>A. In the – some of them have it in the – in the pocket, inside the pocket, or in some of the – on the inside part.<br>Q. Why is the stamp placed, if you know, on the inside part of the jeans?<br>A. To differentiate it in the warehouse, to make sure that those are sent – sent for destruction rather than selling it to the customer." | | |

### 6. Exhibit F to Salzmann Declaration (Deposition Transcript of Lisa Song):

| Testimony: | Objections: | Ruling |
|---|---|---|
| Plaintiffs' Ex. "F"; Deposition Transcript of Lisa Song ("Song Depo"), 28:10-29:3<br>"Q. Can you describe to me, as best you can recall siting here today, what that | Fed. R. Evid. 402. Irrelevant.  Ms. Song's and others' subjective understanding is irrelevant in the absence of evidence Ms. Song communicated that understanding to | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| recycling program entailed? A. The program was to take – we had excess inventory that we – that were – the reason we couldn't sell them, and so because of that we were looking for something good to do. I know we did a – planned a lot of green initiatives at that time with our executive, and the program was to take those excess inventory, and Bonded Logic and Phoenix – Phoenix Fibers, I believe, would break down the excess inventory, turn it into insulation for housing. And I think Bonded Logic was the – they were the actual people who installed it or something, but they were responsible for the actual program itself, from my – what my recollection is." | Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | |
| Plaintiffs' Ex. "F"; Song Depo, 67:11-24 "Q. What was your understanding of the agreement at the time that first shipment went to Phoenix Fibers? A. My understanding was that we would send them inventory that we needed to – that we wanted to use as part of our – one of our green initiative programs. Phoenix Fibers would break down the inventory sent to | Fed. R. Evid. 402. Irrelevant. Ms. Song's and others' subjective understanding is irrelevant in the absence of evidence Ms. Song communicated that understanding to Phoenix Fibers. *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 55 (1997) ("The true intent of a contracting party is irrelevant if it remains unexpressed"); *Winet v. Price*, 4 Cal. App. 4th | ☐ Sustained<br><br>☒ Overruled as moot |

**[PROPOSED] MEMORIALIZATION OF RULINGS ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

| Testimony: | Objections: | Ruling |
|---|---|---|
| them, shred it and create an insulation that they would pass along to Bonded Logic, who insulated houses in need. | 1159, 1166 n.3 (1992) ("evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.") | |

DATED: _____


_____
Honorable Terry J. Hatter, Jr.
United State District Judge

73

1

## CERTIFICATE OF SERVICE

2

3      I am employed in the County of Orange, State of California. I am over the
age of 18 and not a party to the within action. My business address is 600 Anton

4      Boulevard, Suite 700, Costa Mesa, California 92626.

5      I hereby certify that on September 6, 2017, I served the foregoing
documents described as *[PROPOSED] MEMORIALIZATION OF RULINGS*

6      *ON PHOENIX FIBERS, INC.'S OBJECTIONS TO EVIDENCE SUBMITTED*

7      *BY PLAINTIFFS IN OPPOSITION TO THE MOTION FOR SUMMARY*
*JUDGMEN*T on the following individuals:

8

9
| Louis S. Ederer, Esq. | John C. Ulin, Esq. |
|---|---|
| Matthew T. Salzmann, Esq. | ARNOLD AND PORTER LLP |
| ARNOLD AND PORTER LLP | 777 South Figueroa Street, 44th Fl. |
| 399 Park Avenue | Los Angeles, CA  90017-5844 |
| New York, NY  90022 | |
| | [Attorneys for Plaintiffs] |
| [Attorneys for Plaintiffs] | [Served Electronically] |
| [Served Electronically] | |
| Eugene S Alkana | J T Fox |
| Eugene S Alkana Law Office | Law Offices of JT Fox and Associates |
| 131 North El Molino Avenue Suite 310 | 556 South Fair Oaks Avenue Suite 444 |
| Pasadena, CA 91101 | Pasadena, CA 91105 |
| | |
| [Attorneys for U.S. General Export] | [Attorneys for Tiffany Alana Wolff] |
| [Served Electronically] | [Served Electronically] |
| Lydia Evilsa Terrazas Cho | Comak Trading |
| 702 N Crescent Drive | 2550 S Soto St, |
| Beverly Hills, CA 90210 | Vernon, CA 90058 |
| *Pro Se* | |
| | |
| [Served via U.S. Mail] | [Served via U.S. Mail] |

23      I declare that I am employed in the offices of a member of the bar of this

24      Court at whose direction this service was made, and that this service complies

25      with the Federal Rules of Civil Procedure.

26      Executed on September 6, 2017, at Costa Mesa, California.

27      _____

28      Erin M. Ryan